No. 24-2766

# In the
# United States Court of Appeals
# For the Ninth Circuit

————————————

LUDMILA GULKAROV, JANINE TORRENCE, KELLY McKEON, JOSH CRAWFORD, VANESSA MATHIESEN, AUTUMN ELLISON, JESSICA DAVID, SARAH BROWN and TOMMY NURRE,

*Plaintiffs-Appellants*,

v.

PLUM, PBC,

*Defendants-Appellees.*

————————————

*On Appeal from*
United States District Court for the Northern District of California,
Oakland Division
The Honorable Yvonne Gonzalez Rogers, U.S.D.C. Case No. 21-CV-00913-YGR

————————————————————————

## APPELLANTS' OPENING BRIEF
## REDACTED

————————————————————————

**LOCKRIDGE GRINDAL NAUEN PLLP**
Rebecca A. Peterson (Calif. No. 241858)
100 Washington Ave South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rapeterson@locklaw.com

**LITE DEPALMA GREENBERG, LLC**
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
scruzhodge@litedepalma.com

*Attorneys for Plaintiffs-Appellants*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................1

JURISDICTIONAL STATEMENT .......................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................3

STATUTORY AND REGULATORY AUTHORITIES .........................4

STATEMENT OF THE CASE...............................................4

    I.    Procedural History.................................................4

    II.   Plum Knew Its Baby Foods Were At A High Risk For Heavy Metals But Never Disclosed That Information .....................5

    III.  Consumers Do Not Expect Heavy Metals Or Perchlorate In Baby Food ....................................................6

    IV.  Plum Chose Not To Mitigate The Risk Of Heavy Metals And Perchlorate In Its Baby Food....................................8

    V.   Heavy Metals And Perchlorate Create Well-Recognized Health And Safety Issues For Infants And Toddlers ..................11

        A.   The Safety Risk was Unreasonable .........................12

        B.   Heavy Metals and Perchlorate Affect The Nutritional Value Of Baby Food ...................................13

    VI.  Consumers Did Not And Could Not Have Had Plum's Superior Knowledge That Its Baby Food Contained Heavy Metals Or Perchlorate.....................................................14

    VII.  Plum Actively Concealed The Information On The Presence Of Heavy Metals In Its Baby Foods.............................16

    VIII. Plum's Request For Summary Judgment On The California Claims Relied Exclusively On *Hodsdon* ...........................18

    IX.  The District Court's Summary Judgment Order On Plaintiffs' CLRA And UCL Claims ...................................19

SUMMARY OF ARGUMENT ..............................................................21

STANDARD OF REVIEW ...............................................................25

ARGUMENT ...............................................................................26

    I.    PLAINTIFFS' QUESTION SHOULD BE CERTIFIED ...................26

        A.    Existing Court Decisions Regarding The Proper Standard Has Resulted In Confusion And Disarray.................................27

        B.    California's Position As Presented By The Attorney General ......................................................................29

        C.    The Duty To Disclose Should Be Limited To Common Law Torts Claims...............................................................30

        D.    The Proper Standard Is "Likely To Deceive" ...........................33

    II.    THE DISTRICT COURT ERRED IN APPLYING *HODSDON* TO SUMMARILY DISMISS THE CALIFORNIA STATUTORY CLAIMS .......................................................36

        A.    *Hodsdon* Conflicts With California Law And Legislative Intent And Does Not Apply To The Facts Of This Case..........36

        B.    At Most, *Hodsdon* Is An Alternative Test That Plaintiffs Met With Sufficient Evidence Below .......................................38

            i.    The disputed material facts in the record as to an unreasonable safety hazard..............................................38

            ii.    The record shows that the central function of baby food is degraded by heavy metals and perchlorate.........41

    III.    THE DISTRICT COURT ERRED IN *SUA SPONTE* HOLDING THAT *LIMANDRI* WAS NOT SATISFIED.................43

        A.    *Limandri* Requires Superior, Not Exclusive, Knowledge ........44

        B.    Disputed Issues Of Fact Exist Regarding Whether Plum Had Superior Knowledge...........................................................45

IV.    GENUINE ISSUES OF MATERIAL FACT EXIST
       REGARDING WHETHER PLUM ACTIVELY CONCEALED
       THE PRESENCE OF HEAVY METALS AND
       PERCHLORATE .................................................................................53

CONCLUSION ..........................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Nguyen*,
   78 F.4th 1140 (9th Cir. 2023) ................................................................25

*Anderson v. Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020).......................................................45, 46

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................25

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015) ..................................................................25

*Bank of the W. v. Superior Ct.*,
   2 Cal.4th 1254 (1992) .....................................................................*passim*

*Baranco v. Ford Motor Co.*,
   294 F. Supp. 3d 950 (N.D. Cal. 2018).......................................................41

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal.App.4th 1255 (2006) .................................................................32

*Barquis v. Merchs. Collection Ass'n*,
   7 Cal. 3d 94 (1972) ...........................................................................35

*Brown v. Google LLC*,
   685 F. Supp. 3d 909 (N.D. Cal. 2023).......................................................56

*Callaway v. Mercedes-Benz USA, LLC*,
   2016 WL 11756827 (C.D. Cal. 2016) .......................................................31

*CDM Holding Grp., LLC v. Tidal Com. Inc.*,
   2023 WL 3335069 (C.D. Cal. Apr. 4, 2023) ...............................................37

*Chamberlan v. Ford Motor Co.*,
   No. C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003)...................30

*Chamberlan v. Ford Motor Co.*,
   369 F. Supp. 2d 1138 (N.D. Cal. 2005).....................................................30

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) ...............................................................34

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
    35 Cal.3d 197 (1983) ...........................................................................35

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal.App.4th 1351 (2003) .............................................................34

*Czuchaj v. Conair Corp.*,
    No. 13-CV-1901-BEN (RBB), 2014 WL 1664235
    (S.D. Cal. Apr. 18, 2014).....................................................................45

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................38

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal.App.4th 824 (2006) *as modified* (Nov. 8, 2006)......................28, 31, 32

*Edwards v. FCA US LLC*,
    No. 22-cv-01871-WHO, 2022 WL 1814144
    (N.D. Cal. June 2, 2022) ......................................................................46

*Eisenberg v. Ins. Co. of N. Am.*,
    815 F.2d 1285 (9th Cir. 1987) ............................................................58

*Falco v. Nissan N. Am., Inc.*,
    96 F. Supp. 3d 1053 (C.D. Cal. 2015) ...........................................30, 31

*Falk v. GMC*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007).............................................46

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab.*
    *Litig.*,
    CV-1706656-ABF-FMX, 2019 WL 6998668
    (C.D. Cal. Sept. 5, 2019).....................................................................54

*Freund v. HP, Inc.*,
    No. 22-CV-03794-BLF, 2023 WL 5184140
    (N.D. Cal. Aug. 10, 2023).....................................................................47

*Glacier Bear Retreat, LLC v. Dusek*,
    107 F.4th 1049 (9th Cir. 2024) ...........................................................26

*Gold v. Lumber Liquidators, Inc.*,
    No. 14-cv-05373-RS, 2019 WL 650426 (N.D. Cal. 2019) ...............................52

*Grausz v. Hershey Co.*,
    No. 23-CV-00028-AJB-SBC, 2024 WL 312688 (S.D. Cal. Jan. 25,
    2024) ...........................................................................................................39

*Gutierrez v. Carmax Auto Superstores Cal.*,
    19 Cal.App.5th 1234 (2018) ..........................................................................27

*Hall v. Marriott Int'l, Inc.*,
    344 F.R.D. 247 (S.D. Cal. 2023) ...................................................................33

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022)...............................................20, 27, 28

*Hedrick v. BSH Home Appliances Corp.*,
    Nos. 2:23-CV-04752-JWH-JDE, 2:23-cv-04752-JWH-JDE, 5:23-
    cv-01496-JWH-JDE, 2024 WL 2190984
    (C.D. Cal. May 14, 2024) ...........................................................28, 41, 44, 45

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ..................................................................*passim*

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012) ...................................................................44

*Kasky v. Nike*,
    27 Cal.4th 939 (2002) ...................................................................................35

*Kavehrad v. Vizio, Inc.*,
    No. 8:21-cv-01868-JLS-DFM, 2023 WL 2558535
    (C.D. Cal. Jan. 26, 2023) .........................................................................47, 55

*Kumandan v. Google LLC*,
    2022 WL 103551 (N.D. Cal. Jan. 11, 2022)...................................................47

*Leoni v. State Bar*,
    39 Cal.3d 609 (1985) ....................................................................................35

*LiMandri v. Judkins*,
    52 Cal.App.4th 326 (1997) ...................................................................*passim*

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2019 WL 1765817
   (N.D. Cal. Apr. 22, 2019) ...................................................................46

*Marsikian v. Mercedes Benz USA, LLC*,
   No. CV 08-04876 AHM, 2009 WL 8379784
   (C.D. Cal. May 4, 2009) ......................................................................54

*McKinney v. Corsair Gaming, Inc.*,
   No. 22-cv-00312-CRB, 2022 WL 2820097
   (N.D. Cal. July 19, 2022)....................................................................28

*Moe v. Transamerica Title Ins. Co.*,
   21 Cal.App.3d 289 (1971) ...................................................................32

*Moran v. Prime Healthcare Mgmt., Inc.*,
   94 Cal.App.5th 166 (2023) .............................................................27, 37

*Murphy v. Best Buy Stores, L.P.*,
   690 Fed. Appx. 553 (9th Cir. 2017)....................................................38

*Myers v. Starbucks Corp.*,
   536 F. Supp. 3d 657 (C.D. Cal. 2021) ................................................34

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014)...................................................46

*Nagel v. Twin Lab'ys, Inc.*,
   109 Cal.App.4th 39 (2003) ..................................................................34

*Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*,
   90 Cal.App.5th 1193 (2023) ...........................................................31, 37

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
   9 Cal.5th 279 (Cal. 2020)....................................................................35

*Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019) .......................................................25, 44

*Neu v. FCA US LLC*,
   No. 5:23-cv-00509-MCS-KK, 2023 WL 10406710
   (C.D. Cal. Nov. 13, 2023) ...................................................................28

*Norse v. City of Santa Cruz*,
    629 F.3d 966 (9th Cir. 2010) ...............................................................43

*Oddo v. United Techs. Corp.*,
    No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663
    (C.D. Cal. Jan. 3, 2022) ......................................................................52

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015)...................................................54

