No. 24-2766

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**Ludmila Gulkarov, et al.**

Plaintiffs-Appellants,

**v.**

**Plum, PBC,**

Defendant-Appellee

---

On Appeal from the United States District Court
for the Northern District of California

No. 4:21-cv-00913-YGR
Hon. Yvonne Gonzalez Rogers, Judge

**BRIEF FOR THE STATE OF CALIFORNIA AS
AMICUS CURIAE IN SUPPORT OF
APPELLANTS' REQUEST TO CERTIFY AN
ISSUE OF LAW TO THE CALIFORNIA
SUPREME COURT**

ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Supervising Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General

HUNTER LANDERHOLM
Deputy Attorney General
State Bar No. 294698
 1515 Clay Street, 20th Floor
 Oakland, CA 94612-0550
 Telephone: (510) 879-0751
 Hunter.Landerholm@doj.ca.gov
*Attorneys for Amicus Curiae the
State of California*

# TABLE OF CONTENTS

**Page**

Introduction and Statement of Interest ........................................................... 1

Background ..................................................................................................... 2

Argument ........................................................................................................ 5

    I.     There Is No Controlling California Precedent on the Standard for Deception by Omission Under the Unfair Competition Law ..................................................................... 6

    II.    This Case Presents a Recurring Question of Exceptional Importance That Is Worthy of Certification ........................... 14

Conclusion ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) ..................................................... 16

*Antonov v. General Motors LLC*, No. 8:23-CV-01593,
   2024 WL 217825 (C.D. Cal. Jan. 19, 2024) ............................................ 16

*Bank of the West v. Superior Court*,
   2 Cal. 4th 1254 (1992).................................................................. 2, 7, 8, 11

*Barlow v. State*,
   38 F.4th 62 (9th Cir. 2022)......................................................................... 5

*Barquis v. Merchants Collection Assn.*,
   7 Cal. 3d 94 (1972) ..................................................................................... 7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999)............................................................................... 13

*Centurion Properties III, LLC v. Chicago Title Ins. Co.*,
   793 F.3d 1087 (9th Cir. 2015).................................................................... 5

*Chern v. Bank of America*,
   15 Cal. 3d 866 (1976) ............................................................................... 13

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011)............................................................ 4, 9, 10

*Committee on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal. 3d 197 (1983) .......................................................................... 7, 12

*Daugherty v. American Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006)............................................................ 8, 9, 10

*Doe v. Uber Technologies, Inc.*,
   90 F.4th 946 (9th Cir. 2024)................................................................... 5, 6

*F.T.C. v. Bay Area Bus. Council, Inc.*,
   423 F.3d 627 (7th Cir. 2005)..................................................................... 14

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................... 9

*Ford Dealers Association v. Department of Motor Vehicles*,
   32 Cal. 3d 347 (1982)......................................................................... 11, 12

*Grausz v. Hershey Co.*, No. 23-CV-00028,
   __ F. Supp. 3d __, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) .............. 16

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Hawkins v. Shimano North America Bicycle Inc.*, No. 8:23-CV-02038,
__ F. Supp. 3d __, 2024 WL 2105596 (C.D. Cal. Apr. 12, 2024) ............ 15

*Hayden v. Bob's Red Mill Natural Foods, Inc.*, No. 23-CV-03862,
2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ......................................... 15

*Hayes v. County of San Diego*,
658 F.3d 867 (9th Cir. 2011) ...................................................................... 6

*Hedrick v. BSH Home Appliances Corp.*, No. 8:23-CV-00358,
2024 WL 2190984 (C.D. Cal. May 14, 2024) ......................................... 15

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ............................................................ passim

*In re Future Motion, Inc. Products Liability Litigation*, No. 23-MD-03087,
2024 WL 3408224 (N.D. Cal. Jul. 12, 2024) ........................................... 15

*In re Intel Corp. CPU Marketing, Sales Practices and Products Liability
Litigation*, No. 22-35652,
2023 WL 7211394 (9th Cir. Nov. 2, 2023) .............................................. 16

*In re International Harvester*,
104 F.T.C. 949 (1984) .............................................................................. 14

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ................................................................................ 8

*In re Toyota Motor Corp.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................... 16

