Appeal No. **24-2766**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

LUDMILA GULKAROV, et al.,

*Plaintiffs - Appellants,*

v.

PLUM, PBC, a Delaware Corporation.

*Defendant - Appellee*

On Appeal from the United States District Court
for the Northern District of California
No. 4:21-cv-00913-YGR
Hon. Yvonne Gonzalez Rogers

---

### ANSWERING BRIEF FOR
### DEFENDANT-APPELLEE PLUM, PBC

---

Charles C. Sipos
Lauren J. Tsuji
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
+1.206.359.8000
CSipos@perkinscoie.com
LTsuji@perkinscoie.com

Natalie K. Sanders
PERKINS COIE LLP
1888 Century Park, Suite 1700
Los Angeles, California 90067
+1.310.788.900
NSanders@perkinscoie.com

*Attorneys for Defendant - Appellee
Plum, PBC*

## CORPORATE DISCLOSURE STATEMENT

Defendant Plum, PBC is a wholly owned subsidiary of Sun-Maid

Growers of California, an agricultural cooperative.


<u>/s/ *Charles C. Sipos*</u>
    Charles C. Sipos

*Attorney for Defendant - Appellee*
*Plum, PBC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

STATEMENT OF THE ISSUES ............................................. 4

STATEMENT OF JURISDICTION ....................................... 5

STATEMENT OF THE CASE ............................................... 5

I.   Factual Background ...................................................... 5

    A.   It Is Well-Document That Trace Heavy Metals Are Present in the Food Supply .................................. 5

    B.   Plaintiffs Sued Plum for "Omitting" From Its Products' Labels the Risk That Trace Heavy Metals May Be Present ....................................... 8

II.  Procedural History ..................................................... 10

    A.   Plum Moved for Summary Judgment. ............... 10

    B.   The District Court Granted Plum's Motion for Summary Judgment on Plaintiffs' California Consumer Protection Claims. ........................... 11

        1.   Plaintiffs admitted they were not challenging Plum Products' safety and otherwise had only speculative proof of harm related to heavy metals. ........................................................ 12

        2.   There was no dispute that Plum Products provide healthful nutrition and function as food ........................ 15

# TABLE OF CONTENTS (continued)

**Page**

C.   The District Court Rejected Plaintiffs' Active Concealment and Exclusive Knowledge Arguments. ......................................................... 16

D.   Because Of the Dispositive Effect of *Hodsdon*, Plaintiffs Ask This Court to Certify a Question to Attempt to Overrule That Decision. ................... 19

SUMMARY OF THE ARGUMENT ..................................... 22

STANDARD OF REVIEW .................................................. 25

ARGUMENT .................................................................. 26

I.   The District Court Correctly Entered Judgment in Plum's Favor on Plaintiffs' UCL and CLRA Claims ....................... 26

A.   The Record Demonstrated That Plum Products Did Not Pose an "Unreasonable Safety Hazard." ............................................................. 28

B.   The Record Demonstrated That Trace Heavy Metals in Plum Products Did Not Affect "Central Function." ........................................................... 34

II.  Plaintiffs' Failure of Proof Under *Hodsdon* Terminated Their UCL and CLRA Claims, Rendering Analysis Under *LiMandri* Unnecessary ...................................................... 38

A.   *Hodsdon* Is Consistently Interpreted to Require No *LiMandri* Inquiry if There Is No Threshold Showing of a Duty to Disclose. .......................... 40

B.   The District Court's Consideration of the *LiMandri* Factors Was Unnecessary but Nonetheless Correct. .......................................... 44

ii

## TABLE OF CONTENTS (continued)

**Page**

    1.    Plaintiffs did not raise any issue of disputed material fact as to active concealment. ................................. 44

    2.    Plaintiffs did not raise any issue of disputed material fact as to "exclusive knowledge." .................................... 49

III.    The Court Should Deny Plaintiffs' Motion for Certification......................................................................... 54

    A.    The California Supreme Court Recently Denied Review in Cases Raising the Same Question. .... 56

    B.    There is Controlling Precedent on the Standard for Omission Claims Under the UCL and CLRA..... 57

    C.    There Is No Reason to Doubt That the California Supreme Court Would Follow *Hodsdon*. ............ 61

    CONCLUSION .................................................................... 64

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Anderson v. Deutsche Bank Nat'l Tr. Co.*
  *Americas,*
  649 F. App'x 550 (9th Cir. 2016) ...................................... 63

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ........................................................ 48

*Andren v. Alere, Inc.,*
  207 F. Supp. 3d 1133 (S.D. Cal. 2016) ............................ 44

*Barrett v. Apple, Inc.,*
  2022 WL 2119131 (N.D. Cal. June 23, 2022) .................. 43

*Bills v. U.S. Fid. & Guar. Co.,*
  280 F.3d 1231 (9th Cir. 2002) ......................................... 60

*Browning v. Unilever,*
  809 F. App'x 446 (9th Cir. June 18, 2020) ............... passim

*Chern v. Bank of Am.,*
  15 Cal. 3d 866 (1976) ...................................................... 62

*Cho v. Hyundai Motor Co.,*
  636 F. Supp. 3d 1149 (C.D. Cal. 2022) ...................... 45, 46

*Collins v. eMachines, Inc.,*
  202 Cal. App. 4th 249 (2011) ................................ 49, 58, 59

*Comm. on Child.'s Television, Inc. v. Gen. Foods*
  *Corp.,*
  35 Cal. 3d 197 (1983) ...................................................... 62

*Czuchaj v. Conair Corp.,*
  2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ................... 44

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Dana v. Hershey Co.*,
180 F. Supp. 3d 652 (N.D. Cal. 2016) ............................... 54

*Dang v. Samsung Elecs. Co.*,
803 F. App'x 137 (9th Cir. Apr. 29, 2020) ....................... 27

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ........................................ 61

*Ford Dealers Ass'n v. Dep't of Motor Vehicles*,
32 Cal. 3d 347 (1982) ................................................. 62, 63

*Freund v. HP, Inc.*,
2023 WL 5184140 (N.D. Cal. Aug. 10, 2023) .................. 53

*Grausz v. Hershey Co.*,
691 F. Supp. 3d 1178 (S.D. Cal. 2023)........................ 30, 31

*Hall v. N. Am. Van Lines, Inc.*,
476 F.3d 683 (9th Cir. 2007)........................................... 26

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................... 38, 42

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
2024 WL 1643696 (N.D. Cal. Apr. 16, 2024).. 31, 32, 35, 36

*Hedrick v. BSH Home Appliances Corp.*,
2024 WL 2190984 (C.D. Cal. May 14, 2024) ................... 43

*Herrera v. Zumiez, Inc.*,
953 F.3d 1063 (9th Cir. 2020)................................... 56, 61

*Herron v. Best Buy Co.*,
924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................ 44, 47, 48

*Hodsdon v. Mars*,
891 F.3d 857 (9th Cir. 2018)................................... passim

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*In re: Intel Corp. CPU Mktg., Sales Pracs. &*
*Prods. Liab. Litig.*,
2023 WL 7211394 (9th Cir. Nov. 2, 2023) ............ 26, 38, 39

*In re Natera Prenatal Testing Litig.*,
664 F. Supp. 3d 995 (N.D. Cal. 2023) ......................... 27, 39

*In re: Theo's Dark Choc. Litig.*,
2024 WL 4336631 (N.D. Cal. Sept. 27, 2024) ....... 31, 34, 36

*In re: Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ................ 41, 42, 43

*In re Trader Joe's Co. Dark Choc. Litig.*,
2024 WL 1319725 (S.D. Cal. Mar. 27, 2024) ........ 31, 32, 42

*Int'l Bus. Machs. Corp. v. Bajorek*,
191 F.3d 1033 (9th Cir. 1999) ........................................... 58

*Johnson v. Glock*,
2021 WL 428635 (N.D. Cal. Feb. 8, 2021) ......................... 28

*Kavehrad v. Vizio, Inc.*,
2023 WL 2558535 (C.D. Cal. Jan. 26, 2023) .............. 45, 48

*Knowles v. Arris Int'l PLC*,
847 F. App'x 512 (9th Cir. 2021) .......................... 27, 36, 39

*Knowles v. Arris Int'l PLC*,
2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ................... 34

*Langere v. Verizon Wireless Servs., LLC*,
983 F.3d 1115 (9th Cir. 2020) ........................................... 58

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ..................................... passim

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Marino v. Ocwen Loan Servicing LLC,*
   978 F.3d 669 (9th Cir. 2020) ............................................... 25

*Matus ex rel. Est. of Matus v. Kustom US, Inc.,*
   2024 WL 3688728 (9th Cir. Aug. 7, 2024) ........................ 63

*McKinney v. Corsair Gaming, Inc.,*
   2022 WL 2820097 (N.D. Cal. July 19, 2022) ........ 40, 41, 43

*Miller v. Ford Motor Co.,*
   620 F. Supp. 3d 1045 (E.D. Cal. 2022) ............................. 28

*Nalick v. Seagate Tech. LLC,*
   2021 WL 1135226 (Cal. Ct. App. Mar. 25,
   2021) ......................................................................... passim

*Neu v. FCA US LLC,*
   2023 WL 10406710 (C.D. Cal. Nov. 13, 2023) ...... 40, 41, 43

*Oddo v. United Techs. Corp.,*
   2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ......................... 34

*Pearl v. Coinbase Glob., Inc.,*
   2024 WL 3416505 (N.D. Cal. Jul. 15, 2024) ..................... 52

*People v. Johnson & Johnson,*
   77 Cal. App. 5th 295 (2022) ............................ 57, 59, 60, 61

*Peterson v. Highland Music, Inc.,*
   140 F.3d 1313 (9th Cir. 1998) .................................... 14, 32

*Rattagan v. Uber Techs., Inc.,*
   17 Cal. 5th 1 (2024) ........................................ 49, 50, 51, 52

*Rodriquez v. Mondelez Glob. LLC,*
   703 F. Supp. 3d 1191 (S.D. Cal. 2023) .............................. 31

vii

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*So v. HP, Inc.*,
2023 WL 4596778 (N.D. Cal. July 17, 2023) ................... 39

*So v. HP, Inc.*,
2022 WL 16925965 (N.D. Cal. Nov. 14, 2022) ................ 42

*Stickrath v. Globalstar, Inc.*,
2008 WL 344209 (N.D. Cal. Feb. 6, 2008) ................ 49, 51

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) ........................... 55

*Sud v. Costco Wholesale Corp.*,
731 F. App'x 719 (9th Cir. July 20, 2018) ................ 26, 38

*United States v. Kama*,
394 F.3d 1236 (9th Cir. 2005) ........................................ 28

*Warner Constr. Corp. v. City of Los Angeles*,
2 Cal. 3d 285 (1970) ....................................................... 51

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ....................................... 28

*Wolph v. Acer Am. Corp.*,
2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ............ 50, 52

## RULES

Cal. R. Ct. 8.548(a) ............................................................ 58

Cal. R. Ct. 8.500(b)(1) ......................................................... 7

Fed. R. Civ. P. 56 ................................................................. 26

# INTRODUCTION

Many nutritious crops—healthful foods like spinach, carrots, and rice—absorb trace amounts of naturally-occurring heavy metals from the soil, air, and water during the agricultural process. These crops are used as ingredients in a host of foods, like the baby foods manufactured by Defendant-Appellee Plum, PBC ("Plum"). This well-documented process occurs throughout the food supply, in nutritious foods eaten every day.

