No. 24-2766

# In the
# United States Court of Appeals
# For the Ninth Circuit

————————————————

LUDMILA GULKAROV, JANINE TORRENCE, KELLY McKEON, JOSH CRAWFORD, VANESSA MATHIESEN, AUTUMN ELLISON, JESSICA DAVID, SARAH BROWN and TOMMY NURRE,

*Plaintiffs-Appellants*,

v.

PLUM, PBC,

*Defendants-Appellees.*

————————————————

*On Appeal from*
United States District Court for the Northern District of California,
Oakland Division
The Honorable Yvonne Gonzalez Rogers, U.S.D.C. Case No. 21-CV-00913-YGR

————————————————————————

## APPELLANTS' REPLY BRIEF
## REDACTED

————————————————————————

**LOCKRIDGE GRINDAL NAUEN PLLP**
Rebecca A. Peterson (Calif. No. 241858)
100 Washington Ave South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rapeterson@locklaw.com

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
scruzhodge@litedepalma.com

*Attorneys for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

    I.     PLAINTIFFS' QUESTION WARRANTS CERTIFICATION ..........2

          A.     The Law Is in Disarray ................................................2

          B.     The California Courts of Appeal Have Largely
                Ignored *Hodsdon*..........................................................4

          C.     Likely to Deceive is The Proper Standard ..................6

    II.    THE DISTRICT COURT ERRED IN APPLYING *HODSDON*.........8

          A.     The District Court Should Not Have Applied *Hodsdon*.............8

               i.     Hodsdon has Left the Law in Disarray and It
                     is Not Consistently Applied................................8

               ii.    Hodsdon Conflicts with California Law.........................12

          B.     Evidence Shows the Unreasonable Safety Hazard
                Factor is Satisfied......................................................15

          C.     Heavy Metals Impact the Baby Food's Central Function. .......19

    III.   THE DISTRICT COURT'S *SUA SPONTE* DECISION
          ON THE *LIMANDRI* FACTORS WAS ERROR. ..............................21

          A.     Genuine Issues of Material Fact Exists As To
                Exclusive Knowledge. ...............................................21

          B.     Genuine Issues of Material Fact Exist Regarding
                Active Concealment...................................................25

CONCLUSION ..................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ......................................................*passim*

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) .................................................3

*In re: Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...........................................10

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ......................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................14

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................12

*Bank of the W. v. Superior Ct. of Alameda Cnty.*,
  2 Cal. 4th 1254 (1992) .......................................................................12

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ..........................................................12

*Barquis v. Merchants Collection Ass'n*,
  7 Cal. 3d 94 (1972) ............................................................................14

*Beaver v. Tarsadia Hotels*,
  29 F. Supp. 3d 1294 (S.D. Cal. 2014) ...............................................11

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................27

*Browning v. Am. Honda Motor Co.*,
  No. 20-cv-05417-BLF, 2022 WL 824106 (N.D. Cal. Mar. 18,
  2022) ..................................................................................................10

-ii-

*Browning v. Unilever United States, Inc.*,
  809 Fed. App'x. 446 (9th Cir. 2020) ......................................18, 19, 21

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*,
  14 Cal. 5th 1075 (2023) ......................................................13, 14, 17

*CDM Holdings Grp., LLC v. Tidal Com. Inc.*,
  No. SACV21-01204-CJC, 2023 WL 3335069
  (C.D. Cal. April 4, 2023) ..................................................................11

*Cho v. Hyundai Motor Co.*,
  636 F. Supp. 3d 1149 (C.D. Cal. 2022) ......................................25, 26

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ...........................................................27

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................17

*Daugherty v. American Honda Repair Co.*,
  144 Cal. App. 4th 824 (2006) ...........................................................13

*Election Integrity Project Cal., Inc. v. Weber*,
  113 F.4th 1072 (9th Cir. 2024) .........................................................14

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................................27

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D 592 (N.D. Cal. June 26, 2018) ........................................17

*Ford Dealers Ass'n v. Dep't of Motor Vehicles*,
  32 Cal.3d 347 (1982) ..........................................................................7

*Garcia v. Harley-Davidson Motor Co., Inc.*,
  No. 19-CV-02054-JCS, 2019 WL 6050768
  (N.D. Cal. Nov. 15, 2019)...................................................................4

*Goodwin v. Walgreens, Co.*,
  No. CV 23-147-DMG, 2023 WL 4037175
  (C.D. Cal. June 14, 2023) ...................................................................9

*Grausz v. Hershey Co.*,
    691 F. Supp. 3d 1178 (S.D. Cal. 2023) ................................................10, 18, 19

*Hammerling v. Google LLC*,
    516 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................10

*Hammerling v. Google, LLC*,
    No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ................................10

*Hansen v. Newegg.com Americas, Inc.*,
    25 Cal. App. 5th 714 (2018) .............................................................................15

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    No. 23-cv-03862-HSG, 2024 WL 1643696
    (N.D. Cal. April 16, 2024) .......................................................................9, 18, 21

*Hernandez v. DTI GmbH*,
    No. 21-cv-04065-JST, 2024 WL 3939569
    (N.D. Cal. Aug. 26, 2024) ...................................................................................7

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ............................................................29

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ..........................................................................20

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................*passim*

*Hyer v. City and Cnty. of Honolulu*,
    No. 23-15335, 118 F.4th 1044 (9th Cir. Sept. 23, 2024)...................................16

*Jenkins v. FCA US LLC*,
    No. 23-cv-01075-JSW, 2024 WL 1141002
    (N.D. Cal. Mar. 15, 2024)..................................................................................25

*Kavehrad v. Vizio, Inc.*,
    No. 8:21-cv-01868-JLS-DFM, 2023 WL 2558535
    (C.D. Cal. Jan. 26, 2023) .............................................................................27, 28

*Knowles v. Arris Int'l PLC*,
    No. 17-CV-01834-LHK, 2019 WL 3934781
    (N.D. Cal. Aug. 20, 2019)..................................................................................21

*Lagrisola v. N. Am. Fin. Corp.*,
  96 Cal. App. 5th 1178 (2023) ............................................................4

*Lytle v. Nutramax Lab'ys, Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ........................................................17

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ......................................................................13

*McKinney v. Corsair Gaming, Inc.*,
  No. 22-cv-00312-CRB, 2022 WL 2820097
  (N.D. Cal. July 19, 2022)..................................................................9