*Outboard Marine Corp. v. Superior Ct.*,
    52 Cal.App.3d 30 (1975) ...............................................................31, 32

*People v. Johnson & Johnson*,
    77 Cal.App.5th 295 (2022) .......................................................31, 36, 54

*People v. McKale*,
    25 Cal. 3d 626 (1979) .........................................................................35

*In re Plum Baby Food Litig.*,
    No. 4:21-CV-00913-YGR, ECF No. 281 (N.D. Cal. June 20, 2024) ...............28

*Rodriguez v. Mondelez Glob. LLC*,
    703 F. Supp. 3d 1191 (S.D. Cal. 2023)................................................39

*Rubenstein v. The Gap, Inc.*,
    14 Cal.App.5th 870 (2017) .................................................................54

*Saini v. Sutter Health*,
    80 Cal.App.5th 1054 (2022) ...............................................................37

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
    No. CV 15-8629 FMO (Ex), 2016 WL 7486600
    (C.D. Cal. Sep. 27, 2016).....................................................................46

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
    No. 22-cv-01603-BLF, 2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) ...............45

*Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist.*
    *Council*,
    322 F.3d 602 (9th Cir. 2003) ..............................................................25

*Sloan v. GM LLC*,
    No. 16-CV-07244-EMC, 2020 WL 1955643
    (N.D. Cal. Apr. 23, 2020) ...................................................................41

*So v. HP, Inc.*,
    No. 22-cv-02327-BLF, 2022 WL 16925965
    (N.D. Cal. Nov. 14, 2022)...................................................................28

*Sumer v. Carrier Corp.*,
    No. 14-cv-4271, 2015 WL 3630972 (N.D. Cal. June 10, 2015) .......45

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ..............................................................58

*Torres v. Adventist Health Sys./W.*,
    77 Cal. App. 5th 500 (2022) ...............................................36, 45, 46

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021)..............................................27

*In re Trader Joe's Co. Dark Chocolate Litig.*,
    No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725
    (S.D. Cal. Mar. 27, 2024) ..................................................................28

*U.S. Sec. & Exch. Comm'n v. Husain*,
    70 F.4th 1173 (9th Cir. 2023) .....................................................25, 48

*Victorino v. FCA US LLC*,
    No. 16CV1617-GPC(JLB), 2018 WL 1083395
    (S.D. Cal. Feb. 27, 2018) ...................................................................41

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ..............................................................34

*Zurba v. FCA United States LLC*,
    No. 5:21-CV-01824-JLS-SHK, 2022 WL 17363073
    (C.D. Cal. Nov. 10, 2022)..................................................................47

**Statutes**

28 U.S.C.A. § 1291 ...............................................................................3

28 U.S.C.A. § 1332(d)(2)........................................................................3

Cal. Civil Code §§1750, *et seq.* ................................................................32

Civ. Code, § 1710, subd. 3 .......................................................................32

Cal. Civ. Code § 1760 ...............................................................................33

## Other Authorities

Fed. R. Civ. Proc. 56(f) ............................................................................44

## INTRODUCTION

On February 4, 2021, headlines broke across the nation—a Congressional Subcommittee released a report (the "First Report") that disclosed the presence of heavy metals in baby foods, including those manufactured by Plum. (Dkt. 98, ¶15.) The news media viewed this as noteworthy for consumers and new information. So did parents. The district court acknowledged that: "I've had three kids. Never heard about this issue before. So I don't know how it could have been in the public discourse for decades." (3-ER-409:3-5.) The First Report made clear that: "[m]anufacturers knowingly sell [baby food] to unsuspecting parents [] without any warning labeling whatsoever." (Dkt. 98, ¶17.) Even though none of the plaintiffs purchased Plum's baby foods after they learned about the heavy metals as disclosed in the First Report, the district court ultimately concluded that the presence of heavy metals in baby food was old news. (Dkt. 98, ¶¶29, 32, 35, 38, 41, 44, 47, 50.)[1]

This case raises the important question of what standard should be applied to deception by omission claims under California consumer protection law. As the district court (and other federal courts have acknowledged), the law on that question is in disarray. The district court applied Ninth Circuit precedent despite the fact that this precedent may conflict with California state law and does not apply to the facts

---

[1] On September 29, 2021, there was a follow-up report (the "Second Report") that included internal testing finally provided by Plum. (3-ER-374-75.)

1

of this case. Because of the "disarray," the question of the standard to be applied in omissions cases should be certified to the California Supreme Court for a definitive and dispositive resolution of California law. Alternatively, the district court's summary judgment order should be reversed as to Plaintiffs' California statutory claims because genuine issues of material fact make summary judgment inappropriate under any standard.

The facts are straightforward. Plum manufactures and sells premium-priced baby foods throughout the United States. It is well aware that it sells a product consumed by a vulnerable population. ██████████████████████████ ██████████████████████████████████ But that ██████████ was hollow as Plum chose to never mitigate that risk. Nor did Plum's packaging ever disclose that the baby food may contain heavy metals or perchlorate. Instead, it chose to actively conceal the high risk of these toxins in its baby food with misleading assurances and promises of commitment to safety and quality control. Parents, like Plaintiffs here, were left asking was any of it true after reading the First Report.

Unchallenged expert opinions and other record evidence makes clear that: (1) consumers did not expect heavy metals and perchlorate in Plum's baby foods; (2) these controllable toxins pose an unreasonable safety risk to infants and toddlers and affect the nutritional purpose of baby foods; and (3) this information was material to reasonable consumers. Plum's intentional failure to disclose these material risks and

2

its active concealment of those facts violate California's laws against misleading or deceptive advertising.

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction existed in the district court pursuant to 28 U.S.C.A. § 1332(d)(2). After the district court granted Plum's motion for summary judgment on March 28, 2024, and entered final judgment on April 5, 2024 on Plaintiffs' individual claims, (*see* 1-ER-2-21), Plaintiffs timely appealed on April 25, 2024. (3-ER-411-13.) Jurisdiction in this Court exists pursuant to 28 U.S.C.A. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the Court should certify the following question of state law to the California Supreme Court:

> Under California law, what legal standard applies to a claim of deception by omission under the Consumers Legal Remedies Act (the "CLRA") and the Unfair Competition Law (the "UCL")?

Imbedded in that question is the question of whether California law requires a plaintiff to demonstrate that a defendant has a duty to disclose material information under the CLRA and the UCL.

2.     Whether *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) sets forth an alternative standard for measuring omissions-based claims, and whether it applies

3

to the facts of this case. If it does, did Plaintiffs produce sufficient disputed evidence to make summary judgment inappropriate?

3.      Whether the district court's *sua sponte* decision that *LiMandri v. Judkins*, 52 Cal.App.4th 326 (1997) barred Plaintiffs' omissions-based claims was error based on the proper standard and evidence here.

## STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory, constitutional and/or regulatory authorities appear in the Addendum to this brief.

## STATEMENT OF THE CASE

### I.   Procedural History

Plaintiffs filed this class action against Plum on February 5, 2021. (3-ER-430.) After Plaintiffs filed an Amended Consolidated Class Action Complaint on September 3, 2021, (3-ER-437), Plum filed a motion to dismiss which was granted in part and denied in part. (3-ER-437-38.) Discovery and expert disclosures followed.

On June 9, 2023, Plum moved for summary judgment on Plaintiffs' individual claims but did not seek to exclude any of Plaintiffs' disclosed expert opinions. (3-ER-445.) The district court granted summary judgment and entered final judgment on April 5, 2024. (1-ER-2-21.) Plaintiffs timely appealed from that final judgment on April 25, 2024. (3-ER-411-13.)

4

## II. Plum Knew Its Baby Foods Were At A High Risk For Heavy Metals But Never Disclosed That Information

It is undisputed that Plum knew its baby food contains heavy metals but never disclosed this on any packaging. (4-ER-460:PAF1; 4-ER-466:PAF1.)[2] Plum

██████████████████████████████████████████████████████

████████████████████████████████████ (4-ER-477-78:PAF22; 5-ER-

893 ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

Plum also never shared this information with consumers. (4-ER-466:PAF1.)

Even when its ███████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████ (4-ER-466:PAF1;  4-ER-456:PAF1; 4-ER-469:PAF6; 4-ER-719;  4-

ER-721; 4-ER-734:13-735:5; 4-ER-744-45; 5-ER-879 ███████████████████

---

[2] "PAF" refers to Plaintiffs' Additional Fact.

███████████████████████████

████████

### III.   Consumers Do Not Expect Heavy Metals Or Perchlorate In Baby Food

Prior to the release of the First Report, consumers did not expect heavy metals or perchlorate in baby foods, including Plum's baby foods. (4-ER-454-55:PAF1.) This expectation of no heavy metals was so strong that consumers thought it was just as likely that *insects* would be included in baby foods. (2-ER-45, ¶12; 2-ER-53, Table 1; 2-ER-63, ¶12; 2-ER-71, Table 1.) These survey results clearly show parents' expectations:

| Survey Question | In Plum Food | In National Baby Food Brands |
|---|---|---|
| Would not expect baby food to contain heavy metals. | 94.5% | 92.7% |
| Would not expect baby food to contain industrial chemicals such as perchlorate. | 96.5% | 94.6% |
| Would not expect baby food to contain insect parts. | 91.0% | 90.5% |

(2-ER-45, ¶12; 2-ER-53, Table 1; 2-ER-63, ¶12; 2-ER-71, Table 1.) The Congressional Subcommittee agreed—noting that baby food manufacturers, like Plum, have been selling products to "unsuspecting parents." (3-ER-396.) Recognizing this, the California State Legislature recently passed a bill (supported by the American Association of Pediatrics) requiring heavy metal testing for baby foods and disclosure of testing results via a QCR code that will also contain

6

information on the health effects of heavy metals on children. (4-ER-489:RDF2; 4-ER-490:RDF1; 3-ER-361-62.)[3]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (5-ER-749; 5-ER-752; 5-ER-755; 5-ER-757-58; 5-ER-764.) Plaintiffs' expert's survey confirmed that most respondents were not aware of any congressional report about heavy metals in baby food products. (2-ER-56, ¶51.)

Plaintiffs' testimony and expert opinions also demonstrated that consumers consider the presence or risk of heavy metals and perchlorate material information. (4-ER-455-56:PAF1; 4-ER-598, ¶33(h); 4-ER-638, ¶157; 4-ER-685.) One survey showed:

| Survey Question | Plum |
|---|---|
| Of those who would not expect Plum Organics baby food to contain heavy metals: If they found out there was a risk that Plum Organics baby food could contain heavy metals, it would decrease their likelihood of purchasing. | 90.6% |
| Of those who would not expect Plum Organics baby food to contain industrial chemicals like perchlorate: If they found out there was a risk that Plum Organics could contain industrial chemicals like perchlorate, it would decrease their likelihood of purchasing. | 85.4% |

---

[3] "RDF" refers to Plaintiffs' Response to Defendant's Fact.