*In re Trader Joe's Company Dark Chocolate Litigation*, No. 3:23-CV-0061,
__ F. Supp. 3d __, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024) ............ 15

*J.B. Williams Co. v. F.T.C.*,
381 F.2d 884 (6th Cir. 1967) ................................................................... 14

*Kaakejian v. General Motors, LLC*, No. 1:24-cv-0011,
2024 WL 3508681 (E.D. Cal. Jul. 23, 2024) .......................................... 15

*Kasky v. Nike*,
27 Cal. 4th 939 (2002) ................................................................................ 7

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ................................................................... 4

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) .............................................................. passim

# TABLE OF AUTHORITIES
## (continued)

**Page**

*MacDougall v. American Honda Motor Co., Inc.*, No. SACV 17-1079,
   2023 WL 9687349 (C.D. Cal. Oct. 3, 2023) ............................................ 16

*Mendoza v. Proctor and Gamble Co.*, No. CV 23-1382-1382,
   __ F. Supp. 3d __, 2023 WL 8860900 (C.D. Cal. Dec. 20, 2023)............ 16

*Murray v. BEJ Minerals, LLC*,
   924 F.3d 1070 (9th Cir. 2019)....................................................... 15, 16, 17

*Nevada Fleet LLC v. FedEx Corp.*, No. 17-CV-01732,
   2024 WL 199626 (E.D. Cal. Jan. 18, 2024)............................................. 16

*Paperno v. Whirlpool Corp.*, No. 23-CV-05114,
   2024 WL 1091192 (N.D. Cal. Mar. 13, 2024) ......................................... 15

*People v. Johnson & Johnson*,
   77 Cal. App. 5th 295 (2022)....................................................................... 4

*People v. McKale*,
   25 Cal. 3d 626 (1979) ................................................................................. 7

*Rodriguez v. Mondelez Global LLC*, No. 23-CV-00057, __ F. Supp. 3d __,
   2023 WL 8115773 (S.D. Cal. Nov. 22, 2023) ......................................... 16

*Rubenstein v. The Gap, Inc.*,
   14 Cal. App. 5th 870 (2017)....................................................................... 4

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (2015).................................................................... 4

*Smith v. Intel Corp.*, No. 23-CV-05761,
   2024 WL 3834706 (N.D. Cal. Aug. 15, 2024).......................................... 15

*Sterling Drug, Inc. v. F.T.C.*,
   741 F.2d 1146 (9th Cir. 1984)................................................................... 14

*Torres v. Botanic Tonics, LLC*, No. 23-CV-01460,
   2023 WL 8852754 (N.D. Cal. Dec. 21, 2023) ......................................... 16

*Toy v. Life Line Screening of America Ltd.*, No. 23-CV-04651,
   2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ......................................... 15

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .............................................................. 3, 10

**STATUTES**
28 U.S.C. § 1332(d) .................................................................................... 17
California Business and Professions Code § 17200 .............................. 1, 2, 7
California Business and Professions Code § 17500 ...................................... 2

## TABLE OF AUTHORITIES
### (continued)

Page

California Civil Code § 1750 .......................................................................... 2

**OTHER AUTHORITIES**

David Ettinger, *Ninth Circuit sends spicy damages-limitation contract issue to the Supreme Court [Updated]*, At the Lectern (Dec. 6, 2023), https://tinyurl.com/2td96tnn ...................................................... 17

Jordan Elias, *Cooperative Federalism in Class Actions*, 86 Tenn. L. Rev. 1 (2018) .................................................................................................. 17

**RULES**

California Rules of Court Rule 8.548 ...................................................... 5, 18

Federal Rules of Appellate Procedure Rule 29(a)(2) .................................... 1

**TREATISES**

National Consumer Law Center, *Unfair and Deceptive Acts and Practices* (10th ed. 2021) .................................................................................. 13

**CONSTITUTIONAL PROVISIONS**

California Constitution article V, § 13 ......................................................... 1

## INTRODUCTION AND STATEMENT OF INTEREST

The Attorney General submits this brief as California's chief law officer,[1] to assist the Court with its consideration of Plaintiffs-Appellants' certification request to the California Supreme Court. This case presents the question of what standard to use in deciding consumer deception-by-omission claims under California's Unfair Competition Law (UCL).[2] Appropriate resolution of this question of state law is of significant importance to the Attorney General's efforts to protect Californians from deceptive business acts and practices.