Plaintiffs-Appellants nonetheless brought a putative class action contending Plum violated California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") because it omitted from its products' labels the risk that they may contain certain trace heavy metals. The labels contained no misrepresentations and truthfully described the food's nutrients and ingredients. Plaintiffs thus proceeded on a pure omission theory.

The district court granted summary judgment under established precedent governing UCL and CLRA omission claims: *Hodsdon v. Mars*, 891 F.3d 857 (9th Cir. 2018). Synthesizing California law, *Hodsdon* recognized the danger of a free-ranging omission standard that would allow plaintiffs to demand labeling on any topic of interest. So, *Hodsdon*

1

limits a defendant's duty to disclose omitted information to two narrow circumstances: (1) if it goes to a defect that presents an "unreasonable safety hazard" or (2) if it impairs the product's "central function," rendering it incapable of use by any consumer. Plaintiffs failed to present evidence as to either theory.

Throughout the litigation, Plaintiffs insisted they were not challenging the safety of Plum Products and at summary judgment admitted they could not show that any was unsafe. Instead, Plaintiffs offered conjectural evidence that certain heavy metals might potentially be harmful at unspecified levels over unspecified times. But none of this speculation was ever linked to Plum Products or Plaintiffs.

Plaintiffs' proof was just as weak as to "central function." Plaintiffs admitted that Plum Products were healthful and nutritious—in other words, that they functioned as "food." Against these admissions, more speculation was offered. Plaintiffs' expert theorized that heavy metals might affect the absorption of certain nutrients. But she never examined Plum Products, never spoke with Plaintiffs, and admitted in deposition that foods with trace heavy metals, of course, still function as food. Under

*Hodsdon*, these failures mandated summary judgment and this Court should affirm on that basis.

The district court went on to consider, as part of its omission analysis, whether Plum "actively concealed" or had "exclusive knowledge" that its Products contained trace heavy metals, finding Plaintiffs had not shown either. This aspect of the district court's decision—although correct in its assessment that Plaintiffs' proof was irrelevant and inadequate—was unnecessary to the judgment and does not require further review. Under *Hodsdon*, once Plaintiffs failed to demonstrate an "unreasonable safety hazard" or impairment of "central function," that fully terminated their UCL and CLRA claims.

Because *Hodsdon* so clearly disposes of their claims, Plaintiffs ask this court to certify to the California Supreme Court the issue of what standards govern omission claims under the UCL and CLRA—the very issue *Hodsdon* resolved. Plaintiffs argue that the question warrants review because *Hodsdon* has prompted "disarray" and its application is "unsettled." This is demonstrably wrong. *Hodsdon* is consistently interpreted by state and federal courts and there is no indication that the California Supreme Court has any interest in the unpredictable,

judicially unmanageable duty to disclose that Plaintiffs would prefer. Indeed, what Plaintiffs failed to discover—or perhaps elected not to tell this Court—is that the California Supreme Court has *already* rejected direct review of a petition that challenged *Hodsdon* and raised the same basic question they seek to re-raise here. This reveals their certification request for what it is: A desperate plea to demand an unwarranted change in the law.

This Court should affirm the district court's judgment and deny Plaintiffs' request for certification.

## STATEMENT OF THE ISSUES

1. Did the district court correctly enter summary judgment on Plaintiffs' UCL and CLRA omission claims under *Hodsdon* where Plaintiffs: (a) disclaimed any safety-based harm and offered no evidence that Plum Products[1] posed an "unreasonable safety hazard" and (b) admitted they received healthful nutrition and offered no evidence that Plum Products failed to perform their "central function" as food?

---

[1] "Plum Products" refers to the specific varieties of baby foods purchased by the named Plaintiffs. *See* 1-SER-270, 288; 2-SER-307, 327, 346, 364, 382, 401, 418.

4

2. Was it necessary for the district court to analyze whether Plaintiffs raised a disputed issue of material fact under the "active concealment" or "exclusive knowledge" prongs of *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997), despite its determination that Plaintiffs failed to satisfy *Hodsdon*?

Was the district court nonetheless correct in finding that Plaintiffs failed to raise a disputed material fact on "active concealment" or "exclusive knowledge"?

3. Should this Court deny Plaintiffs' request to certify to the California Supreme Court the issue, resolved by *Hodsdon*, of what standards apply to omission-based claims under the UCL and CLRA?

## STATEMENT OF JURISDICTION

Plum agrees with Plaintiffs' statement of jurisdiction. Appellants' Br. at 3.

## STATEMENT OF THE CASE

## I. Factual Background

### A. It Is Well-Document That Trace Heavy Metals Are Present in the Food Supply.

Plaintiffs filed this lawsuit on the heels of a February 4, 2021, staff report issued by the Subcommittee on Economic and Consumer Policy of

5

the U.S. House of Representatives' Committee regarding heavy metals in baby food (the "Subcommittee Report"). 1-SER-44–102. The Subcommittee purported to "investigate" the presence of naturally occurring trace amounts of certain heavy metals (lead, arsenic, cadmium, and mercury) in fruits, vegetables, and rice in baby food. *Id.*

Within days of the release of the Subcommittee Report, plaintiffs' lawyers filed hundreds of consumer class actions—including this one—against baby food manufacturers alleging that their products were "falsely advertised" because the labels did not disclose the presence (or risk of presence) of trace amounts of heavy metals in those foods.

The Subcommittee Report's "investigation" was, in fact, a recapitulation of what had been known for years—that trace heavy metals are ubiquitous throughout the food supply. Most notably, in October 2019, third-party organization Healthy Babies Bright Futures published a report ("HBBF Report") building on "[r]eports of heavy metals in baby food span[ing] nearly a decade." 1-SER-108. The HBBF Report, which is cited repeatedly in the Subcommittee Report, explained that heavy metals are present throughout the food supply, as they occur naturally in soil, air, and water. 1-SER-108*; see also* 1-SER-164. Crops

6

are thus exposed to and take up infinitesimal amounts of these heavy metals as part of the agricultural growth process. 1-SER-164; 1-SER-231–33. After conducting its own tests, the HBBF Report "substantiate[d] the widespread presence" of heavy metals in virtually every brand of baby food reported in "prior studies." 1-SER-109.

These prior studies received widespread media attention since at least 2012. *See, e.g.*, 2-SER-547–50; 2-SER-552–56; 2-SER-558–62. Similar reports issued with regularity in the ensuing years, with many mentioning Plum Products specifically in 2017, 2018, and 2019. 1-SER-126, 128–31, 133, 141; 2-SER-564–76; 2-SER-578–600; 3-SER-602–49; 3-SER-651–85. And these reports were covered nationally in mainstream news media. 3-SER-694–700; 3-SER-702–03; 3-SER-705–13.

Discovery further showed that since 2017, Plum itself voluntarily disclosed on its website that heavy metals were likely present in trace amounts in its Products, in response to a highly-publicized report by the Clean Label Project. 3-ER-456.

The HBBF Report also identified the trace presence of perchlorate, a chemical compound found in certain food packaging materials. 1-SER-114. Because the U.S. Food and Drug Administration ("FDA") has

approved perchlorate's use as a food contact substance since 2005, it is unsurprising that some foods might contain trace perchlorate. *Id.* Indeed, FDA studies dating back to 2008, and news articles dating back to 2006, likewise reported publicly on the potential presence of perchlorate in manufactured baby foods. 1-SER-241; *see also, e.g.*, 2-SER-541–42; 2-SER-544–45; 3-SER-687; 3-SER-690–91.[2]

## B. Plaintiffs Sued Plum for "Omitting" From Its Products' Labels the Risk That Trace Heavy Metals May Be Present.

Plaintiffs sued Plum on a pure omission theory. *See* 3-SER-890–900; 4-SER-902–84. The First Amended Consolidated Class Action Complaint ("FACC") targeted various Plum Products, not for any affirmative misrepresentation, but for purportedly omitting from the Products' labels information about the *potential* presence of trace heavy metals. 3-SER-890–900; 4-SER-902–84. Plaintiffs demanded that Plum Products be re-labeled to disclose this information. 3-SER-890–900; 4-SER-902–84. Based on this alleged omission, Plaintiffs claimed to have

---

[2] Throughout this brief "heavy metals" refers to mercury, cadmium, lead, arsenic, and perchlorate, collectively. Perchlorate is not a heavy metal but is instead a compound that is allowed as a food contact substance by FDA. The legal analysis as to the alleged omission of labeling regarding heavy metals and perchlorate is, however, indistinct.

suffered a purely economic harm. 3-SER-897 (¶ 24); 4-SER-905, 947, 969, 974, 976–77 (¶¶ 57, 185, 186, 338, 336, 379, 399, 407).

None of the Plaintiffs claimed harm from any sort of physical injury. Instead, Plaintiffs repeatedly and unequivocally testified that (1) their children did not suffer any harm from consuming Plum Products and (2) Plum Products were safe. *See, e.g.*, 2-SER-439 ("Q. Are you claiming that [your children] were harmed in any way by eating Plum baby foods? A. No."); 2-SER-447 ("Q. Is it part of your claim that Plum baby foods are unsafe? A. No."); 2-SER-490 ("Q. You have no evidence . . . that your children's health or safety were affected by the consumption of these foods, and you're not claiming that their health and safety was affected; is that correct? A. I'm not claiming that."). This was further confirmed by Plaintiffs in written discovery responses and in representations to the district court. 1-SER-273, 291; 2-SER-311, 330, 348, 366–67, 385, 403, 420–21 ("Plaintiff is not seeking any damages related to any physical injuries and *this case is not about health or safety*. . . . [information] regarding *the health and safety of Plum Baby Foods Products . . . [is] of low probative value*."); 3-SER-732 ("[W]e do not allege that the Plum baby food as sold to our plaintiffs had levels that are unsafe."); 5-SER-1150

("With respect to safety, Plum is correct that this case does not allege that any specific lot or pouch of the Products was unsafe.").