*Mendoza v. Midea Microwave & Elec. Appliances Mfg. Co.*,
  No. 1:20-cv-01133-TLN-CKD, 2023 WL 8358208
  (E.D. Cal. Dec. 1, 2023) ...................................................................9

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .....................................................................15

*Moe v. Transamerica Title Ins. Co.*,
  21 Cal. App. 3d 289 (1971) .............................................................13

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ....................................................12, 14

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014)...............................................22

*Nalick v. Seagate Tech. LLC*,
  No. A158237, 2021 WL 1135226 (Cal. Ct. App. Mar. 25, 2021) ..................4, 5

*Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*,
  90 Cal. App. 5th 1193 (2023) ..........................................................11

*In re Natera Prenatal Testing Litig.*,
  664 F. Supp. 3d 995 (N.D. Cal. 2023)...............................................3

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
  9 Cal. 5th 279 (Cal. 2020)................................................................14

*Neu v. FCA US LLC*,
  No. 5:23-CV-00509-MCS-KK, 2023 WL 10406710
  (C.D. Cal. Nov. 13, 2023) ......................................................................3

*Oddo v. United Techs. Corp.*,
  No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663
  (C.D. Cal. Jan. 3, 2022) .......................................................................21

*Outboard Marine Corp. v. Superior Court*,
  52 Cal. App. 3d 30 (1975) ...............................................................9, 13

*Pearl v. Coinbase Glob., Inc.*,
  No. 22-cv-03561-MMC, 2024 WL 3416505
  (N.D. Cal. July 15, 2024).....................................................................22

*People v. Johnson & Johnson*,
  77 Cal. App. 5th 295 (2022) .........................................................*passim*

*Poston v. GM, LLC*,
  No. 24-cv-0082-BAS-JLB, 2024 WL 3558377
  (S.D. Cal. July 22, 2024) ...............................................................11, 13

*Rattagan v. Uber Technologies, Inc.*,
  17 Cal.5th 1 (2024) ........................................................................21, 22

*Rodriquez v. Mondelēz Glob. LLC*,
  703 F. Supp. 3d 1191 (S.D. Cal. 2023).................................................18

*Stark v. Patreon, Inc.*,
  635 F. Supp. 3d 841 (N.D. Cal. 2022)..................................................10

*Taleshpour v. Apple Inc.*,
  549 F. Supp. 3d 1033 (N.D. Cal. 2021).................................................3

*Taragan v. Nissan N. Am. Inc.*,
  No. 09-cv-03660-SBA, 2013 WL 3157918
  (N.D. Cal. June 20, 2013) ....................................................................26

*In re Theo's Dark Chocolate Litig.*,
  No. 23-cv-02739, 2024 WL 4336631 (N.D. Cal. Sept. 27, 2024) ..............18, 21

*Thomas v. Newton Int'l Enters.*,
  42 F.3d 1266 (9th Cir. 1994) ...............................................................16

*Torres v. Adventist Health Sys./W.*,
    77 Cal. App. 5th 500 (2023) ...........................................................11, 25

*Torres v. Botanic Tonics, LLC*,
    709 F. Supp. 3d 856 (N.D. Cal. 2023) ...........................................10, 13

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) .................................4, 9, 10, 12

*In re Trader Joe's Co. Dark Chocolate Litig.*,
    No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725
    (S.D. Cal. Mar. 27, 2024) ..............................................................18

*Williams v. Gerber Prods Co.*,
    552 F.3d 934 (9th Cir. 2008) ...........................................................14

## Statutes

Cal. Civ. Code §1760 ..............................................................................12, 14

California's Consumers Legal Remedies Act.................................................*passim*

California's Unfair Competition Law .......................................................*passim*

## Other Authorities

Cal. Rule of Ct. 8.500(c)(1) ........................................................................6

## INTRODUCTION

Plum's and the Trade Association Amici's position is untenable. Requiring a plaintiff to establish a duty to disclose under *Hodsdon's* two-part safety and central function test is not only unworkable in a case involving food content, but contrary to the liberal construction given to the UCL and CLRA. (AB.50; TAB.22-23.)[1] If that was the standard, there would be concrete and undisputable authority narrowing consumer protection laws in California—known to be the strongest in the country— by injecting a physical injury requirement into the UCL and CLRA. Such authority is absent from Plum's and the Trade Association Amici's arguments because none exists. All that is required to show *economic* injury under the CLRA and UCL is a showing of materiality and reliance.

Interpreting *Hodsdon* as establishing a threshold for all omission claims will place plaintiffs pursuing food content claims at an unfair disadvantage. Plum's argument is that food meets its central function so long as it "function[s] as food," and presumably provides a single caloric benefit. (OB.2.) Taken to its (il)logical conclusion, then cases involving food are bound to a *single* test under *Hodsdon* (safety) because unless the food immediately makes one ill or ends a life, it will

---

[1] Plaintiffs use the following abbreviations: "AB" (Plum's Answering Brief), "OB" (Plaintiffs' Opening Brief), "TAB" (Trade Association Amici's Brief), and "AGB" (California Attorney General's Amicus Brief), "UCL" (California's Unfair Competition Law), and "CLRA" (California's Consumers Legal Remedies Act).

provide *some* caloric benefit and nourishment, thereby meeting its central function. This circular and extreme application of *Hodsdon* is contrary to the protections provided under the UCL and CLRA.

Neither Plum nor the Trade Association Amici offer any support for treating what is arguably the most vital and only necessary consumer product—food—more onerously than any other consumer product. The Court should not stretch *Hodsdon's* holding in a manner that essentially bars omissions claims related to food content, especially since the food at issue is consumed by the most vulnerable persons in society—babies and children.

## ARGUMENT

## I.  PLAINTIFFS' QUESTION WARRANTS CERTIFICATION

The proper standard for CLRA and UCL omissions claims is not well-settled, and the application of the various standards is not uniformly applied. (*See* OB.38-40.) Federal courts continue to acknowledge the disarray (even when applying *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018)), while the overwhelming majority of California Court of Appeal decisions do not even mention the *Hodsdon* standard.