7

(2-ER-63, ¶13; 2-ER-72, Table 2.)

Plaintiffs' conjoint survey also showed the materiality of this information, finding a 61.5% reduction in market value for puffed snack products and 54.5% reduction in market value for baby food pouches that omitted the statement "high risk of containing detectable levels of heavy metals [or perchlorate or heavy metals and perchlorate]" compared to those with the statement. (4-ER-646-48, ¶15.)

**IV.    Plum Chose Not To Mitigate The Risk Of Heavy Metals And Perchlorate In Its Baby Food**

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████ (4-ER-471-72:PAF5.) ██████████████

- ████████████████████████████ (4-ER-517:2-12; 4-ER-461-64:PAF3-5;; 4-ER-521:19-20 ███████████████ ████████████████; 4-ER-474:PAF10.)

- ██████████████████████████████ ████████████

- ██████████████████████████████ (4-ER-465:PAF8; 4-ER-700:15-22.)

██████████████████████████████████████

██████████████████████████████████████

(2-ER-28:9-12 ████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████ nature of one product, Plum *still* did not act. It is

9

undisputed that at least as of 2017, ████████████████████████

████████████████████████████████████ (4-ER-532:6-

15.) ██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ (4-ER-

476-77:PAF19-20.)

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ (*See* 4-ER-517:2-12; 4-ER-461-64:PAF3-5; 4-ER-521:19-20;

474:PAF10.)

██████████████████████████████████

████████████████████████████████████████

10

 Plum knew

but did nothing.

## V. Heavy Metals And Perchlorate Create Well-Recognized Health And Safety Issues For Infants And Toddlers

The record below—including Plaintiffs' expert opinions, deposition testimony, and statements by government entities—demonstrates that the risk or presence of heavy metals and perchlorate in Plum's baby foods constitutes an unreasonable safety risk. The district court correctly observed that the evidence shows Plum's baby food contains heavy metals and/or perchlorate which are "all known to pose health risks to humans, and particularly to infants and children." (1-ER-11 (noting Plum did not effectively dispute these facts).) But the district court ultimately found that despite these facts, the presence of heavy metals and/or perchlorate does not create an "unreasonable" safety risk. (1-ER-11.)

---

[4] Plum did not perform any surveys in this litigation.

### A.    The Safety Risk was Unreasonable

Plaintiffs' (unchallenged) expert, Dr. Hannah Gardener, opined on the safety and accumulation of heavy metals in infants and toddlers. (3-ER-322, ¶¶9-13; 3-ER-331-32, ¶¶51-52; 3-ER-338, ¶69; 3-ER-343-44, ¶¶84-85; 3-ER-354-55, ¶107; 3-ER-270-71, ¶¶11; 2-ER-29:4-7.) As Dr. Gardener makes clear, heavy metals accumulate in the body, and are "causally associated with an increased risk of adverse health effects." (3-ER-322, ¶¶9-13; *see also* 3-ER-331, ¶50; 3-ER-333, ¶56; 3-ER-339-40, ¶72; 3-ER-343-44, ¶84; 3-ER-348, ¶93; 3-ER-351, ¶¶99-100; 3-ER-352-53, ¶105; 3-ER-354-55, ¶107; 3-ER-355, ¶109; 2-ER-25:22-26:12 (discussing opinion regarding accumulation of heavy metals).)[5]

The safety risk was also unreasonable because Plum knew it could mitigate these toxins' presence in its baby foods and did nothing. Statement of the Case ("SOC") IV. This failure was ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████

---

[5] Dr. Gardener provided two expert reports in this case. The "Safety Report" dated December 20, 2022, and the "Function Report" dated September 18, 2023. (3-ER-319-359; 3-ER-267-277.) Plum did not seek to exclude either report and offered no rebuttal experts as to either report.

12

**B.**     **Heavy Metals and Perchlorate Affect The Nutritional Value Of Baby Food**

Dr. Gardener's Function Report shows that the nutritional value of the baby food is negatively impacted by the presence of heavy metals and perchlorate. (3-ER-270, ¶11 ("When baby food is contaminated with heavy metals and perchlorate, the purpose and value of consuming the baby food is negatively impacted."); 3-ER-271, ¶13 ("the presence of heavy metals and perchlorate, consumed in baby food, negatively impacts the healthy growth and development of babies and toddlers, with impacts that extend throughout the lifespan."); 2-ER-30:4-8.) Dr. Gardener further opined:

> When baby food contains these toxic compounds that have no nutritional or health purpose, it affects the physical make-up of the food and contradicts the intended purpose of the baby food . . . [T]he contamination of baby food with heavy metals and perchlorate degrade the health impacts and nutritional value of baby food[.]

(3-ER-270-71, ¶11; *see also* 3-ER-274, ¶23 ("Heavy metals compete with essential nutrients for binding sites, thereby reducing the nutritional value and beneficial impacts of the food. As such, the presence of heavy metals that compete for binding sites can affect the nutritional value of the foods that they contaminate . . . the presence of heavy metals impacts the food's ability to promote health and development of the brain and other organs in developing babies and toddlers."); 3-ER-275, ¶25-26; 3-ER-277, ¶31-32).)

13



(5-ER-773:25-775:7.)

Plaintiffs'

marketing expert opined that "Consumers would see the possible presence of Heavy

Metals, [or] perchlorate . . . in Defendants' baby food as inconsistent with their

positioning as quality products." (4-ER-597.)

## VI. Consumers Did Not And Could Not Have Had Plum's Superior Knowledge That Its Baby Food Contained Heavy Metals Or Perchlorate

Consumers, like Plaintiffs, lack the specialized knowledge and confidential

company data necessary to learn of the presence or risk of heavy metals and

perchlorate in Plum's baby food. (2-ER-85:9-13 ("I don't have a lab in my home to

individually test foods."); (2-ER-128:12-15 ("Q. Do you have the ability to

determine whether heavy metals are in the baby foods that you purchase? A. I

personally don't."); (2-ER-211:3-7 ("I'm not a scientist, and I don't have the means

to go test out my foods."); *see also* 4-ER-637, ¶153 ("Short of conducting an

independent investigation (which I believe to be highly unlikely), consumers would

have no way to knowing that Plum's products, as alleged by Plaintiffs, contain

[heavy metals or perchlorate]"); (4-ER-597.)

14



Plum chose not to share its confidential and superior knowledge with consumers. It is undisputed that Plum publicly claimed to meet government standards and regulations, (4-ER-469-70:PAF1), despite ████████████ ████████████ (*Compare* 5-ER-882 ██████████████ ███████████████████████████ *with* 5-ER-853 ███████████ ████████████████████ 4-ER-522:21-523:3 ████████ ████████████████████ As stated above, since Plum "do[es] ███████ ███████████████" (4-ER-527:11-528:5; *see also* ████████ it made these false claims of meeting unspecified government standards without having any regular testing data.

15

To keep consumers in the dark, Plum publicly claimed to have a comprehensive quality and food safety program that included testing for heavy metals, ███████████████████████████████████████████ ███████████████ (3-ER-367.) *See* SOC IV. Plum also remained silent ████████ ███████████████████████████████████████████ ██████████████ *See* SOC IV.

As part of its deception, Plum also took steps to cast doubt on the heavy metals test results publicly reported by the Clean Label Project ("CLP") in 2017. (3-ER-398 ("[w]e- and others- are highly skeptical of the findings contained in the [CLP] report[,]"; 5-ER-887 (same).) It is undisputed that Plum attempted to assure consumers it was conducting its own comparative testing (because, after all, it was skeptical of the third-party testing), and promised to share its testing results, but did not do so until after the Congressional Subcommittee made the results public in the September 2021 Second Report, *four years* after Plum completed its testing. (4-ER-476:PAF18.)

## VII. Plum Actively Concealed The Information On The Presence Of Heavy Metals In Its Baby Foods

The record demonstrates various efforts by Plum to conceal the presence of heavy metals and perchlorate in its baby foods.

16

- Plum publicly claimed to *meet and exceed* U.S. government regulations and standards—███████████████████████████████████ ██████████ SOC VI; (4-ER-469-471:PAF1-4.)

- Plum questioned the CLP results even after its own testing confirmed them. SOC VI; (4-ER-476:PAF16-17.)

- In 2017, ██████████████████████████████████████ ████████████████████████ and promised consumers it would share the testing "as soon as we have results," but it never did share those results until four years later. SOC VI; (4-ER-475:PAF15; 3-ER-398; 4-ER-476:PAF18.)

- ███████████████████████████████████████████ ███████████████████████████████████████████ SOC II; SOC IV.

- Plum made numerous false public claims about its "comprehensive" quality and ingredient testing program. SOC IV; (4-ER-542:10-15 ███████████████████████████████████████████ ████████████████████████████████████████; (5-ER- 817:19-24.) ██████████████████████████████████ ████████████████████

17

- Plum publicly claimed it had an "ingredient testing program for new suppliers which includes testing for heavy metals," but ███████ ████████████████████████████████████████ ████████████████████████████████████████ SOC IV.

- Plum concealed that it designated ████████████████ ████████████████████████████████████████ ██████████████████████████████████ SOC IV. ████ ████████████████████████████████████████ (4-ER-517:2-12; 5-ER-804:10-805:5.)

- With respect to perchlorate, Plum ████████████████ ██████████████████ SOC III.

## VIII. Plum's Request For Summary Judgment On The California Claims Relied Exclusively On *Hodsdon*

Plum sought summary judgment on Plaintiffs' California claims relying solely on *Hodsdon*'s unreasonable safety hazard and central function requirements. (3-ER-400-04.) Plum's position was clear: if Plaintiffs cannot satisfy the two elements of *Hodsdon*, the inquiry ends, and summary judgment should be entered for Plum. Plum did not move on the *LiMandri* factors and repeated its position during the summary judgment hearing. (2-ER-24:2-8 ("…we don't even reach or consider *LiMandri* if the plaintiffs cannot in fact satisfy the unreasonable safety standard or

18

central function."); 2-ER-33:12-14 ("MR. SIPOS: Your Honor, just to restate our position there. The *LiMandri* analysis is [] unnecessary once prongs 1 and 2 of *Hodsdon* are unsatisfied."); 2-ER-35:10-12 ("Just to levels said again, I just would be loath if I didn't reemphasize that none of this matters if you don't get past *Hodsdon* central function."); 2-ER-37:15-38:1 ("MR. SIPOS:  So [] there's no separate motion on [active concealment] because it is necessarily foreclosed when you apply *Hodsdon* properly"); 2-ER-34:7-13; 2-ER-36:6-38:5).)