The Court should grant certification because the treatment of deception-by-omission claims in consumer protection cases is an important and recurring issue of state law with no controlling state precedent. The California Supreme Court has never articulated any separate standard that would treat deceptive omissions differently from affirmative misrepresentations. And what it *has* said on the issue strongly suggests that it would reject the multipart duty-to-disclose standard that the Ninth Circuit has borrowed from common law tort doctrine. Specifically, the California Supreme Court has discarded the application of such tort-law doctrines in the UCL context and has consistently applied a "likely to deceive" standard both

_____

[1] *See* Cal. Const. art. V, § 13. California files this brief as of right pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

[2] Cal. Bus. & Prof. Code §§ 17200 *et seq*. The Attorney General expresses no opinion on the portion of appellants' certification request relating to the Consumers Legal Remedies Act.

1

to affirmative misrepresentations and deceptive omissions. For that reason, and because federalism and comity concerns weigh strongly in favor of certification, the Court should request that the California Supreme Court clarify the standard for deception-by-omission liability under the Unfair Competition Law.

## BACKGROUND

This is a putative consumer protection class action premised on allegedly deceptive omissions. Plaintiffs-Appellants ("Purchasers") bought Defendant-Appellee Plum's baby food products. 1-ER-4. Purchasers allege that Plum's product labeling failed to disclose that the baby food contained certain harmful chemicals, most notably heavy metals including lead. 1-ER-5–6. Asserting those omissions were unlawfully deceptive, Purchasers brought claims under multiple states' consumer protection statutes, including California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA).[3] 1-ER-7.

The California Supreme Court has emphasized that "one *need only show* that members of the public are likely to be deceived" to prove consumer deception under the UCL, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992) (emphasis added, quotation marks omitted), and has never articulated a different

---

[3] Respectively, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and Cal. Civ. Code §§ 1750 *et seq.*

standard for deception-by-omission claims. Nevertheless, looking to tort law concepts, the Ninth Circuit has held that deception by omission is only actionable where the plaintiff satisfies a multipart test that demonstrates the defendant had an "affirmative duty to disclose" the omitted facts. *See, e.g., Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862–65 (9th Cir. 2018). The Ninth Circuit's test derives largely from *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997), a tort case that did not involve claims under the UCL or other consumer-protection statutes. *LiMandri* enumerates four circumstances in which a "duty to disclose" arises in tort, rendering omissions actionable:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

52 Cal. App.4th at 336 (citations omitted); *see also Hodsdon*, 891 F.3d at 862.

Expanding on *LiMandri*, the Ninth Circuit has imposed an additional restriction on deception-by-omission claims. In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), the Court held that in the absence of an affirmative misrepresentation, plaintiffs must allege that an omission poses "an unreasonable safety hazard." *Id.* at 1141–44. The Ninth Circuit subsequently loosened that restriction, holding that an omission may be actionable in the absence of a safety hazard where the omission (1) is "material;" (2) concerns a "defect . . . central to

3

the product's function" and (3) the *LiMandri* factors are satisfied.[4] *Hodsdon*, 891 F.3d at 860–64.

Evaluating Purchasers' claims under the Ninth Circuit's standard, the district court granted summary judgment to Plum. This appeal followed.

While this case was pending in the district court, the California Supreme Court granted review in *Capito v. San Jose Healthcare System LP*,[5] a case presenting deception-by-omission claims under the UCL premised on a hospital's alleged failure to disclose an emergency room fee. The California Attorney General filed an amicus brief in *Capito*, arguing that plaintiffs who allege deception by omission under the UCL must only allege conduct that was "likely to deceive" the public, and need not additionally satisfy *LiMandri* or any other standard requiring a "duty to disclose" as a threshold consideration. Plaintiffs-

---

[4] Some California Courts of Appeal have recently followed parts of the Ninth Circuit's approach, applying *LiMandri* to deception-by-omission claims under the UCL, but not the "unreasonable safety hazard" or "central function" elements articulated in *Wilson* and *Hodsdon*. *See People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 325–26 (2022) (citing *Hodsdon*, 891 F.3d at 863); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 876–79 (2017). Other Court of Appeal cases have considered deception-by-omission claims without applying the *LiMandri* standard at all. *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1173–76 (2015) (in the context of a CLRA claim); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380–82 (2012) (in the context of both a CRLA claim and a UCL fraudulent prong claim); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255–59 (2011) (applying *LiMandri* to CLRA claim, but not to UCL fraudulent prong claim).