Plaintiffs also conceded in discovery that their children received healthful nutrition from Plum Products. *See, e.g.*, 2-SER-439 ("A. [W]ere [Plum Products] nutritionally healthy for her? Yes."); 2-SER-460 ("Q. [Y]ou believed this food to be healthy and nutritious for your baby? A. Yes."); 2-SER-472 ("A. I believe it's a healthy product, safe for baby consumption."). Further, Plum Products' labels are undisputedly truthful, conveying accurately that they are USDA Certified Organic, Non-GMO, and made from fruits and vegetables with the nutrients reflected on the Products' Nutrition Facts Panel. 3-SER-718–27.

## II. Procedural History

### A. Plum Moved for Summary Judgment.

After completing fact discovery, Plum sought summary judgment in full. Plaintiffs' pleadings, deposition testimony, and written discovery all confirmed that their claimed basis for liability was limited to a pure omission theory. 3-SER-731 ("It's been pled as a pure omissions case."); 5-SER-1135. Because the case was limited in this way, the accuracy of the information on Plum Products' labels went uncontested. *See, e.g.*, 2-SER-435; 2-SER-489; 2-SER-447, 452; *see also* 3-SER-718–27.

Consistent with the district court's procedures, Plum sought written leave to move for summary judgment. 3-SER-755–57. Plum argued that the Ninth Circuit's decision in *Hodsdon* mandated judgment in its favor: First, Plum explained that Plaintiffs had repeatedly admitted there was no evidence of any safety concern pertaining to the Plum Products, much less evidence of an "unreasonable" safety hazard. 3-SER-755. Second, Plum explained that Plaintiffs admitted that their children received the full nutritional benefits of the Plum Products they consumed, such that the Products necessarily served their "central function." 3-SER755–56. During the hearing on Plum's request for leave, Plaintiffs' counsel again characterized their claims as limited to pure omissions. 3-SER-731. Counsel also admitted that Plaintiffs were not contesting the safety of the Plum Products. 3-SER-732. Thus, the narrowness of Plaintiffs' legal theory and their safety admissions were agreed to by Plaintiffs themselves.

## B. The District Court Granted Plum's Motion for Summary Judgment on Plaintiffs' California Consumer Protection Claims.

Plum moved for summary judgment against all nine Plaintiffs, including both California and non-California residents. 1-SER-18–19.

Plum thus briefed the legal standards for omissions under the consumer protection statutes of California, New York, Illinois, Minnesota, and Pennsylvania, and common law claims for unjust enrichment, fraud by omission, and fraudulent omission by misrepresentation. 1-SER-38–41.

On appeal, Plaintiffs have abandoned all but two causes of action: their omission-based claims under California's UCL and CLRA. *See* Appellants' Br. at 14. These claims were briefed by the parties and adjudicated by the district court under *Hodsdon*. 1-ER-11–15.

### 1. Plaintiffs admitted they were not challenging Plum Products' safety and otherwise had only speculative proof of harm related to heavy metals.

As to safety, Plum relied on Plaintiffs' repeated concessions during discovery that they did not challenge the safety of the Plum Products. *See, e.g.*, 1-SER-273, 291; 2-SER-311, 330, 348, 366–67, 385, 403, 420–21. Plum likewise pointed to the FDA's pronouncement that trace heavy metals do not render baby foods unsafe, and that parents who avoided feeding these foods to their children risked *worsening* their diets and health. 1-SER-238 (FDA explaining that "[y]ou do not need to throw out packaged baby foods or stop feeding certain foods to your babies and children. Eliminating entire food groups from your children's diet may

result in nutrient deficiencies and potential poor health outcomes."); *see also* 1-SER-231–33 (FDA declining to limit the sale of implicated baby food). The evidence also confirmed that trace heavy metals are potentially present in multiple nutritious crops like spinach, carrots, sweet potatoes, and rice. 1-SER-108–09, 114; 1-SER-167.

In opposition, Plaintiffs again admitted that they had no proof that the Plum Products posed any safety risk. 2-ER-83 ("Plum is correct that this case does not allege that any specific lot or pouch of the Products was unsafe."). Notwithstanding this admission, Plaintiffs maintained vaguely that safety was "at issue" and that there are "risks" associated with heavy metals. *Id*. Their sole evidence on this point was information indicating that certain third parties have not yet set a "safe level" for lead exposure in children. 2-ER-85. But Plaintiffs offered *no* evidence that Plum Products caused any harm to their children—in fact, they disclaimed any such allegations—or to anyone else.[3]

---

[3] Plaintiffs' opening brief misleadingly suggests that they offered Dr. Gardener's first report in support of an argument concerning the bioaccumulation of heavy metals over time. Appellants' Br. at 12. This is false. Dr. Gardner's first report was offered only for the narrow (and redundant) assertion that third-party agencies have not yet set a safe level for lead in children. 3-ER-378. Plaintiffs' effort to recast this report for the first time on appeal to argue its import in a way that was never

Plaintiffs themselves, parroting allegations from the pleadings, speculated that trace heavy metals could be unsafe. 3-ER-484–86. But none offered any evidence to substantiate those beliefs, and they all otherwise admitted that Plum Products are safe. *See, e.g.*, 2-SER-439; 2-SER-447; 2-SER-490.

Plaintiffs also criticized Plum's internal heavy metals testing program as inadequate but pointed to no instance of an unsafe Plum Product. 3-SER-1078, 1080, 1083. Plaintiffs also cited, out of context, Plum's internal classification of ingredients for its Products as "high risk." 3-SER-1078, 1080, 1083, 1089. But this classification had nothing to do with safety and instead related to the ingredients' regulatory status as "organic," which necessitated certain verifications and accompanying testing. 5-SER-1114; 5-SER-1106. Plum's witnesses consistently testified that its Products are safe and nutritious. 5-SER-1119; 5-SER-1123.

---

presented to the district court is barred. *See, e.g.*, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998) ("We apply a 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court."). Regardless, Dr. Gardener never evaluated the Plum Products and never identified a single instance of any negative health outcome resulting from consumption of Plum Products. 1-SER-5–6.

14

The district court agreed that Plaintiffs failed to establish any "unreasonable safety hazard," deeming their supposed evidence about the potential harms of heavy metals "too conjectural." 1-ER-11.

### 2. There was no dispute that Plum Products provide healthful nutrition and function as food.

As to central function, Plum relied on undisputed evidence that its Products provided all the nutrition indicated on the labels, along with accompanying admissions from Plaintiffs that the Products were healthful. *See e.g.,* 2-SER-439; 2-SER-447, 452; 2-SER-460 ("Q: [B]ased on the ingredient statement in the Nutrition Facts Panel . . . did you believe this food to be healthy and nutritious? A. Yes. Q. [D]o you still believe that food to be healthy and nutritious? . . . A. Yes."); 2-SER-472, 475 ("A. I believe it's a healthy product, safe for baby consumption.").

In opposition, Plaintiffs offered Dr. Gardner's report, which purported to opine that the presence of trace heavy metals could conceivably impact the absorption of certain nutrients. 3-ER-325. But as with her safety-related opinions, Dr. Gardner: (1) never analyzed the nutritional content of Plum Products; (2) never spoke with Plaintiffs, and (3) admitted it would be a "weird thing" to suggest that Plum Products

15

ceased to function as food simply because they may contain trace heavy metals. 1-SER-5–6, 10.

Based on this evidence, the district court held that trace heavy metals did not impair Plum Products' "central function." 1-SER-10.[4]

## C. The District Court Rejected Plaintiffs' Active Concealment and Exclusive Knowledge Arguments.

Under *Hodsdon*, once the evidence establishes that the "unreasonable safety hazard" or "central function" factors are not satisfied, no further analysis is required and any UCL and CLRA omission claims fail. *See infra* pp. 40–43. It is then legally unnecessary to consider whether a plaintiff has also satisfied one of the four *LiMandri* factors. *Id.*

The district court appeared to acknowledge this framework. 1-ER-10. But it nonetheless went on to evaluate whether Plaintiffs' evidence established either that Plum had "exclusive knowledge" of or "actively

---

[4] The district court held that because Plaintiffs had not established any actionable omission under the fraudulent prong of the UCL, this foreclosed any claim under the UCL's unlawful or unfair prongs. 1-ER-15. The district court also held that Plaintiffs' UCL unfair prong claim failed on the merits under both the "tethering" and "balancing" tests. *Id.* This aspect of the decision was not presented in Plaintiffs' opening brief and so any challenge to the district court's decision on this point has been waived. *See infra* p. 28.

16

concealed" the presence of trace heavy metals in Plum Products, which are two of the four *LiMandri* factors. 1-ER-12–13.

*First*, as to "active concealment," the district court agreed that the evidence showed that Plum did not "actively conceal" the fact that its Products—like all baby foods made from certain nutritious crops—could contain trace heavy metals. 1-ER-13 ("[Plum] did not conceal 'the matter complained of'; that its products contained high risk of containing heavy metals or perchlorate."). The district court credited undisputed evidence that Plum itself had, since 2017, publicized on its own website the potential that trace heavy metals might be present in its Products. 1-ER-12. The district court also cited public media coverage of this issue that substantially predated Plaintiffs' lawsuit. *Id.* ("The record also establishes that the risk of the presence of heavy metals and perchlorate in the food supply, including in ingredients used in defendant's products, has been covered by the media before this lawsuit was filed."). Dr. Gardener echoed this point, testifying to the FDA's longstanding monitoring and publication of information about the presence of heavy metals in the food supply, including in ingredients that make up baby foods like the Plum Products. 1-SER-9.

17

The district court reasoned that Plaintiffs' evidence as to "active concealment" was inadequate because the information they claimed was "concealed" did not bear on whether Plum actively concealed the ultimate fact—which was the potential presence of trace heavy metals in its Products. 1-ER-13. Plaintiffs pointed to evidence which they claimed showed that Plum: (1) purportedly performed inadequate testing for heavy metals; (2) failed to fully describe its testing program; (3) internally classified ingredients for baby foods as "high risk"; and (4) misdescribed regulatory standards for heavy metals. 5-SER-1148–49; *see also* Appellants' Br. at 16-17 (same). The district court explained that, even accepting these assertions as true, none amounted to proof of "specific facts showing that defendant was 'concealing or covering up the matters complained of'—here, the risk of heavy metals and perchlorate in defendant's products." 1-ER-13. The district court later described this evidence as "irrelevant to [its] ruling." 1-SER-2.

*Second*, as to "exclusive knowledge," the district court agreed that Plaintiffs failed to show that Plum had "exclusive knowledge" that its Products were at risk of containing trace heavy metals. The district court again noted that Plum had publicly disclosed this fact on its own website

18

since at least 2017. 1-ER-12. The district court also cited the evidence of numerous public media reports on the issue. 1-ER-13 ("The public availability of this information undermines plaintiffs' arguments that their allegations are sufficient to support defendant's exclusive knowledge and that plaintiffs had no reason to know of these facts."). Finally, the district court noted that Plaintiffs' *own evidence* showed that over a third of the consumers they surveyed were aware of the Subcommittee Report explaining that trace heavy metals were present in baby foods industry-wide, including Plum Products. 1-ER-13.