### A.  The Law Is in Disarray

It is imperative that there is consistency among federal and state courts when considering the same statutory claims. But post-*Hodsdon*, as cases the Trade

Association Amici highlights, the standard to be applied to omissions claims is unsettled:

- "California law on a party's duty to disclose in the context of omissions claims . . . is unsettled." *Neu v. FCA US LLC*, No. 5:23-CV-00509-MCS-KK, 2023 WL 10406710, at *7 (C.D. Cal. Nov. 13, 2023) (citing *Hodsdon*, 891 F.3d at 861–63);

- "It is not clear whether, post-*Hodsdon*, a duty to disclose arises only where the alleged omissions concern physical defects." *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1009, n.9 (N.D. Cal. 2023) (citations omitted);

- "As the Ninth Circuit and other courts . . . have acknowledged, '[t]he state of the law on the duty to disclose under California law is in some disarray.'" *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1042 (N.D. Cal. 2021), *aff'd,* No. 21-16282, 2022 WL 1577802 (9th Cir. May 19, 2022) (quoting *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018));

- "[T]he *Hodsdon* court left unclear whether the safety hazard and central functionality tests should be understood as ways of defining materiality for purposes of *LiMandri* or whether these tests represent independent means

of pleading an omission[.]" *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021);

- "*Hodsdon* follows—and by its own admission, does not authoritatively resolve—some uncertainty about what types of omissions-based misrepresentations are actionable." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (citation omitted); and

- "California law may also permit claims based on failure to disclose . . . , but the law is unsettled as to such claims." *Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-CV-02054-JCS, 2019 WL 6050768, at *5 (N.D. Cal. Nov. 15, 2019) (citations omitted).

(TAB.93-94, 96-98.)

This case presents an ideal opportunity to cure the inconsistent application of *Hodsdon*.

### B. The California Courts of Appeal Have Largely Ignored *Hodsdon*

*Hodsdon* has only been cited three times by the California Courts of Appeal. *See Lagrisola v. N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1192 (2023), *review denied* (Feb. 14, 2024); *Nalick v. Seagate Tech. LLC*, No. A158237, 2021 WL 1135226, at *9–10 (Cal. Ct. App. Mar. 25, 2021), *review denied* (July 14, 2021); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 325 (2022), *as modified on denial of reh'g* (Apr. 27, 2022), *review denied* (July 13, 2022). Plum's claim that

4

*Hodsdon* is consistently followed by the California Courts of Appeal is wrong. (AB.13, 34, 69.) A cursory review of the opinions of the California Courts of Appeal shows *LiMandri* is cited over two-hundred times while only three cases cite *Hodsdon*.

Plum cites two of these cases to discourage certification of Plaintiffs' question but neither informs the issue here. First, the fact that the California Supreme Court denied the petitions for review in *Nalick* and *Johnson & Johnson* does not mean there is no need for clarification of the correct standard to be applied to omission claims. (*See* AB-66-71.) Less than three percent of petitions for review are granted, whereas the California Supreme Court favors certified questions from this Court. (*See* R. 24.1 at 23 (20 out of 22 questions certified between July 2018 and December 2023).)[2]

Second, the *Nalick* and *Johnson & Johnson* petitions are distinguishable. The issue in *Nalick*'s petition centered on the "legal significance" of warranties and was based on pre- and post-warranty claims under the CLRA and UCL for post-warranty product failures. (4-SER-991-92; 4-SER-1003 ("Without guidance from this Court, . . . courts will continue to issue inconsistent rulings about whether the CLRA and UCL permit 'pure omissions' claims arising *after the warranty period* in the absence

---

[2] https://selfhelp.appellate.courts.ca.gov/knowledge-center/petition-for-review/ (last accessed November 8, 2024).

of a *safety hazard or latent defect*.") (emphasis added).) The court's rejection of the petition does not inform this Court on whether there is continuing disarray on the legal standard for CLRA and UCL omission claims.

*Johnson & Johnson* is likewise immaterial. The procedural factors there weighed against granting review: (1) the defendants did "not clearly identify the legal standard it thinks the trial court should have applied (3-SER-832), and (2) no dissent was filed (3-SER-800-884); *see also* Cal. Rule of Ct. 8.500(c)(1); Superior Ct. Internal Operating Pracs. & Procs. §§IV(D), (H). Additionally, the question presented there was whether consumer expectations should be taken into account in evaluating whether an omission is likely to deceive. (TAB.110, 125-127.) That is not the question presented here.

### C.     Likely to Deceive is The Proper Standard

Whether omitted information is "likely to deceive" is the proper inquiry for UCL and CLRA omission claims. This is the only standard that is consistent with (1) the intent of the California legislature; (2) how the California Supreme Court has analyzed UCL claims; and (3) how the Attorney General of California has advocated. (*See* OB.44-46.)

"The California Supreme Court has emphasized that 'one *need only show* that members of the public are likely to be deceived' to prove consumer deception under the UCL, . . . and has never articulated a different standard for deception-by-

6

omission claims." (AGB.8-9 (internal citation omitted, emphasis in original).)[3] Plum says this standard is "unworkable" due to the alleged potential limitless liability for corporations. (AB.65.) This concern is unfounded given likely to deceive has been the standard applied by California state courts for decades. *See Ford Dealers Ass'n v. Dep't of Motor Vehicles,* 32 Cal.3d 347, 363-65 (1982).[4] Plum's concern also ignores that the reasonable consumer standard protects against the imposition of liability "on any topic of interest." (AB.11); *Hernandez v. DTI GmbH*, No. 21-cv-04065-JST, 2024 WL 3939569, at *9 (N.D. Cal. Aug. 26, 2024) (The reasonable consumer standard is "not without limits.").

Plum overlooks that this case involves a product that consumers directly put into their bodies and bloodstream. Plum does not deny its baby food contains heavy metals and fails to justify why this information should not be shared with a consumer if a jury finds it is material to a reasonable person. Heavy metals are not just "any top of interest," (AB.11), since laws in Maryland and California now require baby

---

[3] While the California Attorney General's brief focused on UCL claims, a similar standard would apply to CLRA claims. (OB.44-46.)

[4] The California Supreme Court has "repeatedly applied the general 'likely to deceive' standard regardless of whether a marketing or sales practice deceived by omission instead of, or in concert with, false or misleading statements." (AGB.11.)

food manufacturers to disclose heavy metals and at least one baby food company proactively shares its heavy metals test results.[5]

This Court should grant Plaintiffs' request for certification.