Because Plum relied solely on *Hodsdon*, Plaintiffs were deprived of the opportunity to demonstrate to the district court that they satisfied *LiMandri*'s exclusive knowledge factor and expound on how courts interpret that factor.[6] As to *LiMandri's* active concealment factor, it was Plaintiffs who pointed out to the district court that their claims could proceed even if Defendants' motion was granted in its entirety because Defendant *failed to move on active concealment*, a separate basis for Plaintiffs' claims. (Dkt. 238 at 15-17, 24-25.)

## IX.  The District Court's Summary Judgment Order On Plaintiffs' CLRA And UCL Claims

The district court granted Plum's summary judgment motion after concluding that liability only exists if Plum "had a duty to disclose" because the defect: "'(1) []

---

[6] As to "exclusive knowledge," Plum limited its argument to Plaintiffs' claims under the New York General Business Law.

relates to an unreasonable safety hazard or (2) [] is material, central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors.'" (1-ER-10 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (citation omitted) and citing *Hodsdon*, 891 F.3d at 864).) The district court held that Plaintiffs' CLRA, UCL, and FAL claims did not meet these requirements. (1-ER-10-16.)

As to the *Hodsdon* safety inquiry, the district court concluded that there was not sufficient evidence to establish "an *unreasonable* safety hazard" and Plaintiffs "fail[ed] to cite any authority that the potential accumulation of [heavy metals and perchlorate] can lead to an 'unreasonably unsafe' condition." (1-ER-11-12 (emphasis in original).) For the central function inquiry, the district court stated that Plaintiffs failed to demonstrate "whether the presence or risk of heavy metals and perchlorate impacts the intended purpose or 'central function' of baby food" because "no reasonable jury could determine that the presence of heavy metals and perchlorate renders the product incapable of nourishment." (1-ER-13-14.)

The district court then *sua sponte* decided that the *LiMandri* factors were not satisfied. The district court found there was no exclusive knowledge of the "high risk of containing heavy metals or percolate [sic]." (1-ER-12-13.) The district court also concluded that the "active concealment factor" was not satisfied because Plaintiffs did not identify specific facts to show that Plum "conceal[ed] or cover[ed]

20

up . . . the high risk of heavy metals and perchlorate in [its] products." (1-ER-13.) Plum's motion and briefing make no mention of either of these factors under *LiMandri*. (3-ER-399-404.)

The district court dismissed the UCL claims under the unfair and unlawful prongs. (1-ER-15-16.) As to the unfair prong, the district court determined that the "tethering test" and "balancing test" were not satisfied and Plum's conduct was not "substantially injurious, immoral, or unethical." (1-ER-15 (citing *Hodsdon*, 891 F.3d at 866-67).) The district court then held since the predicate violations of the FAL and CLRA claims were dismissed, Plaintiffs could not meet the unlawful prong. (1-ER-15.)

## SUMMARY OF ARGUMENT

Time and again, federal courts have concluded that the state of the law on the proper standard to be used to examine California omissions-based consumer claims is unsettled and in general disarray. Some courts have found that the standard set forth in *LiMandri* is the proper standard, while others, like the district court here, used the standard set out in *Hodsdon*.

Because of this disarray, the Court should grant Plaintiffs' motion and certify the question to the California Supreme Court. In the alternative, the district court's summary judgment order should be reversed as to Plaintiffs' CLRA and UCL claims and this matter remanded for trial because *Hodsdon* merely used an alternative

21

standard that is not applicable to the facts of every case (as evidenced by the fact that it has not been adopted by California courts). Regardless, Plaintiffs' claims should have survived because they raise genuine issues of material fact under either test.

With respect to *Hodsdon*, the record contains unchallenged expert opinion, deposition testimony, and Plum's own internal documents supporting the first factor—that the presence of heavy metals and perchlorate in baby food presents an unreasonable safety hazard. The district court agreed, in part, except it erroneously found that Plaintiffs did not present evidence that the safety risk posed by the accumulation of heavy metals and perchlorate was unreasonable. In so doing, the district court ignored much of the evidence presented on this issue.

The district court also failed to give proper weight to Plaintiffs' unchallenged expert's opinions that the presence of heavy metals and perchlorate in baby food impacts its central function. While the district court recognized the expert opinion in analyzing this second *Hodsdon* factor, it appeared to misconstrue the opinion, finding that no jury could find that the presence of heavy metals or perchlorate renders a product incapable of nourishment. But Plaintiffs' expert did not come to that conclusion. Dr. Gardener opined that the presence of heavy metals and perchlorate *affect the purpose and impact the physical make-up* of baby food because these toxins compete with essential nutrients for binding sites, degrade the food, and

22

negatively affect its purpose, which is to provide nutrition and support health. The district court's focus on whether the presence of heavy metals and perchlorate strip baby food of providing general nourishment eviscerates all food contamination cases because all foods irrespective of a defect will provide *some* caloric nourishment.

The district court then *sua sponte* chose to analyze Plaintiffs' claims under the test set forth in *LiMandri*. Plum did not move under that test and repeatedly acknowledged that it was purposefully not doing so because the court's inquiry should start and end with *Hodsdon*. The consequence of the district court's error in its *sua sponte* consideration is evident in that it failed to apply the proper test to the first *LiMandri* factor, exclusive knowledge. The district court improperly interpreted this factor literally-- finding that Plum did not have "exclusive" knowledge of the presence of heavy metals and perchlorate in *its own* baby foods because:

(1)  Plum had allegedly disclosed this fact on its website; and

(2)  news articles on this issue are available online.

However, the proper standard is whether Plum had *superior* knowledge and whether public information was reasonably accessible to Plaintiffs. It was not. The articles upon which the district court relied were decades old, some required a subscription to access, and the vast majority did not even touch on Plum's baby foods specifically. Not a single Plaintiff had seen these articles, and some are avid news readers.

23

Further, in Plum's 2017 website "disclosure," it gave false assurances about meeting or exceeding government standards when none exist. It also expressly stated that it was "skeptical" of a third party's testing and to assuage any potential concern, it promised to produce test results of its own. But Plum did not share its own test results until four years later when the Congressional Subcommittee released the test results in its Second Report. Once Plum's results were public, it was evident why Plum never disclosed them voluntarily—they confirmed the third-party testing of which Plum was so "skeptical."

These steps, and others, to actively conceal the presence of heavy metals and perchlorate provided another basis for Plaintiffs' omissions-based claims. One of the *LiMandri* factors analyzes whether a defendant takes steps to actively conceal its wrongdoing. Again, Plum never addressed this separate basis for liability, and Plaintiffs pointed this out in their opposition. But the district court once again considered an issue not raised by Plum, finding that there was no genuine issue of material fact with respect to active concealment due to Plum's website "disclosure." But again, this "disclosure" was more like an outright denial and at most raised issues of fact. Further, the district court ignored myriad other evidence demonstrating Plum's active concealment, such as its claims that it complied with non-existent regulations and had a rigorous ingredient testing and a heavy metals monitoring program.

24

For these reasons and those expressed below, the Court should reverse the district court's entry of summary judgment on Plaintiffs' CLRA and UCL claims.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Alexander v. Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023) (citing *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019)). "Summary judgment is improper if 'there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council*, 322 F.3d 602, 610 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Viewing the evidence in the light most favorable to the non-moving party, [the Court] determine[s] whether genuine issues of material fact exist and whether the district court correctly applied the substantive law." *U.S. Sec. & Exch. Comm'n v. Husain,* 70 F.4th 1173, 1180 (9th Cir. 2023). *Sua sponte* decisions by the district court are subjected to a dual standard: *de novo* as to substantive aspects and abuse of discretion for the decision to enter summary judgment *sua sponte*. *See Arce v. Douglas*, 793 F.3d 968, 975-76 (9th Cir. 2015).

25

## ARGUMENT

### I.   PLAINTIFFS' QUESTION SHOULD BE CERTIFIED

On May 31, 2024, Plaintiffs moved this Court to certify the following question to the California Supreme Court:

> Under California law, what legal standard applies to a claim of deception by omission under the Consumer[s] Legal Remedies Act and the Unfair Competition Law?

(R. 10.1 at 10.) After Plaintiffs filed their motion, this Court certified a question to the Montana Supreme Court. *See Glacier Bear Retreat, LLC v. Dusek*, 107 F.4th 1049 (9th Cir. 2024) ("*Glacier Bear Retreat*"). *Glacier Bear Retreat* supports certification here as the question "'implicate[s] important state policy concerns' that 'are of broad application'" and supports the "'spirit of comity and federalism[.]'" *Id.* at 1053 (internal citation omitted); (R. 10.1 at 14-17, 18-20.) As in *Glacier Bear Retreat*, the answer to this question "is likely to have significant policy implications for the State" and a holding by this Court that may broaden or narrow the requirements for UCL or CLRA claims may "deprive the [California Supreme Court] of the opportunity to develop the issue in the first instance." *Glacier Bear Retreat, LLC v. Dusek*, 107 F.4th at 1053 (internal citation omitted); (R. 10.1 at 14-17.)

The question presented satisfies the applicable requirements for certification to the California Supreme Court. (*See* R. 10.1.)

26

**A.    Existing Court Decisions Regarding The Proper Standard Has Resulted In Confusion And Disarray**

The California Supreme Court has not addressed whether an omission-based deception claim under the CLRA and the UCL requires a showing of a duty to disclose and, if so, the factors necessary to meet the duty. (*See* R. 10.1 at 11-14.) In the meantime, courts have adopted different tests:

> Under one approach, a defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, "central to the product's function," **and** the plaintiff alleges one of the four *LiMandri* factors. . . . Under a separate approach, a defendant has a duty to disclose any time that a plaintiff alleges one of the following: (1) the defect relates to an unreasonable safety hazard; (2) the defect is material and related to the product's central function; **or** (3) the presence of one of the four *LiMandri* factors. *In re Toyota [RAV4 Hybrid Fuel Tank Litig.*], 534 F. Supp. 3d 1067[,] 1102 [(N.D. Cal. 2021)].