[5] Case No. S280018.

4

Appellants' Mot. to Certify Issue to Cal. Supreme Ct. 3, Ex. 2 ("AG *Capito Amicus*"). *Capito* is fully briefed, but oral argument is not yet set. Citing the Attorney General's brief in *Capito*, and attaching a copy of it to their motion, Purchasers asked this Court to certify the question of "what legal standard applies to a claim of deception by omission under the Consumer[s] Legal Remedies Act and the Unfair Competition Law[.]" *Id.* at 4.

## ARGUMENT

Certification of an issue of state law to the state's Supreme Court is a discretionary means "'to obtain authoritative answers to unclear questions of state law.'" *Centurion Properties III, LLC v. Chicago Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015) (citations omitted); *see also* Cal. Rules Ct. R. 8.548(a) (permitting certification on a discretionary basis where "[t]here is no controlling precedent" on an outcome-determinative issue). Certification "is 'particularly appropriate' where . . . the issues of law are not only unsettled but also have 'significant policy implications.'" *Barlow v. State*, 38 F.4th 62, 66–67 (9th Cir. 2022) (citation omitted). If this Court harbors "doubt that the California Supreme Court would agree with the analysis" of intermediate state appellate courts, certification may be appropriate even where some appellate courts have decided the issue. *See Doe v. Uber Technologies, Inc.*, 90 F.4th 946, 951 (9th Cir. 2024). Specifically, where decisions of the state Supreme Court "appear[] to conflict"

with those of lower state courts, thus "call[ing] into question whether the [supreme] court would decide the issue . . . similarly[,]" certification is appropriate. *Id.* at 950–52; *see also Hayes v. County of San Diego*, 658 F.3d 867, 870–73 (9th Cir. 2011). Because that is the case here, and because several other factors weigh in favor of certification, the Court should grant Purchasers' request to certify.

## I. THERE IS NO CONTROLLING CALIFORNIA PRECEDENT ON THE STANDARD FOR DECEPTION BY OMISSION UNDER THE UNFAIR COMPETITION LAW

California's Supreme Court has never held that a plaintiff in a UCL case must satisfy a multipart, tort-law duty-to-disclose test before deception by omission becomes actionable.[6] And the version of that test developed by the Ninth Circuit—the *LiMandri/Hodsdon* standard—is inconsistent with what the California Supreme Court *has* said about the history, purpose, and function of the UCL. The duty-to-disclose test also conflicts with how that court has dealt with deception-by-omission claims in the few cases in which it has addressed them under consumer protection statutes. And it is out of step with the treatment of deception-by-omission claims under the Federal Trade Commission Act ("FTC Act"), a statute whose interpretation has historically informed interpretation of the UCL.

---

[6] The Attorney General's view is that the district court used the standard dictated by current Ninth Circuit precedent, but he takes no position on whether the district court correctly applied it to the facts of this case.

For decades, the California Supreme Court has repeatedly held that liability under the UCL's fraudulent prong turns solely on whether the challenged business conduct is likely to deceive consumers. *See Kasky v. Nike*, 27 Cal. 4th 939, 951 (2002) (holding that "it is necessary only to show that members of the public are likely to be deceived" (quotation marks omitted)); *see also Bank of the West*, 2 Cal. 4th at 1266–67; *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *People v. McKale*, 25 Cal. 3d 626, 635 (1979); *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 111 (1972).