Thus, the district court explained that even if *LiMandri* were considered, Plaintiffs UCL and CLRA claims still fail. 1-ER-12–13.

### D. Because Of the Dispositive Effect of *Hodsdon*, Plaintiffs Ask This Court to Certify a Question to Attempt to Overrule That Decision.

Plaintiffs appealed a limited portion of the district court's ruling: whether their omission-based UCL and CLRA claims were properly dismissed under *Hodsdon*. Appellants' Br. at 3-4 (Plaintiffs' Statement of Issues Presented for Review). As an adjunct to that issue, Plaintiffs also appealed the district court's finding that, under *LiMandri*, Plaintiffs

19

lacked sufficient evidence to raise a disputed issue of material fact as to either "active concealment" or "exclusive knowledge." *Id*.

As no other aspects of the district court's decision were appealed, Plaintiffs have abandoned their consumer protection claims under the laws of New York, Illinois, Pennsylvania, and Minnesota, along with their common law claims. Appellants' Br. at 3-4.

Before filing their opening brief, Plaintiffs also filed a Motion to Certify Issue to California Supreme Court. *See* Dkt. No. 10 (May 31, 2024) ("Appellants' Mot. to Certify"). The Motion to Certify seeks certification of the question, "*Under California Law, what legal standard applies to a claim of deception by omission under the Consumer Legal Remedies Act and Unfair Competition Law?*" *Id*. This is the exact question this Court answered in *Hodsdon*. So, Plaintiffs Motion to Certify is effectively an attempt to have the California Supreme Court overrule *Hodsdon*.

Plum opposed the Motion to Certify, explaining that this aspect of California law is resolved and that *Hodsdon* is an accurate synthesis of that law for omission-based claims under the UCL and CLRA. *See* Dkt. No. 14 (June 10, 2024) ("Appellee's Opp. to Mot. to Certify"). As noted

there, Plaintiffs' Motion to Certify is a transparent effort to upend precedent that properly disposed of their claims. *Id.* at 1. This Court did not rule on the Motion to Certify and instead referred it to the merits panel handling the appeal. *See* Dkt. No. 11 (Jun. 7, 2024).

Although the Motion to Certify was already fully briefed, Plaintiffs re-raised the issue in their merits brief, listing their certification request as one of the issues presented for review. Appellants' Br. at 3, 25-34. Subsequently, the California Attorney General's Office filed an amicus brief in support of the Motion to Certify. *See* Dkt. No. 24 (Aug. 25, 2024) ("AG's Amicus Br."). The amicus brief presents many of the same arguments already raised in Plaintiffs' Motion to Certify and their opening brief, contending that the law concerning omission claims under the UCL and CLRA is unresolved. *Id.* at 1. The Attorney General concedes, however, that the district court properly relied on *Hodsdon* and takes no position on the correctness of the district court's application of that decision. AG's Amicus Br. at 6 n.6 ("The Attorney General's view is that the district court used the standard dictated by current Ninth Circuit precedent, but he takes no position on whether the district court correctly applied it to the facts of this case.").

21

## SUMMARY OF THE ARGUMENT

1.    The district court correctly entered summary judgment for Plum on Plaintiffs' UCL and CLRA omission claims under *Hodsdon*.

*First*, Plaintiffs failed to show that Plum Products pose an "unreasonable safety hazard." This is a heightened inquiry, requiring hard proof of accrued harm. It is difficult to imagine a weaker case on this point, as Plaintiffs repeatedly admitted that they were not challenging the safety of Plum Products. Even at summary judgment, Plaintiffs told the Court they could not show "that any specific lot or pouch of the Products was unsafe."

Facing the realization that these concessions doom their claims, Plaintiffs point to conjectural evidence—untethered to any assessment of Plum Products or the Plaintiffs—that bioaccumulation of heavy metals at unspecified levels might someday cause adverse health outcomes in unknown persons. This did not raise any issue of disputed fact to show that Plum Products pose an "unreasonable safety hazard." The notion that Plum Products are unsafe in any way is baseless. They are nutritious foods the FDA considers safe to eat, knowing they may contain trace heavy metals.

22

*Second*, Plaintiffs failed to raise any issue of disputed fact to show that the presence of trace heavy metals in Plum Products affected their "central function." This is likewise a stringent legal requirement, requiring Plaintiffs to prove that trace heavy metals made it so that Plum Products ceased to function as food. There was no proof to support that outlandish premise. Plum Products undisputedly contained all the healthful nutrients and ingredients reflected on their labels. Against this evidence, Plaintiffs theorized that heavy metals might affect absorption of certain nutrients. But their expert never analyzed Plum Products, never evaluated Plaintiffs, and went on to admit that Plum Products *do* function as food.

Plaintiffs' claims failed both *Hodsdon* inquiries and this Court should affirm.

2. Once the district court determined that Plaintiffs' UCL and CLRA claims did not pass review under *Hodsdon*, no further analysis was required to enter judgment in Plum's favor. The district court nonetheless went on to evaluate whether Plaintiffs separately satisfied the "active concealment," or "exclusive knowledge" prongs of *LiMandri*. This was not necessary because no consideration of *LiMandri* is required

23

or allowed if an omission claim fails to cross the "unreasonable safety hazard" or "central function" threshold of *Hodsdon*. This Court should decline to review, as unnecessary to the disposition of the appeal, whether Plaintiffs raised any disputed issue of fact under *LiMandri*.

Regardless, the evidence showed that Plum had, well prior to the lawsuit, publicly disclosed the potential presence of trace heavy metals in its Products. Moreover, that nutritious crops take up those metals as part of the agricultural process has been well-documented for years, including in public information that specifically referenced Plum Products. This evidence precluded a finding that Plum "actively concealed" or had "exclusive knowledge" of the fact that its Products may contain trace heavy metals.

3.     *Hodsdon* disposes of Plaintiffs' UCL and CLRA omission claims. So, Plaintiffs' endgame seeks to avoid *Hodsdon* altogether. Plaintiffs insist that certification is required because *Hodsdon* has engendered "disarray." This argument is easily disposed of, as Plaintiffs' own authority reflects consistent and stable application of *Hodsdon* by this Court, by district courts, and by California courts. There is no reason to believe that the California Supreme Court would repudiate *Hodsdon*

24

in favor of an all-encompassing—and staggeringly borderless—"likely to deceive" standard in omissions cases. This would allow a consumer to bring suit against a truthfully-labeled, safe, and fully-functioning product just because the manufacturer allegedly "omitted" from the label some fact the consumer deemed personally important.

Plaintiffs and the Attorney General point only to isolated language from unrelated cases decided decades ago to conjure up supposed interest in such a theory. But, had Plaintiffs or the Attorney General bothered to examine the California Courts of Appeal's treatment of *Hodsdon*, they would see that their guesswork is wrong. The California Supreme Court has *already* been presented, via direct appeal, with the same fundamental question and denied review. So, Plaintiffs are asking this Court to burden the California Supreme Court with a pointless redundancy, concerning authority that is well-settled. Plaintiffs' request to certify should be denied.

## STANDARD OF REVIEW

An order granting a motion for summary judgment is reviewed *de novo. Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). "Summary judgment is appropriate when, based on the evidence

in the record, no reasonable factfinder could return a verdict" for the party against whom summary judgment is granted. *See id.*; Fed. R. Civ. P. 56. Summary judgment may be affirmed "on any basis supported by the record, whether or not relied upon by the district court." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007).

## ARGUMENT

## I. The District Court Correctly Entered Judgment in Plum's Favor on Plaintiffs' UCL and CLRA Claims

Claims for omissions brought under the UCL and CLRA are governed by *Hodsdon*. Under *Hodsdon*, a defendant only has a legal duty to disclose if the omitted information presents an "unreasonable safety hazard" or impairs the product's "central function." 891 F.3d at 864. *Hodsdon* is regularly applied by this Court to affirm Rule 12 dismissals and entry of summary judgment. *In re: Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394, at *2 (9th Cir. Nov. 2, 2023) (affirming dismissal and explaining "[b]ecause we agree that Plaintiffs' allegations fail to cross *Hodsdon*'s central functionality threshold, Plaintiffs have not established that [defendant]was under a duty to disclose the defects"); *Sud v. Costco Wholesale Corp.*, 731 F. App'x 719, 720 (9th Cir. July 20, 2018) ("Insofar

26

as the plaintiffs' claims are premised on omissions, our decision in [*Hodsdon*], controls the outcome.") (internal citation omitted).[5]

District courts also routinely apply *Hodsdon*—which has been cited over two hundred times within this Circuit—as a straightforward summation of the law on omissions. *See, e.g., In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008 (N.D. Cal. 2023) (describing *Hodsdon* as "synthesizing recent decisions of the California Courts of Appeal" and collecting cases). Here, the record overwhelmingly established that neither the "unreasonable safety hazard" or "central function" requirements of *Hodsdon* were met. The lack of any disputed material fact means the district court's judgment must be affirmed.[6]

---

[5] Several other Ninth Circuit decisions are in accord. *See Knowles v. Arris Int'l PLC*, 847 F. App'x 512, 514 (9th Cir. 2021) (affirming summary judgment and explaining that a defendant has no duty to disclose unless omitted information is a defect "that affect[s] the central function"); *Browning v. Unilever*, 809 F. App'x 446, 447 (9th Cir. June 18, 2020) (affirming summary judgment where plaintiff did not show that product posed an "unreasonable safety hazard"); *Dang v. Samsung Elecs. Co.*, 803 F. App'x 137, 138 (9th Cir. Apr. 29, 2020) (affirming dismissal and explaining that "[t]he complaint fails to offer factual support for [plaintiff's] claim that [defendant's] omission of an infringement declaration caused a safety hazard or involved a physical defect that affected the central function of the device").

[6] The district court separately considered whether Plaintiffs' UCL claim brought under the "unfairness" and "unlawful" prongs survived

## A. The Record Demonstrated That Plum Products Did Not Pose an "Unreasonable Safety Hazard."

The "unreasonable safety hazard" standard is an exacting requirement that obligates a plaintiff to present evidence showing she suffered, or was placed at serious risk of suffering, real and immediate harm. *See Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1069-70 (E.D. Cal. 2022) ("unreasonable safety hazard" established where defect caused plaintiffs' cars to "[shake] violently . . . and eventually [catch] on fire"); *Johnson v. Glock*, No. 3:20-cv-08807-WHO, 2021 WL 428635, at *5 (N.D. Cal. Feb. 8, 2021) ("A piece of metal being dislodged from a handheld object at force . . . an unreasonable safety hazard."). That standard self-evidently is not satisfied when the plaintiff admits she was unharmed. *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017) ("[A] party's allegations of an unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries.");

---

given the court's determination that the UCL fraudulent prong claim failed *Hodsdon*. 1-ER-15–16. Adopting the same mode of analysis used in *Hodsdon*, the district court entered judgment for Plum on those prongs, as well. 1-ER-16. Plaintiffs' opening brief does not contest this aspect of the district court's decision and they have therefore waived any challenge to this issue. *See, e.g.*, *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

*Browning*, 809 F. App'x at 446-47 (affirming summary judgment where plaintiffs "used the products for years" yet "showed no symptoms" of alleged health harms, thus "fail[ing] to present summary judgment evidence linking use of the product to actual injury").