## II.  THE DISTRICT COURT ERRED IN APPLYING *HODSDON*.

*Hodsdon* is inapplicable to this case. Even if *Hodsdon* did apply, there are genuine issues of material fact precluding summary judgment under *Hodsdon*.

### A.  The District Court Should Not Have Applied *Hodsdon*

Plum ignores relevant caselaw and relies on misstatements to assert that courts have interpreted and applied *Hodsdon* consistently. Plum fails to acknowledge that numerous cases recognize the disarray regarding the standard applied to CLRA and UCL omission claims and only provides a single state court case applying *Hodsdon*. (AB.48-49, 66-67, 69-71.)

#### i.  *Hodsdon has Left the Law in Disarray and It is Not Consistently Applied*

Both parties' briefs show the ongoing incongruity amidst federal and state courts on the standard for UCL and CLRA omission claims. (*Compare* OB.47-48

---

[5] https://www.accesswire.com/923062/little-spoon-becomes-the-first-and-only-baby-food-maker-in-the-us-to-publicly-set-eu-aligned-safety-standards-and-share-test-results-for-heavy-metals-pesticides-plasticizers#:~:text=NEW%20YORK%2C%20NY%20%2F%20ACCESSWIRE%20%2F,for%20heavy%20metals%2C%20pesticides%20and (last accessed November 8, 2024).

*with* AB.36-37, 40-43, 47-53.) Plum fails to address that California state courts do not follow *Hodsdon* as a general rule. *See* I.C., *supra*. In claiming *Hodsdon* is well-settled, Plum misdirects by citing a single federal case, *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022), that collected only cases that applied *Hodsdon*. (AB.50-51.) Plum then mischaracterizes *In re Toyota*, a case that details the evolving disarray, and in doing so, properly synthesizes both state and federal law. (AB.51-53.)

 *In re Toyota* did not only involve partial representations nor was the court's disarray observation irrelevant to pure omissions. (AB.51.) First, the district court clearly noted the confusion "in omission-based consumer protection cases" generally. 534 F. Supp. 3d at 1102-03. Second, Plum is wrong—plaintiffs premised their claims "on both an affirmative misrepresentation and an omission . . . theory of liability." *Id.* at 1094.[6] The omission theory relied on the second (exclusive knowledge), third (active concealment), and fourth (partial representation) *LiMandri*

---

[6] Even if Plum was correct, numerous courts recognize partial representations are synonymous with partial omissions. *See, e.g.*, *Anderson*, 500 F. Supp. 3d at 1013; *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36 (1975) ("It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact."); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862-HSG, 2024 WL 1643696, *9 (N.D. Cal. April 16, 2024); *Mendoza v. Midea Microwave & Elec. Appliances Mfg. Co.*, No. 1:20-cv-01133-TLN-CKD, 2023 WL 8358208, at *5 (E.D. Cal. Dec. 1, 2023); *Goodwin v. Walgreens, Co.*, No. CV 23-147-DMG (PDx), 2023 WL 4037175, at *4 (C.D. Cal. June 14, 2023).

factors. *Id.* at 1104. If the case involved only partial misrepresentations, there would be no reason for the court to discuss the second and third *LiMandri* factors. *Id.* Whether the district court borrowed a phrase from a brief does nothing to lessen that courts have repeatedly recognized the same disarray noted in *In re Toyota*. (OB.39-40 (collecting cases); AB.51.)[7]

Plum's claimed consensus on *Hodsdon* relies on threadbare rationale. In *Hammerling v. Google LLC*, the court applied *Hodsdon* because it found "the Ninth Circuit adopted this approach," and most other district courts had done the same. 516 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). On appeal, and contrary to Plum's representation, the Ninth Circuit neither addressed *Hodsdon* nor the proper standard for omissions because it found Google "affirmatively disclosed the challenged data collection practices[.]" *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024).

In portraying *In re Toyota* as an outlier, Plum ignored a litany of cases that did not apply *Hodsdon*. *See, e.g.*, *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 855-56 (N.D. Cal. 2022); *Browning v. Am. Honda Motor Co.*, No. 20-cv-05417-BLF, 2022 WL 824106, at *15-18 (N.D. Cal. Mar. 18, 2022); *Torres v. Botanic Tonics,*

---

[7] *See also*, *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1194 (S.D. Cal. 2023); *Anderson*, 500 F. Supp. 3d at 1014; *In re: Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1175 (N.D. Cal. 2019).

*LLC*, 709 F. Supp. 3d 856, 861-63 (N.D. Cal. 2023) ("*Torres*"); *Poston v. GM, LLC*, No. 24-cv-0082-BAS-JLB, 2024 WL 3558377, at *6-9 (S.D. Cal. July 22, 2024); *CDM Holdings Grp., LLC v. Tidal Com. Inc.*, No. SACV21-01204-CJC (DFMx), 2023 WL 3335069, at *4 (C.D. Cal. April 4, 2023); (*see also* OB.47-48.) Of these, *Poston* is particularly notable because it expressly eschewed a duty to disclose for UCL claims premised on allegations of fraudulent business practices. 2024 WL 3558377, at *9 ("Distinct from common-law fraud, violation of the UCL fraudulent business practices prong requires only a showing that members of the public are likely to be deceived[.]") (citing *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1316 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016)).

Plum also ignored post-*Hodsdon* California state court decisions that involved both partial and pure omissions and did not impose *Hodsdon's* safety hazard or central function requirements. *See, e.g.*, *Johnson & Johnson*, 77 Cal. App. 5th at 325-26; *Torres v. Adventist Health Sys./W.*, 77 Cal. App. 5th 500, 508-15 (2023); *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 90 Cal. App. 5th 1193, 1209-18 (2023), *as modified on denial of reh'g* (May 16, 2023).

Plum never disputes it failed to move under *LiMandri*. Its position is that because Plaintiffs did not meet *Hodsdon* it was unnecessary to address *LiMandri*, but this argument misses the mark. *Hodsdon* does not apply at all (and if it did, factual disputes precluded summary judgment). Since Plum never addressed

11

*LiMandri*, and the record establishes sufficient questions of fact relating to the *LiMandri* factors, the district court should not have granted summary judgment on the omission claims. This sequence of analysis is precisely what *In re Toyota* followed. 534 F. Supp. 3d at 1101-04 (allegations did not satisfy *Hodsdon's* safety and central function test, but plausibly alleged *LiMandri's* prongs).