*Hammerling*, 615 F. Supp. 3d at 1085 (emphasis added and in the original). Another court imposed a duty to disclose, citing the four *LiMandri* factors, but expressly rejected an independent duty to disclose safety concerns. *See Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal.App.5th 1234, 1258-60 (2018) ("an independent duty to disclose safety concerns [does not] exist[] outside the[se] four situations where a duty to disclose is recognized by California courts.").

Other courts have not adopted the duty to disclose at all. *See Moran v. Prime Healthcare Mgmt., Inc.*, 94 Cal.App.5th 166, 188 (2023) (no duty to disclose the fees "under the CLRA beyond those imposed by existing state and federal laws and

27

regulations"); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835, (2006) *as modified* (Nov. 8, 2006) (an omission must be either "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose").

The inconsistent approach has left the caselaw in "general disarray." *See*, *e.g.*, *In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, ECF No. 281 at 2 (N.D. Cal. June 20, 2024); (Dkt. 281 at 2); *see also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1101 (internal citation omitted); *Hammerling*, 615 F. Supp. 3d at 1085 ("[T]he law concerning a [] duty to disclose in a fraudulent omissions case is 'marked by general disarray.' The disarray stems in part from the fact that there are (at least) two different tests to determine . . . a duty to disclose.") (internal citation omitted); *So v. HP, Inc.*, No. 22-cv-02327-BLF, 2022 WL 16925965, at *3 (N.D. Cal. Nov. 14, 2022) (same); *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022) (same); *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725, at *10 n.13 (S.D. Cal. Mar. 27, 2024) (same); *Neu v. FCA US LLC*, No. 5:23-cv-00509-MCS-KK, 2023 WL 10406710, at *7 (C.D. Cal. Nov. 13, 2023) ("California law on a party's duty to disclose in the context of omissions claims brought under California consumer protection laws is unsettled."); *Hedrick v. BSH Home Appliances Corp.*, Nos. 2:23-CV-04752-JWH-JDE, 2:23-cv-04752-JWH-

28

JDE, 5:23-cv-01496-JWH-JDE, 2024 WL 2190984, at *14 (C.D. Cal. May 14, 2024) (same). This disarray has resulted in disparate treatment of claims brought under California's consumer protection statutes.

### B.     California's Position As Presented By The Attorney General

On February 20, 2024 (after briefing before the district court was closed), the California Attorney General filed an amicus brief in *Capito v. San Jose Healthcare System LP*, S280018 ("Amicus Brief") stating that the UCL does not impose a duty to disclose. (R. 10.2 at 23-57.)  The Attorney General—as the chief legal official of California—made clear that California's view was that the UCL does not impose the duty to disclose analysis that is applicable to the common law of torts. (*See generally id*. at 41-47 (internal citations omitted).) Regarding the UCL, the Attorney General stated:

> Such a limitation would be inconsistent with the history, purpose, structure, and function of the UCL[.] The threshold 'duty to disclose' test applied by the appellate courts is a recent deviation from established UCL doctrine and borrows directly from the common law tort standards that the Legislature and this Court have done away with in the UCL context. It should be rejected.

(*id*. at 41.) Although the Amicus Brief did not state a view on the CLRA omission-based claims, (*id*. n.4), the same principles would extend to the CLRA.

29

### C.   The Duty To Disclose Should Be Limited To Common Law Torts Claims

The California Supreme Court has never held that a plaintiff alleging omissions-based UCL or CLRA claims must demonstrate that a defendant has a duty to disclose. (*See* R. 10.2 at 41 (regarding the UCL).) As recognized in *Chamberlan v. Ford Motor Co.*:

> The plain language of the relevant sections of the CLRA and the UCL does not require a plaintiff to allege that the defendant has a duty of disclosure. Although [d]efendant argues that a manufacturer or a seller has no duty to make disclosures to the buyer, it has cited no case law to show that such a duty must be alleged in order to state a claim under the CLRA or the UCL.

No. C 03-2628 CW, 2003 WL 25751413, at *4 (N.D. Cal. Aug. 6, 2003). California courts have historically required only a showing of a likelihood of deception—not a duty to disclose—for omission claims. (*See* R. 10.2 at 43-47.)

Neither the UCL nor the CLRA has the same requirements as common law fraud. (*See id*. at 41 (quoting *Bank of the W. v. Superior Ct.*, 2 Cal.4th 1254, 1266-67 (1992)) (regarding the UCL, "the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. As a result . . . one need only show that 'members of the public are likely to be deceived.'")); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (defendants failed to establish that "CLRA actions must fulfill the same elements as common law fraud claims."); *Falco v. Nissan N. Am., Inc.*, 96 F. Supp. 3d 1053, 1062-63 (C.D. Cal. 2015) ("a

30

manufacturer that is not the direct seller may be held liable for failure to disclose material defects under the CLRA and the UCL, although not for common law fraud"); *Callaway v. Mercedes-Benz USA, LLC*, No. SACV 14-02011 JVS (DFMx), 2016 WL 11756827, at *7 (C.D. Cal. 2016) (citing *Falco*, 96 F. Supp. 3d at 1062) ("In California, the scope of the duty to disclose under the CLRA is different than that of common law fraud."); *Daugherty*, 144 Cal.App.4th at 838 ("Unlike common law fraud, a [UCL] violation can be shown even without allegations of actual deception, reasonable reliance and damage.").

Certain courts have incorrectly applied common law fraud principles to UCL and CLRA omissions claims, including *LiMandri*. (*See* R. 10.2 at 42 (citing *LiMandri*, 52 Cal.App.4th at 336-38; *People v. Johnson & Johnson*, 77 Cal.App.5th 295, 325 (2022), *as modified on denial of reh'g* (Apr. 27, 2022), *review denied* (July 13, 2022), *cert. denied sub nom. Johnson & Johnson v. California*, 143 S.Ct. 847 (2023); *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 90 Cal.App.5th 1193, 1209-10 (2023)).) Other courts have required proof of a duty to disclose. For example, a California appellate court stated, "the omission must be contrary to a representation made by the defendant, or an *omission of a fact the defendant was obliged to disclose*." *Daugherty*, 144 Cal.App.4th at 835, *as modified*, (Nov. 8, 2006) (emphasis added). *Outboard Marine*, the case relied on by *Daugherty,* improperly borrowed this principle from a common law fraud case. *See Outboard Marine Corp.*

*v. Superior Ct.*, 52 Cal.App.3d 30, 37 (1975) (citing *Moe v. Transamerica Title Ins. Co.*, 21 Cal.App.3d 289, 306 (1971)). [7]

Although *Outboard Marine* and *Daugherty* imposed a duty to disclose requirement to a CLRA claim, neither case set a standard for determining what exactly constitutes a duty to disclose. *Outboard Marine*, 52 Cal.App.3d at 306 at 956; *Daugherty*, 144 Cal.App.4th at 835; *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1261 (2006) (finding the CLRA claim failed because the complaint "did not allege facts showing [defendant] was bound to disclose" the defect at issue). Though a specific standard or test for determining what constitutes a "duty to disclose" was absent from these cases, courts then began applying complex common law tort tests to the fraud by deception claims under the CLRA and the UCL, such as those found in *LiMandri*, and *Hodsdon* or both. *See supra*. But neither the UCL nor the CLRA imposes a duty to disclose as codified and the courts should not merge common law requirements with the statutory claims.

---

[7] The *Moe* court determined that concealing information is "actionable fraud." *Moe*, 21 Cal.App.3d at 306. In making that determination, the court cited to Civ. Code, § 1710, subd. 3. *Id.* Section 1710, however, plainly states that the definition of "deceit," "*within the meaning of the last section* [1709]," may consist of "[t]he suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." *See* Civ. Code, § 1710, subd. 3 (emphasis added). *Moe's* reliance on this statutory definition of deceit in analyzing a common law fraud claim has no relevance to a CLRA claim because the CLRA does not include such a limited definition of deceit by omission or suppression. *See* California Civil Code §§1750, *et seq*.

**D.    The Proper Standard Is "Likely To Deceive"**

The UCL and CLRA are intended to broadly and efficiently protect consumers from deceptive practices. *See Bank of the West*, 2 Cal.4th at 1266 (regarding "unfair competition," "[t]he Legislature intended this sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law") (internal quotations and citations omitted); Civ. Code. § 1760 (the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection"). The application of common law tort tests to UCL and CLRA claims has limited and complicated the broad conduct these laws were meant to guard against.

In the interest of efficiency and simplification in favor of consumers, the California Attorney General properly advocates for a "likely to deceive" standard under the UCL, rather than a "duty to disclose." (*See* R. 10.2 at 41-47.) This Court should do the same for both the UCL and CLRA. Indeed, this is the standard that is routinely applied to CLRA claims premised on misstatements and misrepresentations. *See, e.g.*, *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 263-67 (S.D. Cal. 2023), *on reconsideration in part*, No. 19cv1715-JO-AHG, 2023 WL 9692466 (S.D. Cal. June 6, 2023) (applying likelihood to deceive analysis to theories

of deception with respect to representations and disclosures); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (applying likelihood to deceive analysis with respect to statements on a label); *Myers v. Starbucks Corp.*, 536 F. Supp. 3d 657, 663 (C.D. Cal. 2021), *aff'd*, No. 22-55930, 2024 WL 3102800 (9th Cir. June 24, 2024) (plaintiff must allege conduct "'likely to mislead a reasonable consumer'" with respect to label statements) (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006), *as modified on denial of reh'g* (Jan. 31, 2006)); *Nagel v. Twin Lab'ys, Inc.*, 109 Cal.App.4th 39, 54 (2003) (same); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1361–62 (2003) (for CLRA claim, finding a triable issue of fact as to whether representations are likely to deceive a reasonable consumer).[8]

This "likely to deceive" approach would be consistent with the California Supreme Court's analysis of UCL claims. Although it has assessed and offered guidance on the UCL *numerous* times, it has *never* imposed a burden on plaintiffs of proving a defendant's duty to disclose omitted information. Instead, the California Supreme Court continues to recognize that the UCL was intended to discard

---

[8] Applying the "likely to deceive" standard for omissions would harmonize the analysis between misrepresentations and omissions since many cases implicate both. (*See* R. 10.2 at 45 ("Often, a consumer may be deceived through a combination of an affirmative misrepresentation and an omission of relevant information. Establishing a different test under the UCL for affirmative misrepresentations and omissions would create difficult line-drawing problems in these and other cases").)

traditional fraud elements in favor of a "likely to deceive" standard, which "the Legislature deliberately traded . . . for speed and administrative simplicity. As a result . . . one need not plead and prove the elements of a tort. Instead, one need only show that the members of the public are likely to be deceived." *Bank of the West*, 2 Cal. 4th at 1266 (citing *Barquis v. Merchs. Collection Ass'n*, 7 Cal. 3d 94, 109 (1972)).