The history, purpose, and structure of the UCL explain why the fraudulent prong's "likely to deceive" test differs so dramatically from the multipart standard governing common law fraud. The California Legislature enacted the precursor to the UCL in 1933, as part of a wave of consumer protection reforms that rejected the common law doctrines that once governed consumer deception as too restrictive and ineffective to adequately protect the public. *See* AG *Capito* Amicus at 7–11. Those reforms simplified the law, providing a more efficient means to address deceptive business practices. As relevant here, the UCL's "fraudulent prong" makes it unlawful to engage in "any . . . fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. The fraudulent prong's language "has been understood to be distinct from common law fraud." *In re Tobacco II Cases*,

46 Cal. 4th 298, 312 (2009). As the California Supreme Court has explained, the

Legislature chose a simpler liability standard when it enacted the UCL:

> In drafting the [UCL], the Legislature deliberately traded the
> attributes of tort law for speed and administrative simplicity.
> As a result, to state a claim . . . one need not plead and prove
> the elements of a tort. Instead, one need only show that
> "members of the public are likely to be deceived."

*Bank of the West*, 2 Cal. 4th at 1266–67 (citations omitted). The UCL thus discards

common law fraud elements like intent and justifiable reliance.[7] *See Tobacco II*, 46

Cal. 4th at 312.

The use of a multipart "duty to disclose" test as a threshold consideration in

deception-by-omission cases under the UCL deviates significantly from that

statute's simplified liability formula. The "duty" concept emerged in UCL case law

less than two decades ago and has evolved incrementally since that time. In 2006, a

California Court of Appeal decided *Daugherty v. American Honda Motor Co.*, 144

Cal. App. 4th 824 (2006). Considering a UCL deception-by-omission claim that a

car manufacturer's failed to adequately disclose engine defects, the *Daugherty*

court held that a plaintiff needed to allege that a business had an "affirmative duty

to disclose." *Id.* at 838. However, the court did not apply the multipart "duty to

---

[7] The Legislature further streamlined the path to relief in consumer deception cases
by confining the available remedies. Thus, private plaintiffs bringing UCL claims
"are generally limited to injunctive relief and restitution." *Tobacco II*, 46 Cal. 4th
at 312 (citations and quotation marks omitted).

disclose" test derived from *LiMandri* to determine whether the defendant was liable under the UCL. Instead, it applied the "likely to deceive" standard, noting the obvious point that consumers cannot be deceived by an omission unless they "had an [incorrect] expectation or assumption about the matter in question" that a business failed to dispel. *Id.* (quotation marks omitted). The *Daugherty* court reasoned that in the absence of such a consumer expectation or assumption, the defendant had no duty to disclose the omitted facts. *Id. Daugherty*'s reasoning is thus consistent with businesses having an "affirmative duty to disclose" any facts necessary to correct misapprehensions that consumers may harbor. *See id.*

Federal courts transformed that approach by importing the *LiMandri* standard from its tort law origins and applying it for the first time to deception-by-omission claims under consumer protection statutes. The year after *Daugherty*, a federal district court evaluating UCL and CLRA claims cited *Daugherty*'s duty to disclose language but expanded it by inserting the *LiMandri* standard to determine whether such a duty existed, without comment on why that approach was appropriate. *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1094–98 (N.D. Cal. 2007). In 2011, a California Court of Appeal in *Collins v. eMachines, Inc.* similarly considered a deception-by-omission claim under both the UCL and CLRA. 202 Cal. App. 4th 249. The *Collins* court cited *LiMandri* and *Falk* in deciding the CLRA claim, *id.* at 255–56, but notably did *not* rely on either case in its discussion

9

of the UCL's fraudulent prong, *id.* at 258–59. Instead, *Collins* applied the "likely to deceive" standard to the UCL claim, reasoning that because consumers could "have had an expectation or an assumption about the matter in question[,]" the plaintiffs had adequately pled that the defendant's omission was likely to deceive them. *Id.* (quotation marks omitted).

The following year, the Ninth Circuit cited—without expressly adopting—*Falk*'s application of *LiMandri* to UCL cases in *Wilson v. Hewlett-Packard Co.* 668 F.3d 1136, 1142 (9th Cir. 2012). *Wilson* also added an element not found in the *LiMandri* tort doctrine: a requirement that omitted information concern a safety issue.[8] *Wilson*, 668 F.3d at 1142. In 2018, the Ninth Circuit in *Hodsdon* addressed another deception-by-omission claim, again citing *LiMandri*'s factors, while broadening *Wilson* to hold that omissions going to the "central function" of a product can be actionable, in addition to those concerning a safety issue. *Hodsdon*, 891 F.3d at 861–65.