Here, there was not just an absence of proof as to any "unreasonable safety hazard"—there was overwhelming evidence that Plum Products are safe.

*First*, Plaintiffs uniformly admitted that Plum Products are safe and that they were not challenging their safety. 2-SER-439; 2-SER-447; 2-SER-463; 1-SER-273, 291; 2-SER-311, 330, 348, 366–67, 385, 403, 420–21. These concessions were repeated by their lawyers in direct statements to the district court and in their summary judgment briefing. 3-SER-732; 5-SER-1150. An admittedly unharmed plaintiff is not a party who has been exposed to an "unreasonable safety hazard." *Browning*, 809 F. App'x at 446-47.

*Second*, in response to the Congressional Report that prompted the underlying lawsuit, FDA reiterated that baby foods containing trace heavy metals remain safe and should not be avoided. 1-SER-235–39. FDA's position is uncontroversial, as the potential presence of trace

29

heavy metals in baby foods like Plum Products comes from the underlying crops themselves. 1-SER-108; 1-SER-164. A hazard premised on agriculturally-derived trace heavy metals would mean all baby food made with crops containing trace heavy metals, as well as the crops themselves (nutritious foods like spinach and carrots), pose an unreasonably unsafe hazard. Plaintiffs offered no evidence to support this extreme and scientifically outlandish position.

*Third*, Plaintiffs' evidence was categorically deficient, as it failed to even consider whether Plum Products posed an "unreasonable safety hazard." Their evidence below was principally limited to an assertion that certain third-party organizations have not established a "safe level" for lead in children. 2-ER-85. But these statements, unaccompanied by any proof as to Plum Products, do not establish an "unreasonable safety hazard." This exact theory has been rejected in cases involving trace heavy metals in food and correctly applying *Hodsdon. See, e.g.*, *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1195 (S.D. Cal. 2023) (finding allegation that "no amount of lead is known to be safe" insufficient to raise an "unreasonable safety hazard").

30

The deficiency of this evidence is corroborated by a consistent body of law that discredits the notion that trace heavy metals in food constitutes an "unreasonable safety hazard." A recent spate of cases filed in the Ninth Circuit have alleged that foods containing trace heavy metals misleadingly "omit" this information from their labels. Yet, *all* courts have held—dutifully applying *Hodsdon*—that the mere presence of trace heavy metals does *not* constitute an "unreasonable safety hazard," even when accepting as true allegations that any amount might be harmful. *See, e.g.*, *Rodriquez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) (finding alleged health harms of heavy metals insufficient to establish "unreasonable safety hazard"), *reconsideration denied*, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024); *Grausz*, 691 F. Supp. 3d at 1195 (same); *In re: Theo's Dark Choc. Litig.*, No. 23-cv-02739-HSG, 2024 WL 4336631, at *11 (N.D. Cal. Sept. 27, 2024) (same); *In re Trader Joe's Co. Dark Choc. Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725, at *11 (S.D. Cal. Mar. 27, 2024) (same); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862-HSG, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024) (same).

This authority disposes of Plaintiffs' latest argument, raised for the first time on appeal, that Dr. Gardener testified that heavy metals might bioaccumulate over time and lead to adverse health consequences. Appellants' Br. at 39.[7] Several recent decisions have rejected this precise theory because the speculative possibility of harm from heavy metals does not suffice to show an "unreasonable safety hazard," when the alleged harm remains unconnected to an evaluation of the levels of heavy metals in the *defendant's product*. *See Trader Joe's*, 2024 WL 1319725, at *11 ("[Plaintiffs] have to connect the health risks alleged to the levels of [h]eavy [m]etals in these [p]roducts and they have to be significant enough to be unfit for human consumption or an unreasonable safety hazard."); *Hayden*, 2024 WL 1643696, at *9 (same).

The Ninth Circuit employed a similar logic when it affirmed summary judgment in *Browning*. There, the plaintiff's expert testified that the defendant's exfoliation product posed a risk of creating micro-abrasions in the skin that could lead to adverse health consequences. 809 F. App'x at 446-47. But plaintiffs failed to show that they personally

---

[7] Plaintiffs' failure to present this argument to the district court means it is waived on appeal. *Peterson*, 140 F.3d at 1321. Plum addresses it here for thoroughness and to explain why the proof is inadequate.

suffered this form of harm or any other. This did not satisfy the "unreasonable safety hazard" standard. *Id.*

The same is true here. Dr. Gardener did not connect her speculative theories about the health harms of trace heavy metals *either* to the levels of heavy metals allegedly present in Plum Products or to any harms suffered by the Plaintiffs. 3-ER-378. Indeed, on its face her report says *nothing* about the levels of heavy metals in Plum Products or analyzes the products in any fashion. *Id.* Dr. Gardener later testified that she had not even spoken with the Plaintiffs, much less opined that their children were harmed in any way by Plum Products. 1-SER-5–6. The conjectural possibility that consumption of heavy metals might lead to some health harms, without connecting those allegations to an evaluation of the levels of heavy metals in the defendant's product, is inadequate to show that product poses an "unreasonable safety risk."

The remaining evidence Plaintiffs offer is even weaker and does not raise any disputed fact as to safety. Appellants Br. at 39-40. Plaintiffs' lay testimony that trace heavy metals might be harmful was unsubstantiated speculation, otherwise discredited by their own admissions that they were not disputing the safety of Plum Products.

33

Appellants Br. at 40. Likewise, the fact that Plum elected to test for the presence of trace heavy metals is not proof of a safety issue. *Id.* Plum witnesses consistently testified that its Products *are* safe. *See, e.g.*, 2-SER-439; 2-SER-447; 2-SER-463. There was no disputed issue of material fact on the "unreasonable safety hazard" component of *Hodsdon*.

## B. The Record Demonstrated That Trace Heavy Metals in Plum Products Did Not Affect "Central Function."

A "central function" defect must be one that "renders [the] product incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864; *see also, e.g.*, *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019) (same), *aff'd*, 847 F. App'x 512 (9th Cir. 2021). Mere impairment of a product's usefulness is not enough. *Oddo v. United Techs. Corp.*, No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663, at *10 (C.D. Cal. Jan. 3, 2022). As to a food's "central function," the Ninth Circuit addressed this point in *Hodsdon*, explaining that if the issue complained of does not impair a food's ability to perform as food, then the "central function" standard is not met. 891 F.3d at 863.

Unsurprisingly, case law concerning trace heavy metals in food is consistent: The mere presence of trace heavy metals does not cause food to stop functioning as food or providing nourishment. *Theo's*, 2024 WL

4336631, at *11 ("Plaintiffs have not plausibly pled that chocolate containing trace amounts of [h]eavy [m]etals ceases to function as food—or ceases to provide any nutritional value."); *Hayden*, 2024 WL 1643696, at *10 (finding that flaxseed containing trace amounts of cadmium does not "cease[ ] to function as a food, or even more specifically as flaxseed").

There was substantial evidence in the record to establish the entirely uncontroversial point that Plum Products did, in fact, function as food. Plaintiffs themselves all testified that their children ate and enjoyed Plum Products, which provided the healthy nourishment the labels represented they would. *See, e.g.*, 2-SER-439; 2-SER-447, 452; 2-SER-460; 2-SER-472, 475. The truth and accuracy of the nutritional information contained on these labels went unrebutted. 3-SER-715.

The only evidence offered to contest "central function" was Dr. Gardener's report. But Dr. Gardener never analyzed the nutritional content of Plum Products and admitted it would be a "weird thing" to suggest that Plum Products cease to function as food simply because they may contain trace heavy metals. 1-SER-5–6, 10. Dr. Gardener also repeatedly testified that the heavy metal content of Plum Products is no different than any other food made from the same crops. 1-SER-7–8. If

Plaintiffs' contention that they satisfied the central function standard were accepted, this would mean that wide swaths of the food supply fail to function as "food." There was no evidence to sustain this far-fetched argument. *Browning*, 809 F. App'x at 447.

Dr. Gardener's opinion that trace heavy metals may "impact [a] food's ability to promote health" was also never tied to any specific level of heavy metals, much less the levels of heavy metals supposedly present in Plum Products. 3-ER-333. Without any evidence offered to establish this fact, no reasonable jury could have concluded that Plum Products failed to provide their labeled nutrition due to the presence of trace heavy metals. *Knowles*, 847 F. App'x at 514 n.1 (finding evidence of some product impairment that did not cause the product to cease functioning insufficient to raise a disputed issue of material fact under *Hodsdon*); *see also Theo's*, 2024 WL 4336631, at *11 (accepting as true plaintiffs' allegation that trace heavy metals contradict a food's ability "to provide nutrition" but nonetheless holding this did not establish that the product "ceases to function as food—or ceases to provide any nutritional value"); *Hayden*, 2024 WL 1643696, at *10 (same).

36

Finally, the district court's determination that no "central function" defect was shown does not mean, as Plaintiffs' speculate, that "no food mislabeling or contamination case could ever meet *Hodsdon*'s test." Appellants' Br. at 43. Plaintiffs lost on this point because they had *no proof* that Plum Products failed to function as food. So, it was a lack of evidence that mandated judgment on their claims, not any inadequacy in *Hodsdon*. This is yet another instance of Plaintiffs' grudging acknowledgment that when *Hodsdon* is applied, they lose.

Plaintiffs are also wrong to suggest that *Hodsdon* does not apply to cases that involve a "physical defect" in a consumer good. Appellants' Br. at 37. *Hodsdon* inarguably applies to cases involving physical defects. *See, e.g.*, *Browning*, 809 F. App'x at 446-47. And as explained above, numerous district courts within this Circuit have correctly applied *Hodsdon* to cases involving trace heavy metals in foods. Plaintiffs' argument that *Hodsdon* "should not apply to the facts of this case," Appellants' Br. at 35, is nothing more than a baselessly wishful request to exempt their claims from the law.