### ii.    *Hodsdon Conflicts with California Law*

Plum glosses over a bevy of cases regarding whether the UCL and CLRA require a duty to disclose, even though this is a central issue here. Plum also ignores that strictly applying *Hodsdon* contradicts the purpose behind the UCL and CLRA— to do away with the traditional elements of tort law for the sake of speed and efficiency. *See Bank of the W. v. Superior Ct. of Alameda Cnty.*, 2 Cal. 4th 1254, 1266-67 (1992); Cal. Civ. Code §1760. This purpose has been repeatedly recognized by courts in this Circuit. *See*, *e.g.*, *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1269 (C.D. Cal. 2007) ("The fraud prong of the UCL differs from common law fraud or deception.") (quoting *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006)). Plum injects common law principles (duty) with a physical injury requirement, effectively incentivizing silence since many material defects do not

pose an unreasonable safety risk or render a product useless.[8] In fact, the standard Plum posits is effectively impossible to meet in the context of food content.

Even recently, courts have found a duty to disclose unnecessary for a UCL omission claim under the unfair practices prong. *See, e.g., Torres*, 709 F. Supp. 3d at 861-63; *see also Poston*, 2024 WL 3558377, at *6-7 (discussed above). *Torres* is salient on the need for certification. There, the plaintiff alleged defendant knew a product "was dangerous and addictive," but decided to sell it "without disclosing to customers how harmful it could be[.]" *Torres*, 709 F. Supp. 3d at 858. The defendant claimed it had no duty to disclose, citing *Hodsdon*, *LiMandri*, and *Daugherty v. American Honda Repair Co.*, 144 Cal. App. 4th 824 (2006). *Id.* at 861-63. The district court disagreed, holding the UCL is intended to "reach beyond" common law as the standard is likely to be deceive. *Id.* at 861; *Poston*, 2024 WL 3558377, at *9.

This is the proper analysis given the UCL's well-settled purpose of "protect[ing] both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1085 (2023) (quoting *McGill v. Citibank, N.A.*, 2 Cal.

---

[8] The Trade Association Amici similarly start with the assumption that common-law fraud principles apply, first citing *Outboard Marine*. (TAB.14-18.) *Outboard Marine*, however, relied upon *Moe v. Transamerica Title Ins. Co.*, 21 Cal. App. 3d 289, 293-94 (1971), which did not involve the UCL or CLRA. 52 Cal. App. 3d at 37 (citing *Moe*, 21 Cal. App. 3d at 306).

5th 945, 954 (2017)). The UCL creates a cause of action grounded in equity, *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 299 (Cal. 2020), with a "broad reach." *Cal. Med. Ass'n*, 14 Cal. 5th at 1085. A similarly broad scope applies to the CLRA. *See* Cal. Civ. Code §1760. To pigeonhole UCL and CLRA omissions claims into common-law notions of fraud as Plum suggests is contrary to the UCL's empowerment of courts to "deal with the innumerable 'new schemes which the fertility of man's invention would contrive,'" *Nationwide Biweekly*, 9 Cal. 5th at 300 (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 112 (1972)), and the CLRA's aim "to protect consumers against unfair and deceptive business practices" through the use of "efficient and economical procedures to secure such protection." Cal. Civ. Code §1760.

The Trade Association Amici similarly failed to provide any tenable rationale. Their claim that plaintiffs could survive dismissal "by simply alleging that he or she was 'likely to be deceived' by an omission," rings hollow; conclusory allegations are not countenanced in this or any other court. (TAB.17); *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009)). Nor would liability be "limitless." (TAB.11 (internal citation omitted).) UCL and CLRA claims are already subject to a likely to deceive standard that includes a "reasonable consumer" inquiry. *Moore*, 966 F.3d at 1017 (quoting *Williams v. Gerber Prods Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

14

### B.    Evidence Shows the Unreasonable Safety Hazard Factor is Satisfied.

The record shows there were disputed facts regarding the safety of heavy metals. Plum claims that Plaintiffs "uniformly admitted" the baby food is safe based on a contortion of the evidence. (AB.39.) Plaintiffs have never conceded heavy metals are safe and not material to consumers. (2-ER-25-28 ("We have always said that the—the safety and the accumulation of heavy metals is at issue. And Dr. Gardener specifically addresses that.").) What Plaintiffs have stated is that this case does not seek damages for physical injury, which is not required for these claims. (*See, e.g.,* 1-SER-273, 1-SER-291, 2-SER-311, 2-SER-330, 2-SER-348, 2-SER-366-67, 2-SER-385, 2-SER-403, 2-SER-420-21 (interrogatory responses stating they were not seeking damages for physical injuries)); *see also Hansen v. Newegg.com Americas, Inc*., 25 Cal. App. 5th 714, 724 (2018) ("[T]he consumer must merely 'experience some kind of damage,' or 'some type of increased costs' as a result of the unlawful practice.") (quoting *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009)).

Plaintiffs repeatedly argued that bioaccumulation renders heavy metals unsafe. (5-SER-1150 ("The record shows that safety is at issue—specifically the safety and health risks for infants and toddlers consuming heavy metals and perchlorate generally, including when they accumulate over time."); OB.22-23 (collecting cites to the record evidence), 51.) Bioaccumulation was further addressed

15

both at the hearing and in the district court's opinion. (2-ER-25:16-26:10, 27:15-19 (referring to unrebutted Gardener Report on accumulation of heavy metals and adverse health effects); 1-ER-5, 11-12, 19.)[9] There was no waiver of this argument.

Dr. Gardener's opinions on bioaccumulation are relevant to Plum's baby food. The evidence shows Plum also acknowledges the safety issues posed to babies consuming heavy metals just like Dr. Gardener's opinions. Although Plum claims its ingredients were designated as "high risk" solely because the food was organic, the record shows otherwise: ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ (*See* OB.19-22.)

---

[9] Plum did not seek to exclude Dr. Gardener's opinions that create a dispute of material fact. *See Hyer v. City and Cnty. of Honolulu*, No. 23-15335, 118 F.4th 1044, 1063 (9th Cir. Sept. 23, 2024) (reversing grant of summary judgment because improperly excluded expert reports "help[ed] created genuine disputes of material fact[.]"); *see also Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion."). Further, the methodology supporting Dr. Gardener's opinions goes to weight, not admissibility.