This well-established standard has been consistently applied by California courts for over forty years. *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal.5th 279, 309 (Cal. 2020) ("[T]o state a claim under . . . the UCL . . . , based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.") (quoting *Kasky v. Nike*, 27 Cal.4th 939, 951 (2002); *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 211 (1983)); *Barquis*, 7 Cal.3d at 109; *People v. McKale*, 25 Cal. 3d 626, 635 (1979) ("What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any set of circumstances is a question of fact . . . the essential test being whether the public is likely to be deceived . . . .").

Plaintiffs' question should be certified to the California Supreme Court.[9]

---

[9] (*See* R. at 10.1.)

## II.    THE DISTRICT COURT ERRED IN APPLYING *HODSDON* TO SUMMARILY DISMISS THE CALIFORNIA STATUTORY CLAIMS

Applying the *Hodsdon* factors to every single omissions-based claim conflicts with California law and legislative intent. At best, *Hodsdon* offers an alternative test that does not apply to the facts of this case. Even if it did, Plaintiffs' evidence (both from Plum's documents and the unchallenged expert opinions) meet *Hodsdon's* test because the presence of heavy metals and perchlorate pose an unreasonable safety risk and/or impact the central function of Plum's baby food.

### A.    *Hodsdon* Conflicts With California Law And Legislative Intent And Does Not Apply To The Facts Of This Case

The district court found that it was "bound to follow the precedent set in *Hodsdon*," and applied *Hodsdon's* safety and central function test to Plaintiffs' claims. (1-ER-10-11 n.5.) But applying *Hodsdon* to omissions-based claims disregards guidance of the lower California appellate courts (*supra* I.D), the facts of this case (SOC II-VII), and the intent of the California Legislature (*supra* I.D).

Post-*Hodsdon*, California appellate courts still do not reference a requirement that an omission must present a safety hazard or be related to a product's central function. *See, e.g., Torres v. Adventist Health Sys./W.*, 77 Cal. App. 5th 500, 507–14 (2022), *review denied* (July 27, 2022) (no reference to safety hazard or central function and citing cases that do not address *Hodsdon* requirements); *People v. Johnson & Johnson*, 77 Cal.App.5th at 325-26 (limiting analysis to the *LiMandri*

36

factors); *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 90 Cal.App.5th 1193, 1209–18 (2023), *as modified on denial of reh'g* (May 16, 2023) (no reference to safety hazard or central function); *Moran, Inc.*, 94 Cal.App.5th at 182-84; *Saini v. Sutter Health*, 80 Cal.App.5th 1054, 1061 (2022), *reh'g denied* (July 7, 2022), *review denied* (Sept. 14, 2022) (same); *CDM Holding Grp., LLC v. Tidal Com. Inc.*, SACV 21-01204-CJC (DFMx), 2023 WL 3335069, at *3 (C.D. Cal. Apr. 4, 2023) (same); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1101–02 (same).

　　*Hodsdon* should not apply to the facts of this case because, as this Court noted, *Hodsdon* did not involve a "physical defect." *Hodsdon*, 891 F.3d at 864 ("Here, the alleged lack of disclosure about the existence of slave labor in the supply chain is not a physical defect at all, much less one related to the chocolate's function as chocolate.") The physical defect here—the presence of toxins in the baby food—relates to the quality and performance of the product. Restricting omission-based consumer protection cases to such a strict central function test would bar any food product case unless the consumer experiences a first of its kind illness or death because irrespective of any toxin or other defect, *all* food provides *some* caloric benefit. Such a narrowing of the UCL and CLRA is not supported by legislative intent or California state law itself. *Supra* I.D.

**B.     At Most, *Hodsdon* Is An Alternative Test That Plaintiffs Met With Sufficient Evidence Below**

If this Court continues to apply *Hodsdon*, the district court's conclusion that *Hodsdon* was not satisfied should be reversed. The evidence demonstrates numerous genuine issues of material facts relating to both the unreasonable safety risk and central function factors. *See Murphy v. Best Buy Stores, L.P.*, 690 Fed. Appx. 553, 554-55 (9th Cir. 2017) (reversing grant of summary judgment in a UCL case because testimony created genuine issue of material fact); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (genuine issues of fact required reversal of summary judgment on CLRA and UCL claims).

**i.     The disputed material facts  in the record as to an unreasonable safety hazard**

Unchallenged expert opinions, deposition testimony, internal documents, and other evidence support a finding that the heavy metals and perchlorate in Plum's baby food presented an unreasonable safety hazard. SOC V.A. And the district court agreed Plaintiffs' evidence sufficiently showed heavy metals and perchlorate "pose health risks to humans, and particularly to infants and children," "that at least lead … can be harmful in *any* amount," and that Plum did "not effectively dispute these facts." (1-ER-11 (emphasis added).) Based on the evidence, it rejected Plum's proposition that "the potential presence of trace heavy metals does not render baby foods unsafe." (1-ER-11 n.6.)

38

But as the district court continued its *Hodson* analysis, it erred by concluding that the record does not show the safety hazard is "*unreasonable*." (1-ER-11-12.) The district court cited two district court opinions where the plaintiffs failed to plead (at the motion to dismiss stage) an unreasonable safety risk, *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1209-10 (S.D. Cal. 2023) (not at issue here), or facts sufficient to support the theory that accumulation of heavy metals poses an unreasonable risk, *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *4-5 (S.D. Cal. Jan. 25, 2024). (1-ER-11-12.) The district court then stated that Plaintiffs likewise "fail[ed] to cite any authority that the potential accumulation of a chemical can lead to an 'unreasonably unsafe' condition." (1-ER-12.)

The district court's comparison of this case to *Grausz* and *Rodriguez* conflicts with both the evidence here and what it recognized as a safety hazard. The district court properly accepted the evidence of the health risks created by heavy metals ingestion and that at least with respect to lead, *any* amount can be harmful, and rejected Plum's evidence related to these issues. (1-ER-11-12.) Plaintiffs *had* provided "more evidence" and "authority that the potential accumulation of a chemical can lead to an 'unreasonably unsafe' condition," including an unchallenged expert opinion that the district court ignored. (*Compare* 1-ER-12 *with* SOC V.A.)

39

Dr. Gardener's Safety Report, relying on unchallenged expertise in epidemiology, concluded that bioaccumulation of each of the heavy metals and perchlorate is causally associated with increased risks of numerous adverse health effects. (*See* 3-ER-322, ¶¶9-13; 2-ER-25:16-26:12.) Other evidence that heavy metals and perchlorate create an unreasonable safety risk included:

- Testimony from at least nine witnesses that baby foods should not contain heavy metals because such materials are "unhealthy," "unsafe," and "harmful" for children, there are no safe levels of certain heavy metals, they carry health risks, and they accumulate in the body. SOC V; (4-ER-484-86:RDF1.)

- Testimony from Plum that testing for heavy metals relates to the safety and nutritional value of the baby foods and it could, if it chose to, control the levels of heavy metals in the finished product but decided to take no reasonable steps to address the inclusion of heavy metals. SOC IV.

- Plum's failure to implement ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ SOC II.

40

Accordingly, on the record below, it is at least a disputed material fact that heavy metals and perchlorate pose an unreasonable safety risk in Plum's baby foods. *See, e.g.*, *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2018 WL 1083395, at *7 (S.D. Cal. Feb. 27, 2018), *on reconsideration*, No. 16CV1617-GPC(JLB), 2018 WL 2149223 (S.D. Cal. May 10, 2018) (plaintiffs' testimony "presented a genuine issue of material fact as to . . . whether an unreasonable safety hazard exists.").

The question of whether the (court-recognized) safety hazard was "unreasonable" should have been sent to a jury. *Cf Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 962 (N.D. Cal. 2018) ("Thus, materiality—and therefore unreasonableness of a safety defect—is typically a question of fact reserved for a jury 'unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'"); *Sloan v. GM LLC,* No. 16-CV-07244-EMC, 2020 WL 1955643, at *33 (N.D. Cal. Apr. 23, 2020).

### ii.    The record shows that the central function of baby food is degraded by heavy metals and perchlorate

The district court also erred in concluding that *Hodsdon's* central function test was not satisfied. (1-ER-13-15.) The evidence shows that the "defect" (heavy metals and perchlorate) impacts the function and nutritional purpose of the baby food (providing nutrition and supporting health to babies and toddlers), such that summary judgment should have been denied. *See Hedrick*, 2024 WL 2190984, at

41

*15 ("the defect [(significant and undisclosed air pollution *risks*)] is related to the central function of [Defendants' gas stoves]—cooking—because it prevents that central function from being carried out safely.") (emphasis added); (2-ER-31:13-32:10.) As the district court contemplated, heavy metals' detrimental impact on the central function of baby food could be analogous to sugar, which "can be devastating and [] create all sorts of health issues"—yet, sugar is disclosed while heavy metals and perchlorate are not. (2-ER-32:11-18.)

In her Function Report, Dr. Gardener opined that the "presence of heavy metals and perchlorate in baby food has negative effects on the purpose of baby food." (3-ER-270, ¶10.) Dr. Gardener stated that the heavy metals and perchlorate have "no nutritional value and affect the purpose of the baby food" and affect "the physical make-up of the food and contradict[] the intended purpose of the baby food." (3-ER-270, ¶11.)  Dr. Gardener further opined:

> Heavy metals compete with essential nutrients for binding sites, thereby reducing the nutritional value and beneficial impacts of the food. As such, the presence of heavy metals that compete for binding sites can affect the nutritional value of the foods that they contaminate . . . the presence of *heavy metals impacts the food's ability to promote health and development of the brain and other organs in developing babies and toddlers*.

(3-ER-274, ¶23 (emphasis added).) Plum's own 30(b)(6) witness agreed with this conclusion and testified that heavy metal testing is related to the safety, quality, and nutrition of its baby foods. (5-ER-773:25-775:7.)

42

Plum argued that the district court should reject all of Dr. Gardener's opinions, without presenting any contradictory material or expert opinion. Plum simply fell back on the notion that the presence of heavy metals and/or perchlorate must cause the baby food to cease functioning as food completely to meet the central function test.[10]  If an omissions-based claim relating to food product must allege that the omitted information relates to an issue that "renders the product incapable of nourishment" (1-ER-14), no food mislabeling or contamination cases could ever meet *Hodsdon's* test.