But critically, *LiMandri* was a tort case, not a UCL case. The *LiMandri* court applied its duty-to-disclose test to intentional tort claims premised on "fraud and

---

[8] *Wilson* cites several district court orders and *Daugherty* for this point. *See Wilson*, 668 F.3d at 1141–43. But *Daugherty* itself does not purport to limit the circumstances under which a duty may be demonstrated to only those in which an unreasonable safety risk is present; instead, the court treated omitted safety hazards as an example of circumstances in which a duty to disclose might arise, but rejected plaintiff's conclusory safety allegations in the case before it as insufficiently detailed. 144 Cal. App. 4th at 836–37.

10

deceit" and to a cause of action for "negligent failure to disclose and suppression of fact." *LiMandri*, 52 Cal. App. 4th at 335–38. Applying *LiMandri* in the UCL context contradicts the California Supreme Court's reasoning—detailed above— that the Legislature intended the UCL to eschew the elements imposed by the common law of torts. *See Bank of the West*, 2 Cal. 4th at 1266–67. Neither the district court in *Falk*, nor the Ninth Circuit in *Wilson* and *Hodsdon*, contended with that precedent.

Moreover, while the California Supreme Court has never squarely addressed the question whether a heightened standard along the lines of *LiMandri* is appropriate, its analysis in deception-by-omission cases strongly suggests that it would reject any such standard. It has repeatedly applied the general "likely to deceive" standard regardless of whether a marketing or sales practice deceived by omission instead of, or in concert with, false or misleading statements.

For example, in *Ford Dealers Association v. Department of Motor Vehicles*, the court considered a challenge to the DMV's authority to require disclosure of whether used cars offered for sale were previously rental cars. 32 Cal.3d 347, 356, 363–65 (1982). The authorizing statute prohibited dealers from making "false or misleading statements to the public," and, like the UCL, required courts to determine whether "members of the public [were] likely to be deceived" by the challenged conduct. *Id.* at 363. Recognizing that "the omission of crucial

information can be as misleading as a direct misstatement of fact," the court determined that "[t]he DMV could reasonably conclude that consumers are likely to be deceived if they are not informed that the automobile they are purchasing was formerly used in certain specified ways." *Id.* at 363–65. That was so because "[w]here, in the absence of an affirmative disclosure, consumers are likely to assume something which is not in fact true, the failure to disclose the true state of affairs can be misleading." *Id.* at 363–64. The court imposed no heightened duty-to-disclose requirement; it simply treated misleading omissions as one means of deception and used the usual "likely to deceive" test.

In *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197 (1983), the California Supreme Court similarly treated misleading omissions and affirmative misrepresentations no differently in a UCL case. The plaintiffs in that case alleged deception through nineteen misrepresentations, most of which were "implicit in the advertising[,]" rather than express, as well as a number of "concealed material facts." *Id.* at 205–07. In reversing dismissal, the court applied no special test to the deceptive omissions. *Id.* at 213–14. Instead, the court considered the alleged conduct as a whole and determined that plaintiffs stated a cause of action under the "likely to deceive" standard. *Id.* at 211, 213–14 & n. 15.

12

The California Supreme Court also evaluated whether a business's omission was likely to deceive in *Chern v. Bank of America*, 15 Cal. 3d 866 (1976). The plaintiff in *Chern* alleged that the defendant bank violated the UCL by initially quoting an artificially low interest rate, while deceptively omitting that it had used a 360-day year in its computation. *Id.* at 870. The court again did not determine whether the defendant had a duty to disclose its use of a 360-day year or the higher, 365-day interest rate at an earlier time in the transaction. Instead, in keeping with the UCL's ordinary test, the Court agreed with the plaintiff that the challenged conduct was actionable because it was "likely to deceive the public." *Id.* at 876.