## II. Plaintiffs' Failure of Proof Under *Hodsdon* Terminated Their UCL and CLRA Claims, Rendering Analysis Under *LiMandri* Unnecessary

Under *Hodsdon*, once a plaintiff fails to establish either an "unreasonable safety hazard" or "central function" defect, an omission-based claim fails and no further analysis is required. 891 F.3d at 861-63; *Sud*, 731 F. App'x at 720; *Intel*, 2023 WL 7211394, at *1. In other words, only if one of *Hodson*'s two thresholds is first met does the court *then* go on to consider whether the claim *also* meets one of the four *LiMandri* factors, which include whether the defendant "actively concealed" or had "exclusive knowledge" of some material fact. *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1085-86 (N.D. Cal. 2022) (citing *LiMandri*, 52 Cal. App. 4th at 336), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

The requirement that a plaintiff must first show a duty to disclose under *Hodsdon*—before reaching *LiMandri*—has been recognized as correct by this Court and the California Courts of Appeal. *See Intel*, 2023 WL 7211394, at *2 ("Because we agree that Plaintiffs' allegations fail to cross *Hodsdon*'s central functionality threshold, Plaintiffs have not established that [defendant] was under a duty to disclose the defects."); *Nalick v. Seagate Tech. LLC*, No. A158237, 2021 WL 1135226, at *9 (Cal.

38

Ct. App. Mar. 25, 2021) (requiring both a central function defect *and LiMandri* factor); *see also, e.g., So v. HP, Inc.*, No. 22-CV-02327, 2023 WL 4596778, at *7 (N.D. Cal. July 17, 2023) (explaining *LiMandri* factors not sufficient post-*Hodsdon*); *Knowles*, 847 F. App'x at 514 (affirming summary judgment due to failure of proof on "central function" without reaching *LiMandri*); *Browning*, 809 F. App'x at 446-47 (affirming summary judgment due to failure of proof on "unreasonable safety hazard" without reaching *LiMandri*).

Indeed, this approach was followed in *Hodsdon* itself, where the Court accepted that plaintiffs had plausibly alleged a *LiMandri* factor but nevertheless dismissed in the absence of an unreasonable safety hazard or central function defect. 891 F.3d at 863; *accord Intel*, 2023 WL 7211394, at *1 (same); *In re: Natera Prenatal Testing Litig.*, 664 F. Supp. 3d at 1008 ("In *Hodsdon*, the Ninth Circuit—synthesizing recent decisions of the California Courts of Appeal—explained that a plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff alleges the omission was material; (2) the alleged defect was central to the product's function; *and* (3) the defendant [a] has 'exclusive knowledge' of material facts, [b] 'actively conceals' a material fact") (emphasis added).

There is thus a large and stable body of precedent applying *Hodsdon* in this way.

### A. *Hodsdon* Is Consistently Interpreted to Require No *LiMandri* Inquiry if There Is No Threshold Showing of a Duty to Disclose.

Plaintiffs misrepresent *Hodsdon* as a source of confusion among lower courts—leaving the law "unsettled" or in "disarray"—in an effort to avoid that decision's dispositive effect. Appellant's Br. at 27-28. Yet, their own authority proves the opposite: *Hodsdon* is consistently and predictably applied. Post-*Hodsdon*, courts have repeatedly recognized that *LiMandri* is *only* reached if *Hodsdon*'s duty requirement is first met. *See McKinney v. Corsair Gaming, Inc.*, No. 22-CV-00312-CRB, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022) ("This Court recently decided on the first approach outlined (i.e., that in addition to the *LiMandri* factors, a plaintiff must allege materiality and that the defect was central to the product's function)."). As explained in *McKinney*, the "Ninth Circuit adopted [this] approach in *Hodsdon*," and "post-*Hodsdon*, the Ninth Circuit and a majority of district courts have applied this approach." *Id.* (collecting cases). Thus, *Hodsdon* put to rest any purported uncertainty regarding omission claims under the UCL and CLRA. *Cf. Neu v. FCA US*

40

*LLC*, No. 5:23-cv-00509-MCS-KK, 2023 WL 10406710, at \*7 (C.D. Cal. Nov. 13, 2023) (explaining that duty to disclose standard was "unsettled" before *Hodsdon*); *see also* Appellants' Br. at 28 (citing *McKinney* and *Neu*). District courts that have described the issue as "unsettled" are thus referring to *pre-Hodsdon* legal standards or have otherwise applied *Hodsdon* precisely as the Ninth Circuit instructs.

Nor is the law in "disarray." This description first appeared in a district court decision, *In re: Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067 (N.D. Cal. 2021). There, the reference was a quote from the plaintiff's brief, referring to the standards applicable in *partial* representation cases. *Id.* at 1101; *see also* 4-SER-1069 ("Notwithstanding the general disarray of case law in this area, there is no question *that material misrepresentations support a duty to disclose* omitted information to the contrary.") (emphasis added). The district court in *RAV4* later described plaintiffs' claims as involving partial representations, not pure omissions. *RAV4*, 534 F. Supp. 3d at 1104. The "disarray" description thus did not even pertain to the law on pure omissions. *Id.* at 1101.

41

Regardless, although *RAV4* applied *Hodsdon* and *LiMandri* as alternative tests, it is the only federal district court decision in the Ninth Circuit to have done so and is an erroneous outlier. In fact, *Hammerling* later explained that *RAV4* was incorrect and contrary to Ninth Circuit precedent and *Hodsdon*. *Hammerling*, 615 F. Supp. 3d at 1085. And unlike *RAV4*, *Hammerling* was later affirmed by this Court, which did not question the lower court's interpretation of *Hodsdon*. 2024 WL 937247, at *2.[8]

Plaintiffs' own briefing proves that district courts correctly apply *Hodsdon* and often explicitly reject *RAV4*. *See, e.g.*, *So v. HP, Inc.*, No. 22-cv-02327-BLF, 2022 WL 16925965, at *3 (N.D. Cal. Nov. 14, 2022) (rejecting *RAV4* and noting that *Hammerling* articulates the "appropriate test"); *In re Trader Joe's*, 2024 WL 1319725, at *10 n.13

---

[8] Appellants in *Hammerling* relied on *RAV4* and encouraged the Ninth Circuit to hold that *Hodsdon* and *LiMandri* represent alternative tests, just as Plaintiffs do here. *See* Appellants' Opening Br. at 20-21, Case No. 22-17024 (Apr. 10, 2023), Dkt. No. 6 ("The District Court erred in engrafting the narrower central function defect standard onto the already-existing *LiMandri* test that embodies California law on materiality. This Court should thus reverse and remand for consideration of Google's duty to disclose under the *LiMandri* factors."). The Ninth Circuit nonetheless affirmed, declining appellants' invitation to disturb *Hodsdon*. *Hammerling*, 2024 WL 937247, at *2. Plaintiffs are just recycling failed arguments this Court previously declined to accept.

(declining to follow *RAV4*); *Hedrick v. BSH Home Appliances Corp.*, No. 23-cv-00358-JWH-JDE, 2024 WL 2190984, at *14 (C.D. Cal. May 14, 2024) (same); *McKinney*, 2022 WL 2820097, at *9 (same); *Neu*, 2023 WL 10406710, at *7 (interpreting *Hodsdon* consistently with *Hammering*).

Ultimately, Plaintiffs' evidence of "disarray" consists of a stray quote from a single district court decision, later contradicted by an unbroken string of seven district court cases that correctly apply *Hodsdon*. Appellants' Br. at 27-28. Added to that list are five additional district court decisions involving trace heavy metals in food that also correctly apply *Hodsdon*. *See supra* p. 31. A dozen correctly decided cases and one erroneous decision is not proof of "disarray" in the law. It is proof of clarity.[9]

---

[9] Yet another district court has, in repudiating *RAV4*, described that case as irreconcilable with *Hodsdon*. *See Barrett v. Apple, Inc.*, No. 5:20-cv-04812-EJD, 2022 WL 2119131, at *11 (N.D. Cal. June 23, 2022) (rejecting *RAV4*'s description of California UCL and CLRA omissions law as "unsettled" and explaining that *Hodsdon* addressed that issue "precisely"), *reconsideration denied*, 2023 WL 3977633 (N.D. Cal. June 13, 2023).

**B.    The District Court's Consideration of the *LiMandri* Factors Was Unnecessary but Nonetheless Correct.**

The district court correctly found that Plaintiffs did not raise any issue of disputed material fact as to the "unreasonable safety hazard" or "central function" elements of *Hodsdon*. So, no further consideration of the *LiMandri* factors was required. *See supra* pp. 40-43. Nonetheless, seemingly in the interest of fully explaining the inadequacy of Plaintiffs' proof, the district court considered whether Plaintiffs satisfied two of these factors—(1) active concealment and (2) exclusive knowledge—and determined they did not. 1-ER-12–13. Although the district court's analysis of these factors was unnecessary, its assessment of the evidence was correct.

### 1.    Plaintiffs did not raise any issue of disputed material fact as to active concealment.

Active concealment requires proof of "specific affirmative acts on the part of the defendants in hiding, concealing or covering up *the matters complained of.*" *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) (internal quotation marks omitted) (emphasis added); *accord Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (same). "Mere nondisclosure does not constitute active concealment." *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN-RBB, 2014 WL 1664235,

at *6 (S.D. Cal. Apr. 18, 2014). Instead, active concealment requires "nondisclosure *combined with affirmative denials of the defect*." *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022) (emphasis added). Here, the "matter complained of" was the potential presence of trace heavy metals in Plum Products. Appellants' Br. at 22 (identifying "presence" or "risk of presence" of heavy metals as the contested omission). It was undisputed that Plum did *not* actively conceal that fact but rather repeatedly disclosed it publicly.

*First*, Plum introduced undisputed facts showing that the potential presence of trace heavy metals in Plum Products had been publicly communicated in media reports nationwide for years. 3-SER-694–700; 3-SER-702–03; 3-SER-705–13. Dr. Gardener likewise testified that FDA has long monitored and publicly disclosed information on the presence of heavy metals in the food supply, including in ingredients that make up baby foods like Plum Products. 1-SER-9. This alone was dispositive, as an "active concealment" theory cannot be sustained where the fact at issue was disclosed. *See, e.g.*, *Kavehrad v. Vizio, Inc.*, No. 8:21-cv-01868-JLS-DFM, 2023 WL 2558535, at *5-6 (C.D. Cal. Jan. 26, 2023) (rejecting

45

active concealment theory where fact at issue was disclosed on defendant's website).