Plum incorrectly claims Plaintiffs must prove that the baby food, which Plum does not regularly test for heavy metals and perchlorate, had unreasonably safe levels of those toxins.[10] In essence, Plum is asking this Court to expand *Hodsdon* even further by limiting UCL or CLRA omission claims to cases where food caused actual physical injury. This would deny consumers the protections enacted under the CLRA and UCL. Requiring a physical injury instead of materiality and reliance contradicts well-settled jurisprudence. *See Cal. Med. Ass'n,* 14 Cal. 5th at 1096 (on UCL standing: "[R]equires a showing of a causal connection or reliance on the alleged misrepresentation."); *Lytle v. Nutramax Lab'ys, Inc.,* 114 F.4th 1011, 1035 (9th Cir. 2024) ("[M]ateriality can be used to establish reliance under the CLRA[.]"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D 592, 612 (N.D. Cal. June 26, 2018) ("[M]ateriality and reliance (i.e., causation and injury) [is shown if] a reasonable person would have considered the defendant's representation material.") (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir.

---

[10] Accepting Plum's argument, consumers would be charged with testing each pouch of baby food. Plum provides no authority for this because the law does not burden a consumer in this manner.

2017)); *In re Arris Cable Modem Consumer Litig.,* 327 F.R.D. 334, 365 (N.D. Cal. 2018) (same).

Plum also tries minimizing its testing failures because trace heavy metals are allegedly in all crops. But the record demonstrates baby food can be made with non-detectable levels of such toxins, creating a factual issue for the jury regarding whether Plum created an unreasonable safety risk. (Dkt. 238-3 at 28; Dkt. 238-3 at 51, 53, 55, 57, 59, 61, 63; Dkt. 238-3 at 68; Dkt. 238-3 at Ex. 10 (internal test results that include non-detect levels of heavy metals for the Products); 4-ER-536:4-9; 5-ER-787, 793-94.)

Plum's cases are inapposite. In *Browning v. Unilever United States, Inc.*, the plaintiffs alleged an actual physical injury—skin damage. 809 Fed. App'x 446 (9th Cir. 2020). Here, Plaintiffs' injury is that they paid more for the baby food had they known about the omissions. The inclusion of heavy metals and perchlorate in food is material because they accumulate in the body, which is not able to eliminate these toxins. Plaintiffs have produced evidence of that materiality sufficient to reach a jury. While other cases Plum cites involve food products,[11] they were dismissed at

---

[11] *In re Theo's Dark Chocolate Litig.*, No. 23-cv-02739, 2024 WL 4336631 (N.D. Cal. Sept. 27, 2024), *Hayden*, 2024 WL 1643696, *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024), *Rodriquez v. Mondelēz Glob. LLC*, 703 F. Supp. 3d 1191 (S.D. Cal. 2023), and *Grausz*, 691 F. Supp. 3d 1178.

the motion to dismiss stage prior to plaintiffs offering the evidence presented here through Dr. Gardener's opinion that heavy metals accumulate in the body and cause an increased risk of adverse health effects, (OB.23), Plum's knowledge it could mitigate this risk but chose not to, (OB.19-21), and Plum's own designation of its ingredients as "high risk." (*Id.*) Further, *Grausz's* finding that the allegation, "no amount of lead is known to be safe," is insufficient to show an unreasonable safety hazard has no bearing here because there, the California Superior Court entered a consent judgment raising lead threshold levels for defendants' products. 691 F. Supp. 3d at 1185, 1195. No such facts exist here.

### C.    Heavy Metals Impact the Baby Food's Central Function.

There are issues of disputed fact on *Hodsdon's* central function factor. (OB.52-54.) Dr. Gardener's unchallenged opinion is that heavy metals impact the make-up of food and a child's ability to take in the nutrients otherwise offered by the food. (3-ER-270-71, ¶11; ER274-75, ¶23.) But Plum claims *Hodsdon* requires that the baby food ceases to function as food. Plum never explains how a food can cease to function, noting only *Hodsdon's* "incapable of use by any consumer" language, (AB.44 (quoting *Hodsdon*, 891 F.3d at 864), and that Plaintiffs' children "ate and enjoyed" the baby food. (AB.45.) It appears Plum's argument is that as long as a food product can provide a single caloric benefit, it provides "nourishment" and thus fails under *Hodsdon*. (*Id.*)

Plum's reading of *Hodsdon* eviscerates the central function test for consumer food content cases and leaves only the safety prong to prove a duty to disclose. That is because the only way a food product can fail to provide a single caloric benefit and become "incapable of use" is if it immediately makes one ill or ends a life. Only then can a food fail to offer nourishment or a *single* caloric benefit. Taken to its logical extent, Plum's position would be that even if a food product makes one sick hours later, it has met its central function since it provided calories.[12] This interpretation disavows the purpose of these statutes, which allow redress for "any damage"—including pecuniary damage. *See Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1108 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("[T]he California Supreme Court made clear that the CLRA's 'any damage' requirement is a capacious one that includes any pecuniary damage[.]")

Plum offers no authority where the standard it seeks to impose was met for a food product. Plum's criticism of Plaintiffs' case—that they have failed to show the baby food did not act as food—supports that *Hodsdon* cannot be the proper framework to adjudicate this type of consumer claim. Plum's own cases did not

---

[12] Providing a caloric benefit is not the central function of baby food. As Dr. Gardener states: "the purpose of baby food is to provide babies and toddlers with nutrients, vitamins, and energy for growth and development." (3-ER-270, ¶11.) Heavy metals reduce the nutritional value of baby food by competing with binding sites. (3-ER-274, ¶23.) For example, lead impacts the absorption of iron and calcium, impedes important metabolic steps, and alters protein function. (*Id.* ¶¶23-24.)

20

involve omissions relate to food content. *See Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) (modems); *Oddo v. United Techs. Corp.*, No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663 (C.D. Cal. Jan. 3, 2022) (valves in HVAC units); *Browning v. Unilever United States, Inc.*, 809 Fed. App'x. 446 (facial cleanser). While *In re Theo's* and *Hayden* involved food products, as stated above, neither considered unrebutted evidence that heavy metals impact one's ability to obtain nutrients from the food products at issue, like Plaintiffs presented in this case.