## III.   THE DISTRICT COURT ERRED IN *SUA SPONTE* HOLDING THAT *LIMANDRI* WAS NOT SATISFIED

The district court *sua sponte* decided that Plum did not have a duty to disclose under *LiMandri* (1-ER-12-13) even though Plum did not move on the *LiMandri* factors and repeatedly disavowed that a *LiMandri* analysis was required for it to win its summary judgment motion.  SOC VIII.  As a result, Plaintiffs were not given the opportunity to fully brief the legal and factual issues presented by the application of *LiMandri*.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 971-72 (9th Cir. 2010)

---

[10] The district court misconstrued Dr. Gardener's opinion when it stated, "no reasonable jury could determine that the presence of heavy metals and perchlorate renders the product incapable of nourishment." (1-ER-14.) In her Function Report, Dr. Gardener opined that the presence of heavy metals and perchlorate in baby food negatively affects the *nutrition* of baby food, her opinion did not relate to nourishment.

(en banc) (finding that before a district court can grant summary judgment *sua sponte* under Rule 56(f), it must give the plaintiff "reasonable notice that the sufficiency of his or her claim will be in issue") (citation omitted); *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 (9th Cir. 2019) ("A district court may only grant summary judgment *sua sponte* if the losing party has reasonable notice that the claims are at issue and an opportunity to be heard.") (internal citations omitted); Fed. R. Civ. Proc. 56(f). Even if the district court provided sufficient notice and an opportunity to be heard, the evidence below demonstrates Plum's duty to disclose under *LiMandri's* exclusive knowledge and active concealment factors. At a minimum, this evidence creates genuine issues of material fact for resolution at trial.

The district court's *sua sponte* analysis erred in two ways. First, it applied a heightened standard to the knowledge factor. Second, it ignored determinative evidence as to two *Limandri* factors. For these reasons, the district court erred granting Plum's motion for summary judgment.

## A. *Limandri* Requires Superior, Not Exclusive, Knowledge

Under *LiMandri*, a defendant has a duty to disclose if it "… had exclusive knowledge of material facts not known to the plaintiff. . . ." *LiMandri*, 52 Cal.App.4th at 336. "[E]xclusivity is analyzed in part by examining whether the defendant had *superior* knowledge of the defect." *Hedrick*, 2024 WL 2190984, at *15 (quoting *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573,

583 (E.D. Cal. 2012)) (emphasis added). "[E]xclusivity need not be defined literally," and is not to be applied with "rigidity." *Id.*; *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014 (N.D. Cal. 2020) (quoting *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014) (collecting cases)); *Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-cv-01603-BLF, 2023 WL 6541865, at *13 (N.D. Cal. Oct. 5, 2023) ("'[C]ourts have held that the concept of exclusive knowledge should not be applied with strict literalism.") (quoting *Sumer v. Carrier Corp.*, No. 14-cv-4271, 2015 WL 3630972, at *2 (N.D. Cal. June 10, 2015)).

## B. Disputed Issues Of Fact Exist Regarding Whether Plum Had Superior Knowledge

The district court's erroneous analysis of the exclusive knowledge factor started and ended with the presence of certain information online. (1-ER-12-13.) A court should "look[] to the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant." *Anderson*, 500 F. Supp. 3d at 1015 (internal citations omitted). In other words, a court must address the reasonable accessibility of the information at issue, which requires the application of "the reasonable person standard, an objective test, to the circumstances of the case because reasonableness is generally regarded as imposing an objective standard." *Torres*, 77 Cal.App.5th at 511. "[T]he issue of reasonable access is generally a question of fact that can be decided as a

45

matter of law only if the evidence (or facts accepted as true for pleading purposes) can support only one reasonable conclusion." *Id.* at 512.

The reasonable accessibility inquiry is why courts often find that "the presence of the information from publicly available sources—for instance, online—does not automatically foreclose an exclusive-knowledge claim." *Anderson*, 500 F. Supp. 3d at 1014. The notion that public information available on the internet is dispositive of the exclusive knowledge requirement has been repeatedly rejected:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints. . . . Some may have. But GM is alleged to have *known* a lot more about the defect[], including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

*Falk v. GMC*, 496 F. Supp. 2d 1088,1097 (N.D. Cal. 2007); *see also, e.g.*, *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 WL 1814144, at *4 (N.D. Cal. June 2, 2022); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2019 WL 1765817, at *7 (N.D. Cal. Apr. 22, 2019); *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *10 (C.D. Cal. Sep. 27, 2016); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014).

The district court failed to consider the reasonableness of access and did not assess the "difficulty in reasonably finding the omitted information from sources other than the defendant." *Anderson*, 500 F. Supp. 3d at 1015 (internal citations omitted). Knowledge is not undermined just because "prospective purchasers with

46

access to the internet" can obtain the information by "scouring" the internet, even when the information is on defendant's own website. *Freund v. HP, Inc.*, No. 22-CV-03794-BLF, 2023 WL 5184140, at *5 (N.D. Cal. Aug. 10, 2023*)*. *Kavehrad v. Vizio, Inc.*, a case cited by the district court, recognized exclusive knowledge does not require that only the defendant has such knowledge but instead has knowledge "superior" to "ordinary consumers." No. 8:21-cv-01868-JLS-DFM, 2023 WL 2558535, at *7 (C.D. Cal. Jan. 26, 2023) (internal quotations omitted).[11] The district court improperly ignored that *superior* knowledge satisfies *LiMandri* and instead, exclusively focused solely on the public presence of the information at issue without any regard to the reasonable accessibility of that information.

To justify its finding that there was no exclusive knowledge, the district court relied on (1) reports and articles and (2) Plum's 2017 response to the CLP report. (1-ER-12-13.) But the reports and news articles cited by the district court were decades-

---

[11] The district court also relied on *Kumandan v. Google LLC*, 2022 WL 103551, at *9 (N.D. Cal. Jan. 11, 2022). (1-ER-13.) However, eighteen months after this decision, the *Kumandan* Court recognized that "[e]xclusive knowledge . . . does not mean facts known *only* to [the defendant]. What is required, rather, is that [the defendant] had knowledge . . . *superior* to that of ordinary customers." *See Freund* , 2023 WL 5184140, at *4 (internal quotations omitted and alterations in the original) (quoting *Zurba v. FCA United States LLC*, No. 5:21-CV-01824-JLS-SHK, 2022 WL 17363073, at *5 (C.D. Cal. Nov. 10, 2022)).

47

old,[12] and several of the online articles require a subscription to be accessed.[13] Further, every Plaintiff testified they had not seen these articles, despite being avid news readers. The district court was not even aware of this allegedly widely spread news. (3-ER-409:3-5) ("I've had three kids. Never heard about this issue [perchlorate and heavy metals in baby food] before. So I don't know how it could have been in the public discourse for decades.").)[14] This certainly is not construing the facts in favor of the non-moving party. *See U.S. Sec. & Exch. Comm'n v. Husain*, 70 F.4th 1173, 1180 (9th Cir. 2023).

The district court also improperly decided a disputed fact reserved for the jury by determining Plum's online response to the CLP's testing informed consumers that its products had a high risk of heavy metals. (1-ER-12.) Plum's response to the

---

[12] (*See* 1-ER-12-13 n.8 (210-21 (S.F. Chronicle, *EPA to Regulate Harmful Chemical in Drinking Water* (Feb. 3, 2011)); 210-22 ((Richmond Times Dispatch, *EPA May Not Take Action on Perchlorate* (May 7, 2008) 210-23 (Forbes, *Arsenic Found in Organic Brands Nudges FDA to Regulate* (Feb. 28, 2012)); 210-24 (Consumer Reports, *Arsenic in Your Food* (Nov. 2012)); 210-25 ((NBC News, *Dr. Mehmet Oz Discusses Study About Arsenic in Baby Formula* (Feb. 16, 2012)); 210-29 ((ABC News, *Rocket Fuel Chemical Found in Food, Water Supply* (Apr. 28, 2007); 210-30 (L.A. Times, Officials Blast EPA on Perchlorate Standards (Mar. 16, 2006).)

[13] (*See* 1-ER-12-13 n.8 210-30 (L.A. Times, Officials Blast EPA on Perchlorate Standards (Mar. 16, 2006)); 210-23 (Forbes, *Arsenic Found in Organic Brands Nudges FDA to Regulate* (Feb. 28, 2012)); 210-22 ((Richmond Times Dispatch, *EPA May Not Take Action on Perchlorate* (May 7, 2008).)

[14] The district court questioned how Plum would not have superior knowledge about the presence of heavy metals in its own baby foods. (Summary Judgment Tr. at 36:22-25.)

48

CLP report expressed strong reservations, questioned the validity of the CLP report, offered empty promises about sharing testing results later, and avoided admitting its baby foods may contain heavy metals. As Plum stated:

> We—and others—**are highly skeptical of the findings contained in the recent Clean Label Project report**. Given our mission and our commitment to safety, Plum is in the process of conducting comparative testing. **We will share the findings as soon as we have results.**
>
> **We can't validate the report or the findings that were released. We agree that some media headlines have added to the confusion** and concerns about the study and its methodology are being raised in a variety of places. We are requesting more information from the Clean Label Project.
>
> Heavy metals are present in the environment, including soil and water. Whether you are growing your own produce in your backyard, buying fresh produce from a farmer's market or purchasing a product in the supermarket, these naturally occurring substances will likely be present in the food **to some extent.**

(3-ER-398 (emphasis added); *see also* 5-ER-888.) There was not a single reference directly to Plum's baby foods or a "high risk." This strategic and self-serving public relations dance to avoid admitting a risk, let alone a high risk that Plum's baby food contains heavy metals, does not provide a sufficient basis to conclude *as a matter of law* that the reasonable person would understand this statement as a disclosure. (1-ER-9.)

The district court found that response sufficient  - as a matter of law – to disclose the "high risk of containing heavy metals or perc[hl]orate." (1-ER-12.) But

49

Plum's response is anything but transparent that would allow for such a legal finding and can hardly be viewed as a public disclosure about the "high risk" of inclusion of heavy metals.