The *LiMandri*/*Hodsdon* approach is also unlike the approach to deception by omission under the FTC Act—the federal "parallel" to the UCL that the California Supreme Court has deemed "more than ordinarily persuasive" in interpreting it. *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 185 (1999) (citations omitted). The FTC Act does not require that a tort-law duty to disclose be proven as a prerequisite for liability premised on deception by omission. Rather, "representations are deceptive if necessary qualifications are not made, if material facts are not disclosed, or if those disclosures or qualifications are too inconspicuous." National Consumer Law Center, *Unfair and Deceptive Acts and Practices* § 4.2.15.2 (10th ed. 2021). Courts

13

have affirmed FTC Act liability—with no duty-to-disclose showing—premised on omitted facts like "most tired people are not so because of iron deficiency anemia[,]" *J.B. Williams Co. v. F.T.C.*, 381 F.2d 884, 889 (6th Cir. 1967); that a promised "MasterCard" was not actually a credit card, *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005); and that the analgesic ingredient in Midol's "exclusive formula" was actually "ordinary aspirin" *Sterling Drug, Inc. v. F.T.C.*, 741 F.2d 1146, 1154 (9th Cir. 1984). Echoing *Ford Dealers*, the FTC has opined that "pure omissions may lead to erroneous consumer beliefs if consumer[s] had a false pre-existing conception which the seller failed to correct." *In re International Harvester*, 104 F.T.C. 949, 1059 (1984).[9] The California Supreme Court would likely follow the FTC's lead in rejecting a threshold duty of disclosure.

## II.   THIS CASE PRESENTS A RECURRING QUESTION OF EXCEPTIONAL IMPORTANCE THAT IS WORTHY OF CERTIFICATION

There are several additional reasons why certification is appropriate. Beyond examining whether a decision from the California Supreme Court would provide

---

[9] While the FTC pursues cases involving genuine and complete silence as unfair rather than deceptive practices, it still does not require that a duty to disclose first be shown. *See International Harvester*, 104 F.T.C. at 1060–62, 1064–67 (affirming administrative law judge's unfairness finding without analyzing duty to disclose).

guidance on an unclear question of state law, *supra* pp. 5–6, this Court considers the following factors in evaluating requests for certification:

> (1) whether the question presents "important public policy ramifications" yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) "the spirit of comity and federalism."

*Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (citations omitted). Those factors weigh in favor of certification here.

First, the issue for which Purchasers seek certification frequently recurs in consumer cases, and its resolution is of substantial importance to the State and to the large groups of consumers commonly affected by decisions in those cases. In the past year alone, federal courts have issued decisions citing *LiMandri* in at least seventeen other cases involving omissions under the UCL, FAL, or CLRA.[10] And

---

[10] *See Smith v. Intel Corp.*, No. 23-CV-05761, 2024 WL 3834706 (N.D. Cal. Aug. 15, 2024); *Kaakejian v. General Motors, LLC*, No. 1:24-cv-0011, 2024 WL 3508681 (E.D. Cal. Jul. 23, 2024); *In re Future Motion, Inc. Products Liability Litigation*, No. 23-MD-03087, 2024 WL 3408224 (N.D. Cal. Jul. 12, 2024); *Hedrick v. BSH Home Appliances Corp.*, No. 8:23-CV-00358, 2024 WL 2190984 (C.D. Cal. May 14, 2024); *Hayden v. Bob's Red Mill Natural Foods, Inc.*, No. 23-CV-03862, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024); *Hawkins v. Shimano North America Bicycle Inc.*, No. 8:23-CV-02038, __ F. Supp. 3d __, 2024 WL 2105596 (C.D. Cal. Apr. 12, 2024); *In re Trader Joe's Company Dark Chocolate Litigation*, No. 3:23-CV-0061, __ F. Supp. 3d __, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024); *Toy v. Life Line Screening of America Ltd.*, No. 23-CV-04651, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024); *Paperno v. Whirlpool Corp.*, No. 23-CV-05114, 2024 WL 1091192 (N.D. Cal. Mar. 13, 2024); *Grausz v. Hershey Co.*, No. 23-CV-00028, __ F. Supp. 3d __, 2024 WL 312688 (S.D. Cal. Jan. 25,

(continued…)

such litigation often raises allegedly deceptive omissions of facts that are profoundly important to consumers. *See, e.g.*, *Johnson & Johnson*, 77 Cal. App. 5th 295 (affirming trial judgment over failure to disclose risk of serious complications of surgically-implantable transvaginal pelvic mesh products); *Hodsdon*, 891 F.3d 857 (alleging failure to disclose use of forced and child labor in chocolate manufacturing); *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) (alleging failure to disclose vehicles' propensity for sudden, uncontrollable acceleration); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133 (S.D. Cal. 2016) (alleging failure to disclose significant inaccuracies in home blood-clot monitoring device used to assist patients to determine appropriate blood thinner dosage).