*Second*, the evidence also established that Plum never disputed the potential presence of trace heavy metals in its Products. Since 2017, its own website discussed the presence of heavy metals in the food supply and explained that Plum Products may contain trace heavy metals as a result. 3-ER-457 ("Our testing confirmed that the averaged results for *heavy metals in all tested Plum products gave concentrations that are typical* for those ingredients" . . . "Heavy metals are present in the environment, including soil and water. Whether you are growing your own produce in your backyard, buying fresh produce from a farmer's market *or purchasing a product in the supermarket, these naturally occurring substances will likely be present in the food to some extent*.") (emphases added). Thus, Plum did not engage in any "affirmative denials" about trace heavy metals in its Products. *Cho*, 636 F. Supp. 3d at 1166. Instead, it publicly disclosed that information and truthfully explained the widespread presence of trace heavy metals throughout the food supply. 3-ER-457.

*Third*, although Plaintiffs point to supposed inadequacies in Plum's heavy metals testing program as evidence that Plum actively concealed some relevant fact (Appellants' Br. at 44-56), none of the cited evidence reflects any denial by Plum that its Products contained or may contain trace heavy metals. At most, these facts go to the execution of Plum's heavy metals testing program and the specific levels of heavy metals in its products. But the particular levels of heavy metals present in Plum Products was not "the matter[] complained of" by Plaintiffs. *Herron*, 924 F. Supp. 2d at 1176. Instead, the "matter[] complained of," as Plaintiffs' brief admits, was the "presence" of heavy metals or the "risk of" that presence. Appellants' Br. at 22. That characterization is entirely consistent with how the case was pleaded. Plaintiffs insisted that the *risk* of the presence of heavy metals *at any levels* is what triggered a duty of disclosure. 3-SER-894 (¶ 11); 4-SER-924–25, 929, 937, 944–46, 948, 956 (¶¶ 84, 107, 142, 165, 176, 179, 191, 235); *see also* 5-SER-1146 (repeatedly citing the FACC to establish that "concealment" theory goes to the "presence of Heavy Metals"). So, whatever testing might indicate about specific levels of heavy metals in Plum Products was not relevant to Plaintiffs' theory.

47

Plaintiffs cannot sustain an active concealment theory by pointing to facts that were not the basis of their omission claim. In *Herron*, the court held that the plaintiff could not support an "active concealment" theory by arguing that he was denied access to the specifics of the defendant's internal testing, when the fact of what the defendant tested was public. 924 F. Supp. 2d at 1176; *accord Kavehrad*, 2023 WL 2558535, at *5-6. The same is true here. The particulars of Plum's testing process do not make it any more or less knowable that its Products, like all baby foods and the fruits and vegetables that comprise them, may contain trace heavy metals. 1-SER-167. Thus, facts going to the adequacy of Plum's heavy metals testing program were—as the district court later observed—"irrelevant." 1-SER-2.

Plaintiffs are not entitled to an "inference," as their brief suggests, that irrelevant facts should have forestalled summary judgment. Appellants' Br. at 57. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 2. Plaintiffs did not raise any issue of disputed material fact as to "exclusive knowledge."

As recently reiterated by the California Supreme Court, "exclusive knowledge" requires proof that the defendant has *complete* exclusivity of knowledge of the fact at issue, *and* that the plaintiff cannot reasonably discover that fact. *See Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024) (requiring that "the material facts are *known or accessible only to defendant*, *and* defendant knows those facts are not known or reasonably discoverable by plaintiff, (i.e., exclusive knowledge)") (emphases added); *accord Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011) (noting "defendant knew [of] this defect while plaintiffs did not, and, given the nature of the defect it was difficult to discover"). When a defendant makes public disclosures, or the disputed information is otherwise publicly available, then the defendant necessarily does not have "exclusive knowledge." *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 344209, at *4 (N.D. Cal. Feb. 6, 2008) (holding disclosure of fact "in public filings" and in "an application with the FCC" defeated exclusive knowledge). Extensive evidence proved the public availability of information regarding the potential presence of trace heavy metals in Plum Products.

Plaintiffs' FACC repeatedly admitted to the widely disseminated fact that trace heavy metals are present in agricultural ingredients used to make baby foods. *See* 3-SER-894 (¶ 10); 4-SER-925, 931–32, 940–44, 948–49, 959 (¶¶ 88, 113, 114, 116, 159, 162, 163, 164, 195, 260). This alone is enough to disprove "exclusive knowledge." *See Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009) (finding exclusive knowledge defeated by public news sources cited in plaintiff's complaint). Moreover, Plum disclosed on its own website years before the lawsuit was filed that its Products contained trace heavy metals. 3-ER-456. And numerous public media reports that predate the lawsuit explained the same thing, including as to Plum Products specifically. 1-SER-126, 128–31, 133, 141; *see also* 2-SER-564–76; 2-SER-578–600; 3-SER-602–49; 3-SER-651–85. There was thus overwhelming proof that the risk that Plum Products may contain trace heavy metals was *not* a fact "known or accessible only to [Plum]."[10] *Rattagan*, 17 Cal. 5th at 40. This defeats "exclusive knowledge." *Id.*

---

[10] Notwithstanding Plaintiffs' erroneous suggestion to the contrary (Appellants Br. at 51), there also was publicly available information about the presence of perchlorate in Plum Products and in baby foods generally. 1-SER-114. Likewise, perchlorate has for years been authorized as a food contact substance by FDA, and its presence in the

Plaintiffs' principal response—in line with their overarching appellate strategy—is to ask this Court to bend the law incorrectly in their favor. Citing district court decisions, Plaintiffs argue that "exclusive knowledge" is a misnomer that instead means "superior knowledge." Appellants' Br. at 44. But California courts state the test more rigorously, and correctly, as mandating "exclusive knowledge" of the disputed fact by the defendant. *See Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970) (explaining that exclusive knowledge is satisfied where "the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff"); *Rattagan*, 17 Cal. 5th at 40 (same).

The parties in *Hodsdon* raised the same issue—whether federal district courts' more expansive "superior knowledge" formulation controls over California courts' adherence to "exclusive knowledge." *Hodsdon*, 891 F.3d at 864 n.5. The panel noted that "exclusive knowledge" as defined more precisely by California courts was the "better

---

food supply, including in baby foods, has long been reported on in mainstream news media. *See supra*, pp. 7–8. This publicly available information precludes any claim that Plum had exclusive knowledge of this information. *Stickrath*, 2008 WL 344209, at *4, *supra*.

reading" of California law. *Id. Rattagan* now answers that question definitively, and in the manner *Hodsdon* indicated was correct.

Because Plum did not have "exclusive knowledge" of the fact that there was a risk of trace heavy metals in its Products, it is not necessary to engage Plaintiffs' extended argument about whether that fact was "reasonably discoverable" by Plaintiffs. *Rattagan*, 17 Cal. 5th at 40. But Plaintiffs are wrong about that, too.

Plum put into evidence fourteen news articles on the subject spanning from 2006 through 2019, all readily accessible. 1-SER-20–21, 24–25, 32. Courts accept as few as *one* piece of public information to defeat a showing of exclusive knowledge. *See, e.g.*, *Wolph*, 2009 WL 3969467, at *4. Here there were far more.

Plaintiffs respond that they did not see these articles. Appellants' Br. at 48. But the relevant inquiry is whether a plaintiff could "reasonably discover" the information, which considers whether the plaintiff had an "inability to discover the allegedly omitted information." *Pearl v. Coinbase Glob., Inc.*, No. 22-cv-03561-MMC, 2024 WL 3416505, at *5 (N.D. Cal. Jul. 15, 2024). There was no evidence that Plaintiffs had

*an inability* to review the numerous public disclosures regarding the presence of trace heavy metals in baby food including Plum Products.[11]

Moreover, the information was not published in obscure locations that would require sophisticated sleuthing to discover. *Cf. Freund v. HP, Inc.*, No. 22-cv-03794-BLF, 2023 WL 5184140, at *5 (N.D. Cal. Aug. 10, 2023) (finding exclusive knowledge not undermined by customer posts that could have been found by "scouring" defendant's message boards). The evidence Plum offered included articles published by CNN, Forbes, Consumer Reports, NBC News, USA Today, and Good Morning America. 2-SER-547–50; 2-SER-552–56; 2-SER-558–62; 3-SER-694–700; 3-SER-702–03; 3-SER-705–13. And these disclosures were *in addition to* those on Plum's website stating that its Products contained trace heavy metals.[12] 3-ER-457.

---

[11] Plaintiffs' lawyers complain that three of the fourteen instances of public disclosure identified by Plum were in news articles from websites that required subscriptions at the time they attempted to access those sites. Appellants Br. at 48 n.13. They offered no evidence, however, that at the time of these articles' publication in 2006, 2008, and 2012, the information could not be accessed by consumers. Appellants' Br. at 48.

[12] As a non-sequitur, Plaintiffs point to expert reports offered to show that the presence of trace heavy metals might be material to certain consumers. Appellants' Br. at 51. This has no bearing on the issue of "exclusive knowledge." Regardless, *Hodsdon* established that

## III. The Court Should Deny Plaintiffs' Motion for Certification

Recognizing that their claims fail under *Hodsdon*, Plaintiffs seek to avoid affirmance by requesting a change in venue and a change in law. Plaintiffs ask this Court to certify the following question to the California Supreme Court: "Under California law, what legal standard applies to a claim of deception by omission under the [CLRA] and [UCL]?"[13] Appellants' Br. at 26; Appellants' Mot. to Certify at 4.

Plaintiffs speculate that the California Supreme Court would repudiate *Hodsdon* and would adopt a "likely to deceive" standard for omission-based consumer protection claims. Plaintiffs' preferred

---

"materiality" is not enough to sustain a pure omission claim. *Hodsdon*, 891 F.3d at 864. That is because a bare "materiality" standard in omissions cases is no standard at all: It would expose defendants to liability whenever a plaintiff claimed something that mattered to her purchase should have been, but was not, communicated on the label. *See Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 664-65 (N.D. Cal. 2016) ("[S]ome bright-line limitation on a manufacturer's duty to disclose is sound policy, given the difficulty of anticipating exactly what information some customers might find material to their purchasing decisions and wish to see on product labels."), *aff'd*, 730 F. App'x 460 (9th Cir. 2018).

[13] Plaintiffs opening brief repeats arguments for certification already raised in their Motion to Certify Issue to California Supreme Court. *Compare* Appellants' Br. at 26-35, *with* Appellants' Mot. to Certify. These arguments were addressed in Plum's Opposition to the Motion to Certify and are therefore not repeated here. *See generally* Appellee's Opp. to Mot. to Certify.

54

standard would require companies to affirmatively disclose non-safety-related information on truthfully-labeled non-defective products, simply because some consumer may feel "deceived" without such information. Appellants' Br. at 33-35; AG's Amicus Br. at 7-14. This rule is as unworkable as it is unprecedented, as the range of alleged omissions that could result in liability would be effectively limitless. Indeed, under this standard, "any consumer would have standing to sue any company that fails to disclose product ingredients or components, or business practices that could cause that consumer to regret patronizing that business." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1087 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018).