## III. THE DISTRICT COURT'S *SUA SPONTE* DECISION ON THE *LIMANDRI* FACTORS WAS ERROR.

### A. Genuine Issues of Material Fact Exists As To Exclusive Knowledge.

"Exclusive knowledge" should neither be construed literally nor applied with rigidity and must be analyzed with consideration of the reasonable accessibility of the information. (OB.55-56.) Plum points to *Rattagan v. Uber Technologies, Inc.*, 17 Cal.5th 1 (2024), to argue that if Plum was not the sole holder of the knowledge, then an analysis of whether that knowledge was "reasonably discoverable" is "not necessary." (AB.62 (quoting *Rattagan*, 17 Cal. 5th at 40).) But that is incorrect. First, *Rattagan* addressed a common law claim of fraudulent concealment, not UCL and CLRA claims. 17 Cal.5th at 1. Second, *Rattagan* recognized that the exclusive knowledge factor must assess whether material information was reasonably

accessible. *Id.* at 43-44 (requiring allegations of "the inaccessibility of the facts to plaintiff" where the duty to disclose arose through "the defendant's exclusive knowledge or access to certain facts").[13]

Courts consistently reject Plum's assertion that "the presence of the information from publicly available sources—for instance, online— . . . automatically foreclose[s] an exclusive-knowledge claim." *Anderson*, 500 F. Supp. 3d at 1015; (*see also* OB.57). Plum ignores this altogether, asserting that so long as information can be found on some corner of the internet, it is reasonably accessible to consumers. (AB.62-63.) Plum extends this argument to articles and transcripts of television broadcasts (addressed below) that do not even mention Plum and were published years before Plaintiffs were even in the baby food market. Plum advocates imputing knowledge to consumers on any topic that has ever been written or

---

[13] Plum also argues that information is reasonably accessible unless a "plaintiff had an 'inability to discover [the omission.]'" (AB.62 (quoting *Pearl v. Coinbase Glob., Inc.*, No. 22-cv-03561-MMC, 2024 WL 3416505, at *5 (N.D. Cal. July 15, 2024).) However, the *Pearl* court held that courts look to "the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant," 2024 WL 3416505, at *5, the same standard used in *Anderson*, 500 F. Supp. 3d at 1014-15 and *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). Neither Plum nor *Pearl* expand on what they consider "an inability to discover" and there is no indication that *Pearl* sought to create a reasonable accessibility standard stricter than the parameters of *Anderson* and *MyFord Touch*.

22

published irrespective of scope or specificity.[14] This position has routinely been rejected by courts and should likewise be rejected here.

Plaintiffs' evidence is sufficient to raise a disputed material fact as to whether the omissions were not known nor reasonably accessible despite the presence of information online. (*See* OB.59-64.) Plaintiffs presented three unchallenged expert reports, as well as their own testimony, and Plum's 30(b)(6) witness testimony, all showing reasonable consumers did not expect heavy metals or perchlorate in baby foods, including Plum's. (*See* OB.18, 62-63.) In response, Plum pointed to the same reports and news articles cited in its Motion for Summary Judgment (AB.60, 62-63), but these articles and reports cannot impute knowledge:[15]

- 2-SER-547-50: Published in 2012, years before Plaintiffs purchased Plum's baby food, and does not mention Plum or concern the types of products Plaintiffs purchased;

- 2-SER-552-56: Published in 2012 and does not mention Plum;

---

[14] If Plum is correct that *Hodsdon* recognized "the danger of [applying] a free-ranging [] standard . . . on any topic," (AB 11), then it would also reject Plum's broad interpretation of *LiMandri's* exclusive knowledge factor.

[15] Plum fails to address how a question establishing the percentage of survey respondents who were aware of the Subcommittee Report *as of the date of the survey* can demonstrate Plaintiffs had knowledge of the defect, especially given the Report post-dated Plaintiffs' purchases and actually informed the Plaintiffs about heavy metals in the baby foods. (OB.63.)

- 2-SER-558-62: A February 2012 transcript of a 7:00 a.m. airing of Good Morning America and does not mention of Plum;

- 3-SER-694-700: Does not mention Plum;

- 3-SER-602-49, 2-SER-578-600, and 3-SER-702-03: These three documents are the Clean Label Project ("CLP") Report, a summary of that report, and a 2017 article concerning it. Plum responded to the CLP report by expressing strong reservations about it, questioning its validity, offering empty promises about sharing its heavy metal testing results at a later date, and omitting/concealing that its baby food may contain heavy metals. (OB.59-62.) Further, the 2017 article states Plum responded that its "products are 'completely safe,'" and it has "created 'new, more robust guidelines for contaminants in our products,'" which the record demonstrates is false;

- 3-SER-705-13: Published in 2018, with neither a mention of Plum nor a link to the relevant study, and not from a major news source;

- 1-SER-126, 128-31, 133, 141: Not published by a major news source, and Plum provided no evidence this report was reasonably accessible;

- 3-SER-651-85: Published in 2018 and not by a major news source;[16]

---

[16] The Court should note that the very articles Plum seeks to use to impute knowledge of heavy metals also note that heavy metals can be controlled in baby food (yet Plum

24

- 2-SER-564-76: Published in 2017 and does not mention Plum.

Plum claims its website "disclosed" the heavy metals in its baby food. (AB.60.) But it is unclear what "disclosure" Plum is referencing. (*See id.*) To the extent the "disclosure" is Plum's response to the 2017 CLP Report, this cannot be considered a disclosure at all. (*See* OB.58-61.)

Ultimately, none of this evidence demonstrates the information at issue was reasonably accessible to consumers, especially in light of Plaintiffs' evidence to the contrary. As "[t]he issue of reasonable access is generally a question of fact," it is ultimately up to a jury to decide if these sources were accessible and can impute knowledge on Plaintiffs. *Torres*, 77 Cal. App. 5th at 511-12.

### B. Genuine Issues of Material Fact Exist Regarding Active Concealment.

A genuine issue of material fact exists as to Plum's active concealment. Plum is incorrect that active concealment demands an affirmative denial of the information at issue. (AB.54-55 (citing *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022).) The requirement is an "affirmative act of concealment," which includes efforts "to suppress information," not an outright denial. *Jenkins v. FCA US LLC,* No. 23-cv-01075-JSW, 2024 WL 1141002, at *1 (N.D. Cal. Mar. 15, 2024)

---

did nothing to achieve this), and that rice fares the worst (yet Plum continued to sell rice snacks ████████████████████████████ (OB.20-21.)