Plum published an update that continued its confusing statements by vaguely claiming that its own "testing confirmed that the *averaged* results for heavy metals in all *tested Plum products* gave concentrations that are *typical* for *those ingredients*." (3-ER-398.) This statement cannot be deemed a "disclosure" because it is neither logical nor informative: is Plum saying it compared final lot testing to ingredient testing and, if so, what are (1) "those ingredients", and (2) the "typical" concentrations? And what products did Plum test, and what were the "averaged results"? Plum's response left all of the questions unanswered. Yet, it knew its testing confirmed the high risk or presence of heavy metals in the baby foods, and the range of levels of heavy metals in specific products it tested. Plum never recanted its skepticism of the CLP test results. Only after Plum's hand was forced, and after the filing of this case, did Plum post on its website the actual test results. In the end, Plum's position that the public had knowledge of these "typical" "concentrations" and "ingredients" was never corroborated or supported in this litigation and was disputed by Plaintiffs and the evidence. Thus, it was a factual determination that should have been reserved for the jury.

50

Plum's response to the CLP report also gave false assurances about meeting or exceeding government standards:

> The results also demonstrate our tested products are below exposure limits set by certain domestic and international regulatory bodies. As a comparison, at European Union [EU] regulatory limits (which in many cases are much stricter than US standards), a serving of fresh fruit, fresh leafy green vegetables or rice crackers could expose a child to greater levels of lead, cadmium or arsenic (total or inorganic) than the tested Plum products.

(3-ER-398.) First, Plum's statement that EU regulatory limits are "much stricter than US standards," implies there are US standards for heavy metals in fruits and vegetables, which there are not. Second, Plum fails to identify EU limits or those of "the tested Plum products." Third, once again, Plum is silent on exactly what ingredients or products it tested.

Finally, Plum's response to the CLP report does not address perchlorate at all.[15] (3-ER-398.)  Therefore, the district court erred by relying on Plum's response to the CLP report as barring Plum's exclusive knowledge as to perchlorate.

Plaintiff also submitted three *unchallenged* expert reports—including two surveys—showing consumers did not expect or know this information and that the

---

[15] As with active concealment, the district court failed to distinctly analyze Plaintiffs' claims with respect to perchlorate. The district court did not cite a single news article regarding perchlorate that was published in the last decade. (1-ER-13 (The ABC News article "Rocket Fuel Chemical" (perchlorate) cited by the district court was published in 2007, not 2017.).)

51

information was not reasonably accessible to consumers. (4-ER-454-55:PAF1; 4-ER-491:RDF1.)  This evidence showed that survey respondents were as likely to expect *insect parts* in baby food as heavy metals or perchlorate. (4-ER-454-55:PAF1.) These expert reports were largely ignored by the court. Notably, the court misconstrued one expert report in one of the few references it made. The court referenced a single question in one survey that determined a third of the survey respondents were aware of the February 2021 Congressional Report. (1-ER-13.) But that question merely established the percentage of survey respondents that were aware of the report *as of the date of the survey*. It is undisputed that the February 2021 Congressional Report post-dated Plaintiffs' purchases and actually *informed the Plaintiffs about heavy metals* in the baby foods. A report that informed Plaintiffs of a defect cannot be deemed to show Plum did not have exclusive knowledge of the defect. And even if the survey response regarding this report was relevant to Plum's exclusive knowledge, this is the type of evidence that creates a genuine issue of fact. *See Gold v. Lumber Liquidators, Inc.*, No. 14-cv-05373-RS, 2019 WL 650426, at *4 (N.D. Cal. 2019); *see also Oddo v. United Techs. Corp.*, No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663, at *14 (C.D. Cal. Jan. 3, 2022) (finding questions of fact as to exclusive knowledge where plaintiff did not discover information prior to purchase and disputes existed "as to the extent of [plaintiff's] online searching, and how broadly he had to search to find" information).

52

Under the district court's reasoning, *any person* would be assigned knowledge of *any information available online*, even if years old, behind a paywall, or not responsive to a Google search. This is putting a daily or even hourly duty on a consumer to perform online research on every possible issue on any future purchase—even if the consumer is not in the market for a product until years later. For this reason and those expressed above, this Court should conclude that the district court erroneously found that the lack of exclusive knowledge bars Plaintiffs' California statutory claims.

## IV.    GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER PLUM ACTIVELY CONCEALED THE PRESENCE OF HEAVY METALS AND PERCHLORATE

That Plum actively concealed the presence of heavy metals and perchlorate formed a separate basis for Plaintiffs' claims. (Dkt. 238 at 15-17, 24-25.)  Even though Plum did not move on this basis,[16] the district court concluded that Plum did not actively conceal the risk of heavy metals or perchlorate. Since the facts show that Plum took steps to prevent consumers from discovering that the baby foods contained or had a high risk of heavy metals or perchlorate, the district court's findings as to active concealment should be reversed.

---

[16] (*See* 2-ER-37:15-17 ("MR. SIPOS:  So [] there's no separate motion on [active concealment] because it is necessarily foreclosed when you apply *Hodsdon* properly").)

53

"Active concealment occurs when a defendant prevents the discovery of material facts." *Rubenstein v. The Gap, Inc.*, 14 Cal.App.5th 870, 878 (2017). Examples of active concealment include denial or downplaying of the defect and failure to fully disclose the full extent of the problem. *See, e.g.*, *Johnson & Johnson*, 77 Cal.App.5th at 326 (denying appeal of an adverse judgment where the lower court found the defendant had actively concealed defects regarding pelvic mesh products by "undert[aking] 'marketing efforts focused on downplaying and rebutting the FDA's notices'" about complications from the products); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) (finding allegations that "Apple falsely reassured consumers that its iDevices did not contain security vulnerabilities that Apple knew they contained" sufficient to show active concealment); *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 WL 8379784, at *6-7 (C.D. Cal. May 4, 2009) (finding allegations that defendant "knew about the problem, developed measured and selective responses to . . . complaints [about the problem], but concealed the problem from the general customer base" sufficient to show concealment). Courts have also found the "mischaracteriz[ation] . . . of the defects as normal performance" is considered active concealment. *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, CV-1706656-ABF-FMX, 2019 WL 6998668, at *6 (C.D. Cal. Sept. 5, 2019).

Relying once again on Plum's 2017 response to the CLP Report, the district court found that it did not actively conceal the baby food contained heavy metals or perchlorate. (1-ER-13.) In doing so, the district court cited to *Kavehrad*. *See* 2023 WL 2558535. In *Kavehrad*, the plaintiffs alleged the defendant sold televisions that suffered from a power-failure defect and that the defendant tried to "downplay the significance" of the defect as "not common." *Id.* at *2. In its motion to dismiss ruling, the court held that the plaintiffs had not adequately alleged active concealment of that defect because the defendant had disclosed the issue "on a dedicated page of its customers support site" and this website provided "tips" to address the issue and promised "a firmware update that would fix the problem." *Id.* at *5.

*Kavehrad* is different from this case because there, the defendant both acknowledged the defect at issue and provided solutions to that defect on its website. *See id.* at *2. Plum has never addressed perchlorate in its baby food. Second, with respect to heavy metals, Plum has only provided its customers mistruths and deflections:

(1) Plum told its customers that it complied with FDA regulations on heavy metals ██████████████████████, SOC VI;

(2) Plum publicly claimed to have an "ingredient testing program for new suppliers which includes testing for heavy metals," ████████ ██████████████████████████, SOC. IV;

55

(3) in response to the CLP report, Plum imputed uncommon knowledge on consumers of the average amount of heavy metals in each ingredient, and also stated that it was conducting its own comparative testing because it was "highly skeptical" of the CLP's findings and would "share the findings as soon as [it] ha[d] results." (4-ER-476:PAF17-18.) ██████████████████████████████████████████ Plum did not publicize them until the Subcommittee made it public four years later. SOC VI;[17]

(4) ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ SOC II, IV; and

---

[17] It is this type of self-serving (and contradictory) "public" statement that the district court previously found created a material dispute regarding whether a company disclosed certain information. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023) ("The silence noted above combined with Google's surrounding statements regarding what it means to 'browse privately,' means that a material dispute of fact remains regarding the scope of users' consent."). Likewise, Plum's response to the CLP report should not have been dispositive, as the district court found. (1-ER-12-13.) The response is just Plum doubling down on its continued misrepresentation by feigning skepticism of CLP's testing simply to swat away any potential concern over heavy metals.

56

(5) although Plum touted its ████████████████████

███████████████████████████████████

████████████████ SOC IV, in actuality, Plum had ████████

█████████████████ *Id.*

Plum's actions demonstrate its active concealment. These are clearly concrete efforts made to create the illusion that Plum had removed any risk of heavy metals if there were any. And notably there is not a single piece of evidence in the record where Plum states, "Our baby foods have a high risk of heavy metals" or ████████████

███████████████████████████████ A fact finder could very well determine that these efforts to actively conceal material information are the very reason each Plaintiff and 94.5% of survey respondents did not expect Plum's baby food to contain heavy metals. SOC III.

The district court concluded these express efforts to downplay, deny, and mischaracterize materials facts were insufficient to meet the *LiMandri* factor. This constitutes reversible error because:

> [T]he non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party. Moreover, if the non-moving party adduces direct evidence of a genuine issue of fact, such evidence is not to be weighed against the moving party's conflicting evidence, but rather is to be submitted to the trier of fact for resolution.

*Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987) (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987)).

## CONCLUSION

For the foregoing reasons, this Court should certify Plaintiffs' question to the California Supreme Court. If the Court does not certify Plaintiffs' question, it should reverse the district court's granting of summary judgment as to Plaintiffs' CLRA and UCL claims, and the case should be remanded for class certification and trial.

Dated: August 19, 2024                    LOCKRIDGE GRINDAL NAUEN PLLP

*/s/ Rebecca Peterson*

REBECCA A. PETERSON, #241858100
Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com


LITE DEPALMA GREENBERG, LLC
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com

58

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgustafson@gustafsongluek.com

WEXLER BOLEY & ELGERSMA LLP
Kara A. Elgersma
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
E-mail: kae@wbe-llp.com

**Attorneys for Plaintiffs - Appellants**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 24-2766

    1)      I am the attorney or self-represented party.

    2)     **This brief contains 13,350 words,** including words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

    3)     I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
     [ ] it is a joint brief submitted by separately represented parties.
     [ ] a party or parties are filing a single brief in response to multiple briefs.
     [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** s/ Rebecca A. Peterson _____    **Date** August 19, 2024
*(use "*s/[typed name]*" to sign electronically-filed documents)*

60

## **CERTIFICATE OF SERVICE AND MAILING**

I hereby certify that on August 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: August 19, 2024                s/ Rebecca A. Peterson