Second, comity and federalism concerns—which can weigh in favor of certification, *see, e.g.*, *Murray*, 924 F.3d 1072—are heightened where, as here, the relevant state law question is one that often arises in cases subject to the Class

---

2024); *Antonov v. General Motors LLC*, No. 8:23-CV-01593, 2024 WL 217825 (C.D. Cal. Jan. 19, 2024); *Nevada Fleet LLC v. FedEx Corp.*, No. 17-CV-01732, 2024 WL 199626 (E.D. Cal. Jan. 18, 2024); *Torres v. Botanic Tonics, LLC*, No. 23-CV-01460, 2023 WL 8852754 (N.D. Cal. Dec. 21, 2023); *Mendoza v. Proctor and Gamble Co.*, No. CV 23-1382-1382, __ F. Supp. 3d __, 2023 WL 8860900 (C.D. Cal. Dec. 20, 2023); *Rodriguez v. Mondelez Global LLC*, No. 23-CV-00057, __ F. Supp. 3d __, 2023 WL 8115773 (S.D. Cal. Nov. 22, 2023); *In re Intel Corp. CPU Marketing, Sales Practices and Products Liability Litigation*, No. 22-35652, 2023 WL 7211394 (9th Cir. Nov. 2, 2023); *MacDougall v. American Honda Motor Co., Inc.*, No. SACV 17-1079, 2023 WL 9687349 (C.D. Cal. Oct. 3, 2023).

Action Fairness Act (CAFA). CAFA authorizes federal court jurisdiction in most class actions seeking at least $5 million and involving at least 100 class members, one or more of whom lives in a different state than any defendant. 28 U.S.C. § 1332(d). As a result, since the adoption of CAFA in 2005, there have been fewer opportunities for state courts to shape state law doctrine when those state law issues arise most frequently in class actions subject to CAFA. Certification of such issues can help to "protect state sovereignty while relieving some of the pressure on the federal system and promoting uniformity in judicial administration." Jordan Elias, *Cooperative Federalism in Class Actions*, 86 Tenn. L. Rev. 1, 5 (2018); *see id.* (encouraging federal courts to "us[e] the state certification procedure more freely" for issues arising in CAFA litigation).

Third and finally, any burden on the California Supreme Court would be limited. *See Murray*, 924 F.3d at 1073 (state court's caseload is a factor to weigh in deciding whether to certify). That court generally favors certification requests, having granted 20 out of 22 questions certified by this Court between July 2018 and December 2023.[11] Moreover, certification here would be timely because *Capito*, another deception-by-omission case, is already pending, and the California Supreme Court could decide the common issues in tandem. Alternatively,

---

[11] David Ettinger, *Ninth Circuit sends spicy damages-limitation contract issue to the Supreme Court [Updated]*, At the Lectern (Dec. 6, 2023), https://tinyurl.com/2td96tnn.

certification would give that court multiple options for resolving the scope of deception-by-omission liability. And of course, the state's high court can always exercise its discretion to decline the question in the event its docket is overburdened. *See* Cal. Rules Ct., R. 8.548(a).

## CONCLUSION

The Court should request that the California Supreme Court clarify the proper standard for deception-by-omission liability under the UCL.

Dated: August 25, 2024        Respectfully submitted,


ROB BONTA
Attorney General of California
NICKLAS AKERS
Supervising Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General


*/s Hunter Landerholm*
HUNTER LANDERHOLM
Deputy Attorney General
*Attorneys for Amicus Curiae the State of California*

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2766

I am the attorney or self-represented party.

**This brief contains** | 4,350 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s Hunter Landerholm | **Date** | 8/25/2024

*(use "*s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*