Plaintiffs fail to cite a single decision of the California Supreme Court or California Court of Appeal applying or even suggesting that a "likely to deceive" standard might apply in omission cases. And they fail to mention that, when repeatedly given the opportunity to do so on direct appeal, the California Supreme Court has denied review and declined to overrule *Hodson*.

### A. The California Supreme Court Recently Denied Review in Cases Raising the Same Question.

Since *Hodson*, the California Supreme Court has declined direct review in two cases presenting the very question Plaintiffs ask this Court to certify. Plaintiffs' request for certification fails for this reason alone. *See, e.g.*, *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1070 (9th Cir. 2020) (explaining that certification is particularly improper where "the California Supreme Court recently denied a petition for review in [a case] which presented that very question").

In *Nalick* (*see infra* pp. 59–60), the defendant sought review as to whether, in omission-based claims under the UCL and CLRA, manufacturers have a duty to disclose a central function defect in the absence of a safety hazard. 4-SER-990. Notably, the defendant opened its petition with the same breathless claims as to the supposed "disarray" in the caselaw that Plaintiffs recycle here. 4-SER-990; *see also* 4-SER-991 ("If the Court does not resolve this question, companies and consumers will continue to face inconsistent and unpredictable results in . . . suits premised on omissions-only claims."). The California Supreme Court summarily denied review. 4-SER-985.

56

In *Johnson & Johnson* (*see infra* p. 60), the defendant petitioned for review of whether *LiMandri* is properly applied to omission-based claims under the UCL.[14] 4-SER-1002–06. The California Supreme Court summarily denied review there, as well. 3-SER-758.

## B.   There is Controlling Precedent on the Standard for Omission Claims Under the UCL and CLRA.

It is unsurprising that the California Supreme Court denied review in *Nalick* and *Johnson & Johnson*, because the questions raised there were neither unsettled nor worthy of further consideration. *See* Cal. R. Ct. 8.500(b)(1) (California Supreme Court may grant review "to secure uniformity of decision or to settle an important question of law"). Instead, both cases were consistent with long-standing, controlling precedent in

---

[14]     Notably, in *opposing* review in *Johnson & Johnson* just two years ago, the California AG took the opposite position that it takes here, characterizing both *Daugherty* and *LiMandri* as "well-established," "longstanding precedent" in the context of omissions claims. *See* Answering Br. at 17-19, *Johnson & Johnson*, No. S274680 (Cal.). There, the California AG explained: "In California, an omission can be actionable under the UCL and FAL if it is 'contrary to a representation actually made by the defendant, or an omission of fact the defendant was obligated to disclose. Some courts . . . also apply a *complimentary* four-factor fraudulent-omission test from *LiMandri*, of which the fourth factor overlaps with the standard articulated in *Daugherty*." *Id.* at 17 (emphasis added). Thus, the California AG's position here is contradicted not only by the case law, but also by its own advocacy.

omissions-based consumer protection cases. This Court should decline certification for the same reason. *See* Cal. R. Ct. 8.548(a) (the California Supreme Court may answer a question certified by this Court *only* if "[t]here is no controlling precedent").

In the Ninth Circuit, *Hodsdon* is controlling precedent on the standard in omission-based consumer protection claims. *See, e.g.*, *Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1041 (9th Cir. 1999) ("We are not free to read California law without deferring to our own precedent on how to construe it."); *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020) ("Our Circuit's published opinions on the law are authoritative once issued and remain binding on subsequent panels of this court."). Plaintiffs do not dispute this. Instead, they describe a landscape marked by "disarray" as to the proper interpretation of *Hodsdon*. But *Hodsdon* conclusively answered this question, and since then, its approach has been applied consistently in omission-based cases by district courts throughout the Ninth Circuit. *See supra* pp. 40–43.

California Courts of Appeal have likewise created a coherent body of case law consistent with *Hodsdon*. *See* Appellee's Opp. to Mot. to Certify at 6-7 (discussing *Daugherty*, *Collins*, and *Rutledge*). Indeed, the

Courts of Appeals have recognized that *Hodsdon* synthesized the rulings of *Daugherty*, *Collins*, and *Rutledge*. *See Nalick*, 2021 WL 1135226, at \*9 (describing *Hodsdon* as having "summarized the holdings in *Rutledge* and *Collins*, noting those cases sanctioned an 'omission claim when: the plaintiff alleges that the omission was material; second, the plaintiff must plead that the defect was central to the product's function; and third, the plaintiff must allege one of the four *LiMandri* factors'"); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 325 (2022) (describing *Hodsdon* as "synthesizing state law and concluding an omission is actionable if, among other things, it satisfies one of the *LiMandri* factors"), *review denied* (July 13, 2022), *cert. denied sub nom. Johnson & Johnson v. California*, 143 S. Ct. 847 (2023).

Subsequent decisions of the California Court of Appeal have consistently applied *Hodsdon* without reference to the alternative "likely to deceive" standard urged by Plaintiffs and the Attorney General. In *Nalick*, the Court of Appeal held that a duty to disclose arises only where the omission relates to a safety hazard (as in *Wilson*) or a central function defect (as in *Collins*, *Rutledge*, and *Hodsdon*). 2021 WL 1135226, at \*8-10. *Nalick* explained that *only* once a plaintiff satisfies this threshold can

59

their claims proceed, and even then, *only* if they also satisfy a *LiMandri* factor. *Id.* at *10 (explaining that having pleaded a central function defect, the plaintiff's "claims may proceed provided he can meet the *LiMandri* test"). In *Johnson & Johnson*, where the allegedly omitted information related to "serious, long-term risks and complications" associated with pelvic mesh products (i.e., an unreasonable safety hazard), the Court of Appeal again cited *Hodsdon* with approval and held that an omission is actionable if it is "a fact the defendant was obliged to disclose" *and* "satisfies one or more of the four factors set forth in *LiMandri.*" 77 Cal. App. 5th at 311, 325.

These decisions are controlling, as well. *See, e.g.*, *Hodsdon*, 891 F.3d at 865 ("We should . . . follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it") (citations omitted); *Bills v. U.S. Fid. & Guar. Co.*, 280 F.3d 1231, 1234 n.1 (9th Cir. 2002) ("A federal court is obligated to follow the decisions of the state's intermediate appellate courts where there is no convincing evidence that the state supreme court would decide differently."). The interpretations of *Hodsdon* in *Nalick* and *Johnson & Johnson* are especially persuasive,

60

given that the California Supreme Court denied review in both cases. *See supra* pp. 56–57; *see also, e.g.*, *Herrera*, 953 F.3d at 1070 ("[A] decision on local law by a highly respected intermediate court of appeal must be accorded great weight, [and] [t]his is the more so where, as in this case, the highest court has refused to review the lower court's decision.") (citation omitted); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222-23 (9th Cir. 2015) (explaining that the Ninth Circuit "must follow" California Court of Appeal decisions where the "California Supreme Court denied the . . . petition for review" even where "California federal district courts have given [the decision] mixed treatment").

## C. There Is No Reason to Doubt That the California Supreme Court Would Follow *Hodsdon*.

Notwithstanding this body of controlling state and federal precedent, Plaintiffs and the Attorney General suggest the California Supreme Court might rule differently. Neither cites a single case, let alone a decision of the California Supreme Court, that supports this conclusion—and both evidently overlook *Nalick* and *Johnson & Johnson*. Unable to find any support for the sweeping duty of disclosure they propose, Plaintiffs and the Attorney General resort to speculation based on decades-old cases that predated *Hodsdon* and that do not involve pure

omissions. *See* Appellants' Br. at 32-35; AG's Amicus Br. at 11. They point to three cases from the 1970s and 1980s: *Chern v. Bank of Am.*, 15 Cal. 3d 866 (1976), *Comm. on Child.'s Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983), and *Ford Dealers Ass'n v. Dep't of Motor Vehicles*, 32 Cal. 3d 347 (1982). Appellants' Mot. to Certify at 12; AG's Amicus Br. at 11-13.

The Attorney General describes these as "deception-by-omission" cases (AG's Amicus Br. at 11), but none involved claims based on pure omissions. *Chern* and *Committee on Children's Television* involved affirmative misrepresentations. *See Chern*, 15 Cal. 3d at 876 (finding advertisements quoting interest rates lower than actual interest rates received by customers were "likely to mislead and deceive a bank's potential borrowers"); *Comm. on Child.'s Television*, 35 Cal. 3d at 207 (finding that alleged concealment of sugar content and absence of whole ingredients in advertisements for cereals was sufficient, "when joined with . . . affirmative misrepresentations," to state a claim that advertisements were "misleading and deceptive"). *Ford Dealers Association* is even farther afield, as it was not an omission or misrepresentation case at all, nor did it involve the state's consumer

protection statutes. 32 Cal. 3d at 354. These cases do not lend support to the limitless rule urged by Plaintiffs and the Attorney General.

Further, in the decades since these cases were decided, there has been no shortage of consumer class actions in California, and thus no shortage of opportunities for the California Supreme Court to articulate a "likely to deceive" standard or to correct the supposed confusion in the case law. The California Supreme Court has declined to do so. *See supra* pp. 55–57.

This Court should not burden the California Supreme Court or delay resolution of this case by certifying the same question. Indeed, this Court routinely declines to certify a question when a state supreme court "has not indicated a readiness to address it." *Anderson v. Deutsche Bank Nat'l Tr. Co. Americas*, 649 F. App'x 550, 552 n.1 (9th Cir. 2016); *see also Matus ex rel. Est. of Matus v. Kustom US, Inc.*, No. 23-16134, 2024 WL 3688728, at *2 (9th Cir. Aug. 7, 2024) ("Given that the Arizona Supreme Court has, in recent years, twice denied review on this question, we decline to exercise our discretion to certify it to that court.").

Finally, as both Plaintiffs and the Attorney General point out, there is *already* a case fully briefed before the California Supreme Court which

they claim presents the very question they seek to have certified here—

*Capito v. San Jose Healthcare Sys. LP. See* Appellants' Br. at 28-29;

Appellants' Mot. to Certify at 3; AG's Amicus Br. at 4-5, 17. Although

Plum disputes the relevance of this case, which does not involve a pure

omission theory of liability, *Capito* makes it doubly unnecessary for this

Court to grant certification.

## CONCLUSION

For the foregoing reasons, Plum respectfully requests that this

Court affirm the district court's entry of judgment in Plum's favor.

Dated: October 18, 2024                    Respectfully submitted,

PERKINS COIE LLP

/s/ *Charles C. Sipos*
    Charles C. Sipos
    Lauren J. Tsuji
    Natalie K. Sanders

*Attorneys for Defendant - Appellee
Plum, PBC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(a) because this brief contains 12,845 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type.

Dated: October 18, 2024           /s/ *Charles C. Sipos*
                                   Charles C. Sipos