(quoting *Taragan v. Nissan N. Am. Inc*., No. 09-cv-03660-SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013)). Plaintiffs have offered evidence showing numerous affirmative acts by Plum. (OB.19-21, 66-68.) Further, *Cho* is also not as narrow as Plum states. There, the court explicitly stated that "[c]ourts ha[d] found similar allegations of nondisclosure *combined with* affirmative denials of the defect and denials of free servicing or repairs of defective parts sufficient to survive a motion to dismiss." *Cho*, 636 F. Supp. 3d at 1166 (emphasis added).

Plum's recasting of active concealment also runs contrary to jurisprudence. In *Johnson & Johnson*, the court denied the appeal where the defendant actively concealed by "undert[aking] 'marketing efforts focused on downplaying and rebutting the FDA's notices' regarding [its] products." 77 Cal. App. 5th at 325-26. This is what Plum did here by: (1) stating it complied with non-existent FDA regulations; (2) touting ███████████████████████████████████████ ████████████████████████████████████████ as to some products; (3) stating it was "highly skeptical" of the CLP testing results and promising to share its own testing but never following through when its █████████████████████████ █████████████; and (4) continuing to sell Super Puffs █████████████████ █████████████████████████ (OB.19-21, 66-68.) Plum's stated skepticism of the CLP's test results and its false promise to share its own test results (done simply to drown out any concerns over the CLP testing), constitutes an outright affirmative

denial. Plus, the remainder of Plum's conduct is precisely what has been deemed active concealment. *See*, *e.g.*, *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 250 (2011) (active concealment when "customer service campaign designed to preclude consumer discovery of the . . . [d]efect[.]"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007).

Plum argues its website statements and insufficient heavy metal testing program do not amount to an affirmative denial. (AB.56.) But, as demonstrated, the premise of its argument is incorrect: an affirmative denial is not required. Instead, evidence of mistruths and deflections, like the evidence here, (*see* OB.66-68), suffices to show a genuine issue of material fact. *See, e.g.*, *Johnson & Johnson*, 77 Cal. App. 5th at 325-26; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023) (silence coupled with self-serving statements suffice to create material issue of fact).

Plum next argues that it could not actively conceal heavy metals because the media reported this information. (AB.55-56 (citing *Kavehrad v. Vizio, Inc.*, No. 8:21-cv-01868-JLS-DFM, 2023 WL 2558535, at *5-6 (C.D. Cal. Jan. 26, 2023).) But *Kavehrad* did not concern the availability of the allegedly concealed defect in the media and how that would affect the court's analysis. *See*, *generally*, *Kavehrad*, 2023 WL 2558535. Instead, the court found that since the defendants acknowledged the defect and provided solutions on its website, the plaintiff failed to adequately

alleged active concealment. 2023 WL 2558535, at *5. Plum cannot claim it did either of those acts here. Instead, it downplayed the high risk of heavy metals in its baby food, declared skepticism of CLP's testing results, and created a false impression that it was controlling heavy metals in its food. (OB.66-68.) A fact finder could determine these efforts to misdirect are the very reason each Plaintiff and 94.5% of survey respondents did not expect Plum's baby food to contain heavy metals. (2-ER-45, ¶12; 2-ER-53, Table 1; 2-ER-63, ¶12; 2-ER-71, Table 1.)

Finally, Plum lodges two different attacks on evidence concerning its heavy metals testing "program" rather than challenge Plaintiffs' assertions that the statements Plum made about its testing program were mistruths in light of the inadequacies of the "program." (*See* OB.66-67.) Plum first argues that the adequacy of its testing "program" is irrelevant as to the "matter[] complained of," and thus this evidence is inadequate to demonstrate active concealment. (AB.57 (internal citation omitted).) It is not the inadequacy of the testing program alone that shows Plum actively concealed heavy metals. Rather, it is Plum's *statements* to consumers about its testing program, which were made with Plum's ████████████████████ ████████, that Plaintiffs assert constitutes active concealment. (*See* OB.19-21, 66-67.) Those statements, such as claiming it had a "rigorous heavy metal monitoring program," when in fact ████████████████████████████████ ████████████████████████████████████████████

███████████████████████████ created the illusion that Plum had removed any risk of heavy metals, and thus directly relate to the "matter complained of"—the presence of heavy metals in the baby food.[17]

Plum also claims active concealment cannot be supported by "[t]he particulars of Plum's testing process" because fruits and vegetables may contain heavy metals. (AB.58.) But again, Plaintiffs are not asserting that the inadequacies of Plum's testing program and the findings of those tests, by themselves, is active concealment. It is Plum's mistruths about the program, (*see* OB.19-21, 66-67), and the false assurances Plum intended to offer by touting a program it knows to be inadequate and not consistently adhered to, (*id*), that demonstrates active concealment.

## CONCLUSION

This Court should certify Plaintiffs' question or, in the alternative, reverse summary judgment.

---

[17] Plum attempts to compare this case to *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1175-76 (E.D. Cal. 2013), where the plaintiff alleged only that the defendant concealed a relevant testing methodology, and raised for the first time in briefing that defendant concealed the actual test results. The bald allegations in *Herron* are not the "same" as the robust evidence presented here regarding Plum's active concealment. (*See* OB.19-21, 66-67.)

29

Dated: November 8, 2024        LOCKRIDGE GRINDAL NAUEN PLLP

*/s/ Rebecca A. Peterson*

Rebecca A. Peterson #241858
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com

LITE DEPALMA GREENBERG &
AFANADOR, LLC
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgustafson@gustafsongluek.com

WEXLER BOLEY & ELGERSMA LLP
Kara A. Elgersma
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
E-mail: kae@wbe-llp.com

**Attorneys for Plaintiffs - Appellants**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 24-2766

1)      I am the attorney or self-represented party.

2)      **This brief contains 6,859 words,** including words manually counted

in any visual images, and excluding the items exempted by FRAP 32(f). The brief's

type size and typeface comply with FRAP 32(a)(5) and (6).

3)      I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** s/  Rebecca A. Peterson_____          **Date:**  November 8, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

31

## <u>CERTIFICATE OF SERVICE AND MAILING</u>

I hereby certify that on November 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated:  November 8, 2024          s/ Rebecca A. Peterson